**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PATRICK W. BROWN, | Civil Action No. 24-00423 |
| *Plaintiff*, | |
| | Section R |
| v. | Judge Sarah S. Vance |
| | |
| JASON R. WILLIAMS, in his official | Division 4 |
| capacity as Orleans Parish District Attorney, | Magistrate Judge Karen Wells Roby |
| | |
| *Defendant*. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND .................................................................................... 1

DISCUSSION ............................................................................................................................... 3

I. The Fifth Circuit's 2022 *en banc* decision in *Daves v. Dallas County* clarifies circuit precedent on several points and emphasizes that § 1983 claims against municipalities must focus on *which governmental entity* an alleged policymaker was acting for. ........................................................................ 4

II. In *Arnone v. County of Dallas County*, the Fifth Circuit applied *Daves* and dismissed claims against a county after concluding that a district attorney was acting on behalf of the state in making decisions about criminal prosecutions. ........................................................................................................ 5

III. For the same reasons set forth in *Daves* and *Arnone*, the claims against the District Attorney's Office must be dismissed because they are based on alleged actions taken on behalf of the State of Louisiana while representing the State of Louisiana ............................................................................................. 8

  A. Mr. Brown's claims challenge alleged actions taken during his prosecution in state court for a state-law crime, along with the policies that allegedly led to those actions ................................................. 8

  B. The same reasoning employed in *Daves* and *Arnone* dictates that the alleged acts and policies challenged by Mr. Brown were done and made on behalf of the state. ....................................................... 9

IV. The controlling standard for determining whether Orleans Parish prosecutors act on behalf of the state is set forth in *Daves*, not in any prior Fifth Circuit jurisprudence. ..................................................................... 14

  A. The Fifth Circuit's decision in *Hudson v. City of New Orleans* concerned Eleventh Amendment immunity and is irrelevant to the question presented here, as explained in *Daves*........................ 14

  B. The Fifth Circuit's decision in *Burge v. Parish of St. Tammany* does not squarely answer the question presented in this motion, and, in any event, is undermined by the *en banc* decision in *Daves*. ................... 16

V. Decisions of other sections of this Court rejecting the same arguments are unpersuasive and should not be followed. ........................................................ 20

  A. *Floyd v. Dillmann* ..................................................................................... 20

  B. *Smith v. Williams* ...................................................................................... 23

  C. *Reeder v. Williams* .................................................................................... 28

  D. *Jones v. Williams* ...................................................................................... 29

  E. *Williams v. Williams* ................................................................................. 29

CONCLUSION............................................................................................................................ 30

Jason R. Williams, in his official capacity as Orleans Parish District Attorney, through undersigned counsel, respectfully submits the following memorandum in support of his motion to dismiss Plaintiff Patrick Brown's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

When a Louisiana district attorney appears in state court to prosecute a defendant for state-law crimes on behalf of the State of Louisiana, he or she is acting as a state officer, exercising powers of the State of Louisiana that are delegated by the Louisiana Constitution and by statute. Actions taken by the district attorney and his or her assistants in that capacity are therefore attributable to the State of Louisiana—not the Parish of Orleans, not the City of New Orleans, and not the "District Attorney's Office" as an independent local government entity. Mr. Brown seeks to hold the District Attorney's Office liable for alleged actions of Orleans Parish prosecutors that are attributable to the State of Louisiana. Accordingly, he has failed to state a claim against the District Attorney's Office, and his claims must be dismissed.

## INTRODUCTION AND BACKGROUND

This lawsuit involves claims by Plaintiff Patrick Brown under 42 U.S.C. § 1983 and the Louisiana Constitution. In 1994, he was convicted of one count of aggravated rape of a six-year-old girl in *State of Louisiana v. Patrick Brown*, Case No. 369-171, Orleans Parish Criminal District Court. Prosecutors in the Orleans Parish District Attorney's Office represented the State of Louisiana in those proceedings. Mr. Brown alleges that the Orleans Parish District Attorney's Office deprived him of his constitutional right to due process by failing to disclose material evidence that was favorable to him in those proceedings. His claims are brought against the current District Attorney, Jason R. Williams—who took office in 2021, long after his conviction—in his "official capacity." Jason Williams is sued as "the successor in office to former District Attorney Harry F. Connick, Sr." Doc. No. 1 at ¶ 3.

Section 1983 claims against municipalities and local government entities are permitted, but only in limited circumstances. "[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation and citation omitted). Such entities cannot be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Thus, municipal liability under § 1983 requires "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc).

Mr. Brown alleges that Harry Connick, the District Attorney at the time of his prosecution, was "responsible for all policies, practices, and customs of the office." Doc. No. 1 at ¶ 182. He further alleges that the office's policies concerning disclosure of evidence "were likely to result in wrongful convictions and imprisonment for innocent people. *Id.* at ¶ 187. He contends that such policies are responsible for his allegedly wrongful conviction. *See id.* at ¶¶ 192–193. The District Attorney's Office does not agree that its current or former policies are or were unconstitutional. However, accepting these allegations as true, solely for the purposes of this Rule 12 motion, there is still a critical question that remains to be answered: were the policymakers acting on behalf of the Defendant in this case—the District Attorney's Office—or on behalf of the State of Louisiana, which is not a party to this lawsuit?

"[S]ometimes a policymaker wears more than hat." *Arnone v. County of Dallas County*, 29 F.4th 262, 266 (5th Cir. 2022). For example, an official may "sometimes act[ ] for the county, and sometimes act[ ] for another governmental entity, like the state." *Id.* In such cases, courts must "weigh state law and the policymaker's complained-of action" to determine "which entity is to

blame." *Id.* The ultimate question is which governmental entity the official "represents" when engaging in the acts that are the subject of the lawsuit. *See McMillian v. Monroe County*, 520 U.S. 781, 785–86, 793 (1997).

A 2022 decision from the Fifth Circuit, along with subsequent Fifth Circuit precedent interpreting that decision, leads inexorably to the conclusion, as a matter of law, that a Louisiana district attorney represents and acts on behalf of the State of Louisiana when prosecuting offenses against the state, determining what evidence to disclose in the course of those prosecutions, and adopting policies relating to such disclosure. Accordingly, Mr. Brown's claims against the District Attorney's Office must be dismissed for failure to state a claim.[1]

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's 'factual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Although the Court must "accept all well-pleaded facts as true," it should not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quotation omitted).

---

[1] Mr. Brown's claim under the Louisiana Constitution is duplicative of his § 1983 claim. *See* Doc. No. 1 at ¶ 198 ("The same conduct that violated Brown's federal constitutional rights also violated the rights that the Louisiana Constitution guarantees to Brown."). As discussed below, the constitution, statutes, and jurisprudence of Louisiana make clear that district attorneys act on behalf of the state when they prosecute crimes against the state. Accordingly, Mr. Brown's state-law claim against the Orleans Parish District Attorney's Office is subject to dismissal on the same grounds set forth in this motion with respect to § 1983 claims.

I.     **The Fifth Circuit's 2022 *en banc* decision in *Daves v. Dallas County* clarifies circuit precedent on several points and emphasizes that § 1983 claims against municipalities must focus on *which governmental entity* an alleged policymaker was acting for.**

In 2022, the Fifth Circuit issued an important *en banc* decision that "clarified how to attribute a policymaker's actions" in a § 1983 action. *Arnone*, 29 F.4th at 267. In *Daves v. Dallas County*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc), the Fifth Circuit emphasized that "Section 1983 litigation requires [courts] to identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." The plaintiffs in *Daves* challenged the bail system used in Dallas County criminal courts on constitutional grounds and sued (among other parties) the County Judges who had promulgated a misdemeanor bail schedule, which they characterized as an official "policy." *See id.* at 527–30. The Fifth Circuit considered whether the County Judges were acting on behalf of Dallas County or on behalf of the State of Texas in developing the bail schedules. *See id.* at 538–40. The Fifth Circuit concluded that "the judges were exercising state judicial power and thus acting for the state"; therefore, they "cannot create liability for Dallas County for those actions." *See id.* at 540, 542.

The Fifth Circuit's analysis in *Daves* is instructive. The Fifth Circuit explained that "[d]eciding if judges act for Texas or Dallas County when establishing a bail schedule for their court is a question of state law as applied to that specific function." *See Daves*, 22 F.4th at 534. The Fifth Circuit found that, as the name suggests, the County Judges have "strong . . . connections" to their counties and are indeed "county officers" in some respects and for some purposes. *See id.* at 536–37. Yet the Fifth Circuit rejected an "all or nothing" approach, asking instead whether the judges acted on behalf of the state with respect to the specific conduct challenged in the lawsuit. *See id.* The Fifth Circuit also explained that "[t]he geographic limit of their action does not define the level of government for which the judges acted." *Id.* at 540.

4

The Fifth Circuit found it "[m]ost relevant" that the Texas Constitution vests "[t]he judicial power of [the] State" in County Courts (among other courts). *See Daves*, 22 F.4th at 537. The Fifth Circuit also noted that the County Judges "have authority over a category of criminal offenses established by state statutes." *Id.* at 538. The Fifth Circuit further noted that "bail is a right granted by the state constitution, . . . and the process for determining bail is controlled by state statutes." *Id.* at 540. The Fifth Circuit thus concluded that the County Judges were exercising "the judicial power of the state" in setting bail in individual cases. *See id.* at 539–40. The Fifth Circuit further concluded that the County Judges were exercising "the judicial power of the state" in creating bail-setting *policies* (*i.e.*, the bail schedules), because "the act of creating guidance for setting bail is 'inextricably linked' to the subsequent setting of bail." *Id.*

II.     **In *Arnone v. County of Dallas County*, the Fifth Circuit applied *Daves* and dismissed claims against a county after concluding that a district attorney was acting on behalf of the state in making decisions about criminal prosecutions.**

In *Arnone*, the Fifth Circuit expounded on the reasoning of *Daves* and applied it to a § 1983 claim against a Texas county based on allegedly unconstitutional policies of the district attorney. The plaintiff was prosecuted for sexual abuse of a minor and sentenced to deferred-adjudication community supervision following a nolo contendere plea. *See Arnone*, 29 F.4th at 264. The district attorney moved to revoke his deferred adjudication after he failed two polygraph examinations, and he was ultimately sent to prison. *See id.* The plaintiff sued the county under § 1983, alleging that the district attorney's policy of seeking revocation of deferred adjudication based on polygraph results was unconstitutional. *See id.* at 265. The Fifth Circuit held that "[a]pplying *McMillian* and *Daves*, the district attorney acted as a state—not county—policymaker in promulgating or acquiescing to the polygraph policy." *Id.* at 268. Accordingly, the Fifth Circuit held that the plaintiff's suit was properly dismissed for failure to state a claim. *See id.* at 264.

The Fifth Circuit first explained the "dual-hat problem" in municipal-liability cases:

Dallas County is not liable under *Monell* for just any official policy that violated Arnone's constitutional rights. No. Dallas County can be held liable only for those decided or acquiesced to by a *county* policymaker. A policymaker is an official whose decisions represent the official policy of the local governmental unit. . . .

But sometimes a policymaker wears more than one hat. Again, only *county* policymakers count for liability under *Monell*. So what happens when an official sometimes acts for the county, and sometimes acts for another governmental entity, like the state? In those cases, we have to weigh state law and the policymaker's complained-of actions. Only then can we decide which entity is to blame.

*Arnone*, 29 F.4th at 266 (quotation omitted). The Fifth Circuit explained that "[t]he controlling Supreme Court decision on the dual-hat problem is *McMillian v. Monroe County*." *Id.* Applying the standards of *McMillian* and *Daves*, the Fifth Circuit found that:

- "[T]he Texas Constitution supports that the district attorney acts for the state," providing "the Legislature—a state entity—with a direct role in regulating both the scope of prosecutorial duties and compensation for district attorneys." *Arnone*, 29 F.4th at 268.

- The Texas Constitution "provides for district attorneys to represent Texas in criminal prosecutions." *Arnone*, 29 F.4th at 269 (quotation omitted).

- Texas jurisprudence considers district attorneys "officers of the judicial branch of government." *Arnone*, 29 F.4th at 269 (quoting *Saldano v. Texas*, 70 S.W.3d 873, 878 (Tex. Crim. App. 2002) (en banc)).

- The Texas Code of Criminal Procedure provides that district attorneys "represent the *State*" in criminal cases. *Arnone*, 29 F.4th at 269 (quoting Tex. Code Crim. Proc. art. 2.01 (emphasis added)).

- The powers of the Dallas County district attorney are specifically set forth in state legislation. *See Arnone*, 29 F.4th at 269 & n.57 (citing Tex. Gov't Code § 44.157).

The Fifth Circuit rejected the plaintiff's attempt to distinguish "a general grant of state power" from "its differing, county-level execution, which requires a county-level policymaker," explaining: "[W]e rejected that argument in *Daves*." *Arnone*, 29 F.4th at 270. The Fifth Circuit was also unpersuaded by the fact that "the district attorney is geographically limited in his jurisdiction and elected by Dallas voters." *See id.* The Fifth Circuit also held that two of its prior

decisions considering whether a Texas district attorney acted on behalf of a county[2] had been "undermine[d]" by *Daves* and *McMillian* and were not controlling. *See id.* at 270–71.

The Fifth Circuit explained that policymaking is "inextricably linked" with the specific actions taken pursuant to such policies:

> The county and district judges' decision [in *Daves*] to promulgate bail schedules governing future uses of judicial power to set bail was inextricably linked with their judicial power to set bail in individual cases. That is analogous to here. The district attorney's promulgating or acquiescing to a policy governing future uses of the power to seek revocation of probation or deferred adjudication is inextricably linked with his power to seek it in individual cases.

*Id.* Ultimately, the Fifth Circuit concluded that "Texas law . . . points one way in this case":

> [D]istrict attorneys act for the state when they decide to seek revocation of probation or deferred adjudication. A policy governing when to exercise that power in the future—whether because of a polygraph result, or not—is inextricably linked to that use of state power, just like it was in *Daves*. Therefore, the Dallas County district attorney acted as a *state* policymaker when he decided or acquiesced to the polygraph policy in this case. . . .
>
> At end, then, Dallas County's district attorney may very well be elected only by its voters. He may hold sway only in Dallas County. And he may even have complete dominion over the internal policies and procedures used within his office. But on these facts, the Dallas County district attorney acted for the state—not county— when he promulgated or acquiesced to the polygraph policy.

*Arnone*, 29 F.4th at 269–70, 272.

The Fifth Circuit considered the possibility that, under its reasoning, states could "insulat[e] municipalities from *Monell* liability" by "assign[ing] state officials, who are entitled to Eleventh Amendment immunity, to act as policymakers for local governing bodies." *Arnone*, 29 F.4th at 272. The Fifth Circuit explained, however, that such concerns were ultimately beside the point: "While those arrangements remain troubling, *McMillian* and *Daves* no longer leave room

---

[2] *Crane v. State of Texas*, 759 F.2d 412 (5th Cir. 1985), and *Crane v. State of Texas*, 766 F.2d 193 (5th Cir. 1985).

for us to police them. What matters under *McMillian* and *Daves* is the specific function the policymaker exercised under *state* law." *Id.*

III. **For the same reasons set forth in *Daves* and *Arnone*, the claims against the District Attorney's Office must be dismissed because they are based on alleged actions taken on behalf of the State of Louisiana while representing the State of Louisiana.**

    A. **Mr. Brown's claims challenge alleged actions taken during his prosecution in state court for a state-law crime, along with the policies that allegedly led to those actions.**

Mr. Brown alleges that he was charged with the aggravated rape of L.B., a six-year-old child, and ultimately convicted by an Orleans Parish jury in 1999. *See* Doc. No. 1 at ¶¶ 52, 103, 127. Aggravated rape is a criminal offense defined by the Louisiana Legislature and codified at LA. REV. STAT. § 14:42. The charges against Mr. Brown were brought on behalf the State of Louisiana. *See State of Louisiana v. Patrick Brown*, 746 So. 2d 643 (La. App. 4th Cir. 1999). Mr. Brown's claims against the Orleans Parish District Attorney's Office in this lawsuit are based on alleged acts and omissions in the course of his prosecution for aggravated rape. *See* Doc. No. 1 at ¶¶ 74–143. He alleges that the District Attorney's Office failed to disclose evidence that was favorable and material to his defense. *See, e.g.*, Doc. No. 1 at ¶¶ 1, 132.

Mr. Brown alleges that "the District Attorney's written policy, standard practices, and regular customs" concerning disclosure of evidence are responsible for the alleged suppression in his criminal case. *See* Doc. No. 1 at ¶ 192. He alleges that "the District Attorney had an objectively wrong written *Brady* policy that all ADAs were officially required to follow." *Id.* at ¶ 183. He also alleges that "the District Attorney . . . routinely failed to train ADAs on their constitutional obligations to disclose information to criminal defendants." *Id.* at ¶ 184. Although the Plaintiff alleges that the policies he challenges were policies of the District Attorney's Office, that is a legal conclusion that is entitled to no weight in deciding a Rule 12(b)(6) motion. *See, e.g.*, *Arnone*, 29 F.4th at 268 n.48 ("Whether a county policymaker exists is a question of law for the court.").

Rather, just as in *Arnone*, **the Court** must determine whether the alleged policies in this case are policies of the District Attorney's Office or policies of the State of Louisiana.

B. **The same reasoning employed in *Daves* and *Arnone* dictates that the alleged acts and policies challenged by Mr. Brown were done and made on behalf of the state.**

Mr. Brown's claims against the District Attorney's Office must be dismissed for failure to state a claim because the allegedly unconstitutional actions on which these claims are based occurred in connection with his prosecution for state-law crimes in Louisiana state court. The District Attorney and any Assistant District Attorneys involved in that prosecution were acting as state officials representing the State of Louisiana. Their actions, including any decisions concerning disclosure of evidence to the defense, are attributable to the state—not to a local governmental entity sometimes referred to as the "District Attorney's Office." Moreover, any policies concerning disclosure of evidence in connection with that prosecution, and other prosecutions for state-law crimes, are inextricably linked with disclosure decisions in specific cases. These policies are therefore policies of the State of Louisiana.

The Louisiana Constitution unambiguously recognizes district attorneys as state government officials and vests them with power to act on behalf of the State of Louisiana. Article 2, section 1 provides that "[t]he powers of government of the state are divided into three separate branches: legislative, executive, and judicial." The constitutional provision establishing the office of "district attorney" falls within Article V, governing the "Judicial Branch." *See* LA. CONST. art. 5, § 26.[3] Notably, the district attorney does not fall under Article VI, "Local Government," which governs parishes, municipalities, and other local-government entities. The Louisiana Constitution

---

[3] *See also, e.g.*, *State v. King*, 956 So. 2d 562, 563 (La. 2007) (describing the district attorney as a "quasi-judicial officer").

also establishes the powers of district attorneys, including that a district attorney "shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury." LA. CONST. art. 5, § 26.

This role and this power have likewise been confirmed by the Louisiana Legislature in statutory law and recognized by Louisiana courts in jurisprudence. *See, e.g.*, LA. REV. STAT. § 16:1(C) ("The district attorney for the parish of Orleans or his designated assistant shall have charge of every criminal prosecution by the state in the Criminal District Court for the Parish of Orleans, and represent the state in all matters in the Orleans Parish Juvenile Court."); *Bd. of Comm'rs of Orleans Levee Dist. v. Connick*, 654 So. 2d 1073, 1077 (La. 1995) ("A district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office.") (quoting *Diaz v. Allstate Ins. Co.*, 433 So. 2d 699, 701 (La. 1983)).[4] *La. State Bd. of Nursing v. Gautreaux*, 39 So. 3d 806, 814 (La. App. 1st Cir. 2010) ("A district attorney is vested with broad and sweeping powers as part and parcel of his role as the state's prosecuting attorney, and he exercises a portion of the sovereign power of the state within the district of his office."); *State v. Fifteen Thousand, Four Hundred Thirty-One Dollars*, 779 So. 2d 1043, 1047 (La. App. 3rd Cir. 2001) ("District Attorneys are a part of the judicial branch of state government."); *Hatfield v. Bush*, 572 So. 2d 588, 592 (La. App. 1st Cir. 1990) ("The DA is part of the judicial branch of state government" and "an 'instrumentality of state . . . government' within the purview of" the Public Records Act.). Indeed, only last fall, the Louisiana Supreme Court reaffirmed its understanding that district attorneys are "members of the

---

[4] *See also Diaz*, 433 So. 2d at 701 (A district attorney's "office, duties, and powers are governed by the constitution and the legislature, and are not subject to local control.").

judicial branch" of the Louisiana state government. *See State v. Lee*, 2022-01827 (La. 9/8/2023), 370 So. 3d 408, 412.

Overall, Louisiana law is even clearer than Texas law in defining district attorneys as state officials: "Unlike the Texas constitution, which intermingles its discussions of state and local governmental entities, the Louisiana Constitution carefully divides its attention between the two and primarily discusses the district attorneys' office in the portions reserved for state government." *Hudson v. City of New Orleans*, 174 F.3d 677, 684 (5th Cir. 1999). Additionally, unlike in Texas, the Louisiana Constitution includes a procedure by which the Louisiana Attorney General may "supersede" a district attorney who is representing the state in a civil or criminal action. *See* LA. CONST. art. 4, § 8; *see also Hudson*, 174 F.3d at 690.

As shown in the two charts below, the same considerations that led the Fifth Circuit to conclude in *Daves* and *Arnone* that action on behalf of the state was involved are present here, and arguably even more compelling:

| COMPARISON WITH FACTORS CONSIDERED IN *DAVES* | |
|---|---|
| ***Daves*** | **This case** |
| The Texas Constitution provides that "*[t]he judicial power of this State* shall be vested . . . in *County Courts*," among other courts. (Page 537) | The Louisiana Constitution recognizes district attorneys as state officers in the judicial branch of the state government. *See* LA. CONST. art 2, § 2; LA. CONST. art. 5, § 26. |
| "County Judges have authority over a category of criminal offenses established by state statutes." (Page 538) | A Louisiana district attorney has "charge of every criminal prosecution by the state in his district," including criminal offenses established by state statutes. *See* LA. CONST. art. 5, § 26. |
| "[B]ail is a right granted by the state constitution, . . . and the process for determining bail is controlled by state statutes." (Page 540) | The crime of aggravated rape, like other state-law crimes, is defined by the Louisiana Legislature and codified in the Louisiana Revised Statutes. *See* LA. REV. STAT. § 14:42. |

| COMPARISON WITH FACTORS CONSIDERED IN *ARNONE* | |
|---|---|
| ***Arnone*** | **This case** |
| The Texas Constitution "provides the Legislature—a state entity—with a direct role in regulating both the scope of prosecutorial duties and compensation for district attorneys." (Page 268) | The Louisiana Constitution provides that, in addition to the constitutionally specified duties, district attorneys "shall perform other duties provided by law." LA. CONST. art. 5, § 26(B). Title 16 of the Louisiana Revised Statutes, "District Attorneys," sets forth the qualifications and term of office for district attorneys, salaries for district attorneys and assistant district attorneys, and other matters. *See, e.g.*, LA. REV. STAT. §§ 16:1(A), 16:10, 16:11. |
| The Texas Constitution "provides for district attorneys to represent Texas in criminal prosecutions." (Page 269) | The Louisiana Constitution provides that "a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district" and "be the representative of the state before the grand jury." LA. CONST. art. 5, § 26(B). |
| Texas jurisprudence considers district attorneys "officers of the judicial branch of government." (Page 269) | Louisiana jurisprudence recognizes that "[a] district attorney is a constitutional officer who serves in the judicial branch and exercises a portion of the sovereign power of the state within the district of his office." *Diaz*, 433 So. 2d at 701; *Lee*, 2023 WL 5813836, at *2 (stating that district attorneys are "members of the judicial branch"). |
| The Texas Code of Criminal Procedure provides that district attorneys "represent the *State*" in criminal cases. (Page 269) | Louisiana legislation provides that "[t]he district attorney for the parish of Orleans or his designated assistant shall have charge of every criminal prosecution by the state in the Criminal District Court for the Parish of Orleans, and represent the state in all matters in the Orleans Parish Juvenile Court." LA. REV. STAT. § 16:1(C). |
| The powers of the Dallas County district attorney are set forth in state legislation, specifically Texas Government Code section 44.157.[5] (Page 269 & n.57) | The powers of the Orleans Parish district attorney are set forth in state legislation. *See* LA. REV. STAT. § 16:1(C). |

[5] Texas Government Code section 44.157 provides: "The criminal district attorney of Dallas County shall attend every term of the Criminal Court of Dallas County and of the Criminal District

Like the County Judges in *Daves* and the district attorney in *Arnone* (though to a lesser extent), the Orleans Parish District Attorney is in some limited respects a "local" official. For example, he is elected by Orleans Parish voters; he must be a resident of Orleans Parish; and his representation of the state is limited to courts in Orleans Parish. *See* LA. REV. STAT. § 16:1.[6] But it is nevertheless clear that, when he is prosecuting Louisiana state-law offenses in Louisiana state courts on behalf of the State of Louisiana, he is acting on behalf of the state and not on behalf of any local governmental entity—whether it be the Parish of Orleans, the City of New Orleans, or the "District Attorney's Office." Accordingly, these local governmental entities cannot be held liable for actions taken and policies adopted in that capacity.

Mr. Brown will likely object that granting this motion would leave him without any remedy for his alleged harm, because § 1983 does not encompass claims against states or state officials in their official capacities. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Even if that were true, it would not justify a refusal to apply the controlling legal standard, as explained in *Arnone*. *See Arnone*, 29 F.4th at 272. However, it is not true, and the concern discussed in *Arnone* that states may employ "'ingenious' arrangements" to avoid liability, *see id.*, is not borne out here. To the contrary, the Louisiana Legislature has voluntarily established a statutory fund to provide compensation for persons wrongfully convicted and imprisoned in Louisiana. *See* LA. REV. STAT. § 15:572.8. The fund was established in 2005 and has been frequently amended in

---

Court No. 2 of Dallas County and shall represent the state in all matters before those courts. The criminal district attorney has exclusive control of criminal cases and all cases heard on habeas corpus in the courts of Dallas County and serves as the district attorney of all the district courts in Dallas County. . . . The criminal district attorney has all the powers, duties, and privileges in Dallas County that are conferred by law on county and district attorneys in the various counties and districts."

[6] Notably, however, the Orleans Parish District Attorney is specifically exempted from various statutes providing for other Louisiana district attorneys to advise and represent local government entities. *See, e.g.*, LA. REV. STAT. § 42:261(A).; LA. REV. STAT. § 16:2(A); LA. REV. STAT. § 16:5.

favor of claimants. For example, the total amount of compensation available, which was previously capped at $190,000, has been increased several times over the years and now stands at $480,000.[7] In fact, Mr. Brown has filed a petition for compensation under § 15:572.8, which is currently pending as Case No. 369-471 in Orleans Parish Criminal District Court.

## IV.   The controlling standard for determining whether Orleans Parish prosecutors act on behalf of the state is set forth in *Daves*, not in any prior Fifth Circuit jurisprudence.

Mr. Brown will likely argue that the Fifth Circuit has already decided that Louisiana district attorneys are local government officials rather than "arms of the State," and that the argument presented in this motion is foreclosed by circuit precedent. However, as explained below, the Fifth Circuit has not squarely answered the question that, according to *Daves*, must be answered here— whether a Louisiana district attorney acts on behalf of the State of Louisiana when prosecuting state-law crimes in state court. Furthermore, to the extent that any pre-2022 Fifth Circuit jurisprudence would suggest that Louisiana district attorneys *do not* act on behalf of the state in such circumstances, those cases are inconsistent with, and have been abrogated by, the *en banc* decision in *Daves*.

### A.   The Fifth Circuit's decision in *Hudson v. City of New Orleans* concerned Eleventh Amendment immunity and is irrelevant to the question presented here, as explained in *Daves*.

In *Hudson*, the Fifth Circuit considered "whether the Orleans Parish District Attorney's Office is an arm of the state of Louisiana and therefore immune from suit in federal court under the Eleventh Amendment." *Hudson*, 174 F.3d at 679. The Fifth Circuit, remarking that "[t]he

---

[7] *See* LA. REV. STAT. § 15:572.8(H)(2) & (3); *see also* 2007 La. Sess. Law Serv. Act 262 (S.B. 172) (compensation limited to $150,000 plus up to $40,000 for "loss of life opportunities"); 2011 La. Sess. Law Serv. Act 262 (H.B. 285) (maximum amount increased to $250,000 plus up to $80,000 for "loss of life opportunities"); 2019 La. Sess. Law Serv. Act 121 (H.B. 492) ($80,000 payment for "loss of life opportunities" made mandatory); 2021 La. Sess. Law Serv. Act 257 (H.B. 92) (limit of $250,000 for "physical harm and injury" increased to $400,000).

question is a close one," ultimately concluded that "the Orleans Parish District Attorney's office is not an arm of the state and therefore not entitled to the benefits of the Eleventh Amendment." *See id.* at 682–83. As explained in *Daves*, the holding in *Hudson* has no relevance to the question presented by this motion—"whether an official was acting for a state or a local government." *See Daves*, 22 F.4th at 534.[8] "Whether state sovereign immunity as signified by the Eleventh Amendment applies to bar suit and whether an official is acting for the state and thus exempt from suit under Section 1983 involve different analyses." *Id.* at 532. Indeed, the *Daves* opinion cautions that the six factors weighed in *Hudson* to answer the sovereign-immunity question "can be misleading in Section 1983 analysis." *See id.* at 533.

For example, the *Hudson* panel explained that the "[m]ost important[ ]" fact for purposes of sovereign immunity was that "public funds from the state treasury will not be used to cover an adverse judgment against" the Orleans Parish District Attorney's Office. *See Hudson*, 174 F.3d at 691; *see also Daves*, 22 F.4th at 533 ("We have stated that the source of funding is the most important factor in the Eleventh-Amendment analysis."). By contrast, the Fifth Circuit held in *Daves* that "we examine *function, not funding*, when deciding whether an official is acting for the state or local government in a case brought pursuant to Section 1983." *Daves*, 22 F.4th at 533 (emphasis added). "The focus under Section 1983 must be on discerning what state law provides as to the specific relevant function, *i.e.*, the act that is being challenged in the litigation. If we instead prioritize identifying the source of the overall funding or the primary concern of the entity

---

[8] *See also Daves*, 22 F.4th at 534 ("Even if the *Hudson* opinion claimed it had relevance to that determination, though we hold it did not, nothing there can override a Supreme Court decision."); *Daves*, 22 F.4th at 555 (Haynes, J., dissenting) ("[T]he majority opinion concludes that our decision in *Hudson* . . , which set various factors for determining how to delineate state and local officials, has no bearing on this case because it arose in the context of the Eleventh Amendment.").

or official, as *Hudson* demands, we will be focusing on generalities and not on the specifics of the relevant act." *Id.*

**B.**     **The Fifth Circuit's decision in *Burge v. Parish of St. Tammany* does not squarely answer the question presented in this motion, and, in any event, is undermined by the *en banc* decision in *Daves*.**

In *Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999), the Fifth Circuit considered "what entity is liable under § 1983 in an 'official capacity' suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants." The Fifth Circuit first noted that circuit precedent had already established that "a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." *See id.* at 466, 469 (citing *Mairena v. Foti*, 816 F.2d 1061 (5th Cir. 1987)). Starting from that premise, the Fifth Circuit went on to discuss various "constitutional and statutory provisions" indicating that a Louisiana district attorney is "virtually an autonomous local government official" who is "the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." *See id.* at 469. The Fifth Circuit then "infer[red]" that "the entity liable for the torts of a district attorney's employees under state law is the office of the district attorney as an independent local government entity." *Id.* The Fifth Circuit concluded that "in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." *Burge*, 187 F.3d at 470.

The holding of *Burge* is not controlling because the opinion never squarely answers the question that *Daves* identifies as critical: does a Louisiana district attorney act on behalf of the State of Louisiana, or on behalf of the "district attorney's office" (an independent local governmental entity), when he or she creates policies relating to disclosure of evidence in

prosecutions for state-law crimes? And to the extent that *Burge* could be read as rejecting the assertion that the district attorney acts on behalf of the state, its reasoning has been undermined by *Daves* and cannot stand.[9] *Burge* relied heavily on Eleventh Amendment sovereign immunity considerations that *Daves* held (for the first time) to be inapplicable. At the same time, *Burge* apparently gave no weight to the factors that were deemed "most relevant" in *Daves*—specifically, the constitutional provisions, statutes, and jurisprudence holding that Louisiana district attorneys are state officials who are empowered to prosecute state-law crimes on behalf of the State of Louisiana in state courts. *See Daves*, 22 F.4th at 537–40 (discussing similar provisions concerning Texas County Judges).

The analysis in *Burge* began with, and was heavily influenced by, a prior determination that a Louisiana district attorney is "a local, not a state, government official" for purposes of Eleventh Amendment immunity. *See Burge*, 187 F.3d at 469.[10] After starting with the premise that the district attorney is not a state official, the court's analysis reflects that it never gave any consideration at all as to whether the district attorney might nevertheless act on behalf of the state in some circumstances. *Burge* also reflects that, in considering which governmental entity the district attorney acts on behalf of, the court relied on factors that are important in an Eleventh Amendment immunity analysis. The conclusion in *Burge* was based primarily on findings that (1) a Louisiana district attorney is an "independent" and "virtually autonomous local government official"; and (2) under state law, "the district attorney's office as an independent local entity"

---

[9] Notably, the Fifth Circuit has already recognized that its earlier jurisprudence on whether Texas district attorneys act on behalf of the state was implicitly overruled by the *en banc* decision in *Daves. See Arnone*, 29 F.4th at 270–72.

[10] *See also Burge*, 187 F.3d at 469 ("As we noted earlier, for purposes of Eleventh Amendment immunity, a district attorney, sued in his official capacity, is a local, not a state, government official and, therefore, is not entitled to such immunity.").

would be liable for the torts of the district attorney's employees. *See id.* at 469–70. Both of these factors—"[t]he entity's degree of local autonomy" and "[t]he source of the entity's funding"—are considered in determining whether an entity is entitled to Eleventh Amendment immunity. *See Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999).

The *Burge* panel's consideration of Eleventh Amendment immunity factors to determine which governmental entity the district attorney was acting on behalf of was not surprising or unusual at the time. As the dissenting judges explained in *Daves*, the Fifth Circuit had done so in other cases as well.[11] For example, in *Flores v. Cameron County*, 92 F.3d 258, 263–69 (5th Cir. 1996), the court considered the six traditional Eleventh Amendment factors to determine whether the Cameron County Juvenile Probation Board acted on behalf of the state or the county in setting policy for the county's juvenile detention center.[12]

In *Daves*, however, the Fifth Circuit emphasized that "[w]hether state sovereign immunity as signified by the Eleventh Amendment applies to bar suit and whether an official is acting for the state and thus exempt from suit under Section 1983 involve different analyses." *Daves*, 22 F.4th at 532. The Fifth Circuit also held, for the first time, that the six traditional Eleventh Amendment factors "can be misleading in Section 1983 analysis" and therefore should not be relied on. *Id.* at 533. The Fifth Circuit particularly emphasized that examining "the source of funding"—the "most important factor in the Eleventh-Amendment analysis"—was unhelpful in determining whether an official acted on behalf of the state "as to the specific relevant function, *i.e.*, the act that is being challenged in the litigation." *Id.* As the dissenting judges pointed out, the

---

[11] In the view of the dissenting judges, this was appropriate because "the two matters are undeniably intertwined." *See Daves*, 22 F.4th at 555 (Haynes, J., dissenting).

[12] *See also Flores*, 92 F.3d at 264 ("Whether a particular governmental body is a state or local entity is a question usually addressed in the context of determining Eleventh Amendment immunity.").

court's holding that the Eleventh Amendment factors have "no bearing" on the § 1983 analysis was a "revis[ion] of [the Fifth Circuit's] previous decisions." *See id.* at 555–56 & n.3 (Haynes, J., dissenting).

Consistent with its rejection of the Eleventh Amendment factors, *Daves* did not discuss the autonomy, funding, or potential liability of Texas county judges, and the Fifth Circuit was unpersuaded by the fact that state law classified county judges as "county officers." *See Daves*, 22 F.4th at 534–40. Rather, in concluding that the county judges act for the state when addressing issues of bail, the Fifth Circuit found it essentially dispositive that "the Texas constitution provides that judges exercise state judicial power generally," that "bail is a right granted by the state constitution," and that "the process for determining bail is controlled by state statutes." *See id.* at 540. The conclusion is inescapable that the analysis performed in *Daves* is materially different from the analysis of *Burge*, and it compels a different outcome in this case.

Finally, *Burge* also failed to consider that disclosure of evidence to criminal defendants by Louisiana district attorneys is heavily regulated at the state level. For example, the Louisiana Code of Criminal Procedure extensively regulates discovery and imposes disclosure obligations that encompass, but go far beyond, the constitutional obligations of *Brady*.[13] Moreover, pursuant to its plenary authority to regulate the practice of law in Louisiana (as discussed above), the Louisiana Supreme Court has adopted Rule of Professional Conduct 3.8(d), which requires prosecutors to:

> make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutors, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

---

[13] *See, e.g.*, LA. CODE CRIM. PROC. arts. 716(D), 717(A), 717(B), 718, 719, 723, 729.5(B).

And the Rules of Professional Conduct "have the force and effect of substantive law." *Succession of Cloud*, 530 So. 2d 1146, 1150 (La. 1988). Accordingly, district attorney policies on disclosure of evidence favorable to the accused in Louisiana are far more "inextricably linked" to the use of state power than the polygraph policy at issue in *Arnone*. *See Arnone*, 29 F.4th at 270.

## V.    Decisions of other sections of this Court rejecting the same arguments are unpersuasive and should not be followed.

In five separate cases, other sections of this Court have denied motions to dismiss by the District Attorney's Office raising the same arguments raised in the present motion.[14] As explained below, these rulings are erroneous for multiple reasons and should not be followed by this Court.

### A.    *Floyd v. Dillmann*

The *Floyd* court held that the argument of the District Attorney's Office was "foreclosed" by the Fifth Circuit's 1999 decision in *Burge*. The court further held that *Burge* was not overruled by *Daves* because "[b]oth *Daves* and *Burge **purport to*** apply the analysis set forth by the Supreme Court in 1997 in *McMillian*." *Floyd*, Doc. No. 219 at 7–8 (emphasis added); *see also id.* at 8 ("*Daves* and *Burge* . . . each cite to *McMillian* and purport to perform the same analysis."). The court made no attempt to defend the correctness of the *Burge* decision or explain how the same result could be reached considering the factors relied on in *Daves*. Indeed, the court acknowledged, and did not dispute, the argument that the analysis in *Daves* differed from the analysis in *Burge* in critical ways, yet concluded that *Burge* was nevertheless controlling:

> [Defendant] argues that the court in *Burge* considered factors—such as Eleventh Amendment immunity, vicarious liability, and the attorney's autonomy and independence—that the *Daves* and *Arnone* courts held were not important or

---

[14] *See Floyd v. Dillmann*, No. 19-cv-8769, Doc. No. 219 (E.D. La. Mar. 6, 2023) (Milazzo, J.); *Smith v. Williams*, No. 22-cv-1550, 2023 WL 2263841 (E.D. La. Feb. 28, 2023) (Brown, C.J.); *Reeder v. Williams*, No. 22-cv-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023) (Zainey, J.); *Jones v. Williams*, No. 22-cv-5097, 2023 WL 3211865 (E.D. La. May 2, 2023) (Ashe, J.); *Williams v. Williams*, No. 23-cv-1922, 2023 WL 6160990 (E.D. La. Sep. 21, 2023) (Africk, J.).

> controlling on the questions before them. He argues that the *Burge* court gave insufficient weight to what *Daves* considered 'most relevant'—that is, the constitutional provisions, statutes, and case law holding that district attorneys are state officials empowered to prosecute state law crimes on behalf of the State. Even assuming that Defendant's characterization of the *Burge* opinion has merit, this Court is not any less bound by the holding of *Burge*.

*Floyd*, Doc. No. 219 at 7. The court also acknowledged, and did not dispute, the argument that

*Burge* did not directly answer the critical question required under *Daves*, yet concluded that the

ultimate holding in *Burge* left "does not leave this Court any room to reach a contrary result." *Id.*

at 7 n.34.[15]

Although the *Floyd* court's caution in declaring Fifth Circuit precedent to be abrogated is

understandable, the instructions of the *en banc* Fifth Circuit must be heeded—even if they lead to

a result that is at odds with prior circuit precedent. Contrary to the *Floyd* court's conclusion that

"*Daves* did not create a new analysis," *Floyd*, Doc. No. 219 at 8, the analysis announced in *Daves*

is indeed different from, and irreconcilable with, *Burge* (as demonstrated by the discussion above

applying the analysis in *Daves* to the facts of this case). The fact that *Daves* and *Burge* both cite

and "purport to" apply the Supreme Court's opinion in *McMillian* does not answer the question,

because it is clear that *Burge* relied on the Eleventh Amendment sovereign immunity factors that

*Daves* held (for the first time) to be inapplicable. As explained in *Arnone*, if "*Daves* undermined

[the] reasoning" of a prior circuit decision, that prior decision has been overruled, even if this

---

[15] *See Floyd*, Doc. No 219, at 7 n.34 ("Even assuming, as Defendant suggests, that *Burge* does not squarely answer the question of whether a district attorney acts for the State or the local government when he creates *Brady* policies, the holding of *Burge* does not leave this Court any room to reach a contrary result. For example, this Court cannot say that a district attorney is acting on behalf of the State in enacting *Brady* policies and therefore cannot be liable under § 1983 without undermining Burge's holding that a district attorney can be liable under § 1983 as a local entity for its unconstitutional *Brady* policies.").

overruling was not explicitly stated. *See Arnone*, 29 F.4th at 270–71 (explaining that two prior decisions concerning Texas district attorneys were implicitly overruled by *Daves*).

The *Floyd* court also stated that, "in an unpublished per curiam decision released after *Daves*, the Fifth Circuit relied on *Burge* for the proposition that a district attorney acted as an arm of the parish for the purposes of a § 1983 claim." *Floyd*, Doc. No. 219 at 8–9 (citing *Kimble v. Jefferson Parish Sheriff's Office*, No. 22-30078, 2023 WL 1793876 (5th Cir. Feb. 7, 2023)). But rather than demonstrating that the Fifth Circuit has reaffirmed the reasoning and result of *Burge*, this decision provides further reason to doubt its validity. In *Kimble*, the parties did not raise the question of which governmental entity (*i.e.*, the state, the parish, or the district attorney's office as an independent municipal entity) a Louisiana prosecutor acts on behalf of in prosecuting crimes against the state, and the courts did not analyze that question.[16] Certainly no party discussed the Fifth Circuit's *en banc* ruling in *Daves* and argued that *Burge* has been abrogated in part.

Moreover, as the *Floyd* court noted, the holding of *Kimble* was that the assistant district attorney acted as an arm **of the parish**. *See Kimble*, 2023 WL 1793876, at *3 ("As for her official capacity, [the assistant district attorney] acted as an arm of Jefferson Parish, the governmental entity she represented."). This contradicts *Burge*, which held that a Louisiana district attorney's office is an "autonomous" and "independent local entity." *See Burge*, 187 F.3d at 469–70.[17] If the rationale of *Kimble* were followed, that would mean that the alleged policies that the Plaintiff complains of are attributable to Orleans Parish—not to the District Attorney's Office as an

---

[16] *See, e.g.*, *Gahagan v. U.S. Citizenship & Immigration Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) ("An opinion restating a prior panel's ruling does not *sub silentio* hold that the prior ruling survived an uncited Supreme Court decision.").

[17] *See also Burge*, 187 F.3d at 469 (stating that the district attorney is "constitutionally shielded from the effect of powers granted other local government entities").

independent local government entity. In other words, it would mean that the Plaintiff should have sued Orleans Parish, and the claims against the District Attorney's Office must be dismissed.

### B.    *Smith v. Williams*

Like the *Floyd* court, the *Smith* court concluded that *Burge* was controlling and had not been overruled. However, the *Smith* court also went on to conduct its own analysis, ultimately concluding that *Burge* was correctly decided. As explained below, the *Smith* court's analysis is contrary to *Daves* and should not be followed.

*Daves* explains that § 1983 requires courts to examine "state law" to "identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." *Daves*, 22 F.4th at 533. In *Daves*, the Fifth Circuit began this analysis with the provisions of the Texas constitution vesting county judges with power to act on behalf of the state, which it found to be the "[m]ost relevant" factor. *See id.* at 537. The *Smith* court likewise began its analysis with the Louisiana Constitution, recognizing that it vests district attorneys with the power to take "charge of every criminal prosecution by the state in his district [and] be the representative of the state before the grand jury in his district." *See Smith*, 2023 WL 2263841, at *8 (quoting LA. CONST. art. 5, § 26(B)). Because a criminal prosecution pursued by a district attorney is a "criminal prosecution by the state," the district attorney is clearly acting on behalf of the state and exercising the power of the state. However, after noting that the question was a close one, the *Smith* court concluded that this clear constitutional language was outweighed by legislation from the 1980s that, in its view, "evidence[s] a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices." *See id.* at *8–9.

The *Smith* court's conclusion was erroneous for multiple reasons. First, the intent and effect of the legislation discussed by the court was to limit the monetary liability of the State of Louisiana.

The statutes were passed as one of "six statutory measures" enacted by the legislature in the 1985 session "to relieve the state of some of the burdens of ordinary tort liability." *Rhodes v. State through Dep't of Transp. and Dev.*, 656 So. 2d 650, 660 n.6 (La. App. 1st Cir. 1995). The other measures enacted at the same time included a $500,000 cap on general damages in personal injury actions against the state; elimination of state liability for "policy-making or discretionary acts or omissions"; and elimination of state liability for "things in the custody of governmental entities" in some circumstances. *See id.*

The fact that state law does not make the state vicariously liable for the actions of district attorneys does not mean that district attorneys never act on behalf of the state or exercise the power of the state. This point is illustrated perfectly by the Supreme Court's decision in *McMillian*. The Supreme Court held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama." *McMillian v. Monroe County*, 520 U.S. 781, 793 (1997). Yet in the same opinion, the Supreme Court noted that the State of Alabama would never be liable for the actions of any sheriff because its constitution included a sovereign immunity provision barring suits against the state. *See id.* at 789 n.5.

Just as in *McMillian*, the fact that the Louisiana Legislature exercised its constitutional authority[18] to define the extent of Louisiana's sovereign immunity by disclaiming vicarious liability for the actions of district attorneys does not negate that Louisiana district attorneys plainly exercise the power of the state in some circumstances. As the Fifth Circuit explained in *Daves*, the question of whether the state is liable for the actions of an official is very important in an Eleventh

---

[18] The Louisiana Constitution permits the legislature to "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." La. Const. art. 12, § 10(C).

Amendment analysis, because "an important goal of the Eleventh Amendment is the protection of state treasuries." *Daves*, 22 F.4th at 533 (quotation omitted). But it is unimportant, and potentially "misleading," in determining "the level of government for which an official was acting." *See id.*

Second, even assuming the legislation discussed by the *Smith* court reveals an intention by the legislature to classify district attorneys as "local officials" rather than state officials, *see Smith*, 2023 WL 2263841, at *9, that still does not answer the question of whether they are acting on behalf of the state in performing certain activities. Critically, in *Daves*, the Fifth Circuit concluded that the Texas Constitution, as well as legislation and jurisprudence, designated county judges as "county officers." *Daves*, 22 F.4th at 535–36. Yet the Fifth Circuit went on consider whether the county judges nevertheless act on behalf of the state in setting bail: "Our question . . . is for whom statutory county judges act as to bail. The answer is not found by grouping these judges in an 'all or nothing' manner." *Id.* at 536 (quoting *McMillian*, 520 U.S. at 785).

Notwithstanding the guidance of *Daves* and *McMillian*, the *Smith* court appears to have made an "all or nothing" determination of whether Louisiana district attorneys are state officials or local officials, rather than considering whether district attorneys act on behalf of the state in the specific area of criminal prosecutions and disclosure of evidence to criminal defendants. The 1980s legislation discussed by the court does not focus on evidence disclosure, or even criminal prosecutions more generally—it provides, categorically, that the state is not liable (in damages or indemnity) for *any* actions of district attorneys and their employees. Nor did the court cite or discuss any other sources addressing whether Louisiana district attorneys act on behalf of the state in prosecuting crimes and disclosing evidence. And while the court's conclusion is stated with

specificity,[19] nothing in the court's reasoning justifies this specificity—rather, the logical implication of the court's reasoning is that Louisiana district attorneys never act on behalf of the state for any purposes.

The *Smith* court stated that "several intermediate appellate courts have found that the Louisiana Legislature's amendments to the indemnity and limitation of liability statutes evidence a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices." *See Smith*, 2023 WL 2263841, at *9. However, this statement appears to be incorrect.

The *Smith* court cited only one opinion in support of this statement, *Obermier v. State*, 606 So. 2d 937 (La. App. 3rd Cir. 1992). *See Smith*, 2023 WL 2263841, at *9. *Obermier* involved a suit against the State of Louisiana for damages allegedly caused when the district attorney took possession of a building for investigative purposes. *See Obermier*, 606 So. 2d at 938. The Third Circuit explained that LA. REV. STAT. § 42:1441 "mandates that the state shall not be liable for any damages caused by the district attorney." *Id.* at 939. However, *Obermier* did not discuss the legislative amendments to the indemnity and limitation-of-liability statutes, and it included no discussion at all of legislative intent. Furthermore, *Obermier* did not address the question of whether the district attorney acted on behalf of the state, or suggest that he did not. And *Obermier* does not concern "evidence disclosure policies and practices" in any way. Undersigned counsel is unaware of any other decisions of Louisiana appellate courts addressing whether Louisiana district attorneys act on behalf of the state in prosecuting crimes and disclosing evidence.

---

[19] *See Smith*, 2023 WL 2263841, at *9 ("[I]t cannot be said that Louisiana law empowers Louisiana district attorneys to make policy on behalf of the State in their *Brady* compliance functions.").

Third, the *Smith* court held that the "clearly expressed legislative intent underscoring the 1984 and 1985 amendments in Louisiana" distinguishes Louisiana from Texas and explains the differences in how district attorneys in the two states are treated. *See Smith*, 2023 WL 2263841, at *9 n.136. However, Texas jurisprudence contains numerous decisions that—like the Louisiana legislation from the 1980s—describe Texas district attorneys as local officials rather than state officials.[20] Nevertheless, the Fifth Circuit held in *Arnone* that Texas district attorneys "act for the state when they decide to seek revocation of probation or deferred adjudication." *Arnone v. County of Dallas County*, 29 F.4th 262, 269–70 (5th Cir. 2022).

Finally, it is worth noting that the 1980s legislation relied on by the *Smith* court does not support its conclusion that "a Louisiana district attorney acts as an autonomous local government official." *See Smith*, 2023 WL 2263841, at *9. Rather, that legislation would suggest that a Louisiana district attorney is a ***parish*** official. The title of LA. REV. STAT. § 42:1441.2 is "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other law for

---

[20] *See, e.g.*, *Robbins v. Lostracco*, 578 S.W.3d 130, 133 n.1 (Tex. App. 2019) (tort claim against Texas district attorney in her official capacity was construed as a suit against the county she represents); *Sweed v. City of El Paso Police Dep't*, 346 S.W.3d 679, 680 (Tex. App. 2009) ("The court found the District Attorney's office had no legal existence and capacity to be sued since it is not a separate entity from El Paso County."); *Lockridge v. Martin*, No. 02-21-00047-CV, 2021 WL 1421424, at *1 (Tex. App. Apr. 15, 2021) (holding that official-capacity suit against Dallas County Assistant District Attorney must be brought in Dallas County pursuant to mandatory venue provision requiring claims against a county to be brought in that county); *Gonzalez v. Lichtenberger*, No. 04-16-00192-CV, 2017 WL 2562768, at *1, 4 (Tex. App. June 14, 2017) (holding that the "Individual Webb County Defendants," including Webb County assistant district attorneys, were sued "for conduct within the general scope of their employment," and that the plaintiff's "tort claims against them could have been brought against the City of Laredo and Webb County"); *Harris v. Francis*, No. 05-99-00866-CV, 2000 WL 175588, at *5 n.2 (Tex. App. Feb. 16, 2000) ("Because official capacity suits are simply another way of pleading a cause of action against the government, Harris' claims against [an assistant district attorney and defendants] in their official capacities must necessarily fail in light of the County's sovereign immunity."); *Shull v. Bexar County*, No. 04-99-00286-CV, 2000 WL 5251, at *5 (Tex. App. Jan. 5, 2000) (holding that judgment in favor of Bexar County barred any action on the same subject matter against Bexar County District Attorney Steven Hilbig because he was an employee of the county).

torts of **parish officials** . . .” (Emphasis added). And as the *Smith* court recognized, “the Louisiana Attorney General released numerous opinions which led to his ultimate conclusion that the legislative intent behind the 1984 and 1985 legislative actions to amend the indemnification and limitation of liability statutes clearly establishes that Louisiana district attorneys are considered **employees of their respective parishes** . . . .” *See Smith*, 2023 WL 2263841, at *8 n.127. Indeed, Attorney General Opinion 87-328, which the court cites, states (contrary to the court’s ultimate conclusion) that the office of a district attorney “is not a political subdivision.” *See id.* (citing the opinion number as “87-238”); LA. ATTY. GEN. OP. No. 87-328 (July 1, 1987). But as discussed above, if prosecutors are in fact acting on behalf of the parish when prosecuting crimes and making policies about prosecution of crimes, that would mean that those actions and policies are attributable to the parish. If that is the case, the result here would be that Orleans Parish is the proper defendant, and the claims against the District Attorney’s Office must be dismissed.

C.     *Reeder v. Williams*

The decision in *Reeder* relied heavily on the opinions in *Smith* and *Floyd* and included only one paragraph of analysis:

> This Court agrees with the sound and thorough reasoning of both Chief Judge Brown and Judge Milazzo. *Burge* does control and *Burge* remains good and binding law following *Daves*. Given that *Daves* dealt with the role of judges under Texas law, no legitimate argument can be made that the en banc *Daves* decision overruled *Burge*. In fact, in a recent unreported decision, the Fifth Circuit cited *Burge* for the proposition that for purposes of a § 1983 official capacity suit, the district attorney’s office (Jefferson Parish) resembles other *local* government entities.

*Reeder*, 2023 WL 2771481, at *3. But as explained above, the conclusion that the Jefferson Parish district attorney is an arm of the *parish* actually contradicts *Burge*, which held that a Louisiana district attorney’s office is an *independent* local government entity. If that holding were followed in this case, the Plaintiff’s claims would have to be dismissed because he has not sued Orleans Parish. Furthermore, the suggestion that “no legitimate argument can be made that [*Daves*]

overruled *Burge*," because *Daves* merely "dealt with the role of judges under Texas law," has already been rejected by the Fifth Circuit. As discussed above, the Fifth Circuit recognized in *Arnone* that *Daves* was not merely a case about Texas judges—rather, it established a general methodology that applies to other officials as well. *See, e.g.*, *Arnone*, 29 F.4th at 270 ("To be sure, *Daves* involved judges, and this case involves a district attorney. . . . But while those may be distinctions, are they *differences*? Hardly."); *id.* at 271 (explaining that "*Daves* undermined [the] reasoning" of an earlier case concerning Texas district attorneys).

### D.   *Jones v. Williams*

The decision in *Jones* relied on the opinions in *Smith*, *Floyd*, and *Reeder*, finding them to be "thoughtful, well-reasoned, and correct in their application of the binding precedent of *Burge*." *Jones*, 2023 WL 3211865, at *3. The *Jones* court similarly concluded that the Fifth Circuit's decision in *Daves* is controlling, and that *Daves* and *Arnone* had not abrogated *Burge* because those decisions concerned Texas law. *See id.* The *Jones* court further explained that it was "without authority" to declare Fifth Circuit precedent to be abrogated, even if there had been an "intervening change in the law" based on higher authority. *See id.* (citing *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021)). The District Attorney's Office respectfully disagrees that a district court lacks the authority to follow the methodology required under more recent *en banc* appellate precedent and reach the result logically required by that methodology, even if that result cannot be reconciled with earlier circuit precedent.

### E.   *Williams v. Williams*

The *Williams* court, apparently rejecting the Fifth Circuit's own statement that *Daves* had clarified existing law,[21] held that *Burge* was not abrogated by more recent decisions because

---

[21] *See Williams*, 2023 WL 6160990, at *3 ("*Arnone* says *Daves* 'clarifies how to attribute a policymaker's actions under *McMillian*' by instructing courts to examine the function the official

"*McMillian*, *Burge*, *Daves*, and *Arnone* all conduct the same inquiry." *Williams*, 2023 WL 6160990, at *3. But as discussed at length above, the analysis announced in *Daves* is indeed different from, and irreconcilable with, *Burge*. The fact that *Daves* and *Burge* both cite and purportedly apply the Supreme Court's opinion in *McMillian* does not answer the question, because it is clear that *Burge* relied on the Eleventh Amendment sovereign immunity factors that *Daves* held (for the first time) to be inapplicable. Notably, the *Williams* court did not discuss the factors that were actually considered and given weight in *McMillian*, *Daves*, or *Burge*, or otherwise demonstrate that these courts were in fact all conducting the "same inquiry."

## CONCLUSION

It is now clear under Fifth Circuit jurisprudence that district attorneys in Texas and Mississippi act on behalf of the state when they prosecute crimes against the state.[22] As a result, local government entities in Texas and Mississippi, such as counties, cities, and district attorney offices, are not threatened with liability under § 1983 and forced to expend their resources defending claims § 1983 alleging wrongdoing by district attorneys. Because Louisiana law makes clear that Louisiana district attorneys, too, act on behalf of the state when they prosecute crimes against the state, there is no justification for treating Louisiana district attorneys differently. Accordingly, Plaintiff Patrick Brown's claims against the District Attorney's Office must be dismissed for failure to state a claim because they are based on alleged actions and policies implemented to enforce Louisiana law on behalf of the State of Louisiana.

---

is exercising and 'what state law provides as to the specific relevant function.' *Arnone*, 29 F.4th at 267. But this has always been the inquiry pursuant to *McMillian*.").

[22] *See, e.g.*, *Brooks v. George County*, 84 F.3d 157, 168 (5th Cir. 1996); *Arnone v. County of Dallas County*, 29 F.4th 262, 268–70 (5th Cir. 2022); *Esteves v. Brock*, 106 F.3d 674, 677–78 (5th Cir. 1997).

Respectfully submitted,

*/s/ Matthew J. Paul*
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER THORNTON ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Jason R. Williams (in his
official capacity as Orleans Parish
District Attorney)*