UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK BROWN ) | |
| ) | Civil Action No. 24-00423 |
| *Plaintiff*, ) | |
| v. ) | Section R |
| ) | Judge Sarah S. Vance |
| JASON R. WILLIAMS, in his official capacity as ) | |
| Orleans Parish District Attorney, et al. ) | Division 4 |
| ) | Magistrate Judge Karen Wells Roby |
| *Defendants*. ) | |
| ) | |

**PATRICK BROWN'S
OPPOSITION TO 12(b)(6) MOTION TO DISMISS**

Plaintiff Patrick Brown opposes the Orleans Parish District Attorney's Rule 12(b)(6) motion to dismiss, which is meant merely to preserve a foreclosed issue for hypothetical appellate (indeed, en banc Fifth Circuit) review, rather than resolve this case based on the applicable law and facts. The motion should be denied.

Brown sued the District Attorney after he was wrongfully convicted of raping a child and imprisoned for thirty years for this crime he did not commit. The District Attorney now moves to dismiss based on a single theory: that the Orleans Parish District Attorney—nationally and locally known as a stark outlier in *Brady* violations and wrongful convictions—acted for the State of Louisiana (rather than as a local entity) when the District Attorney trained and supervised subordinates regarding their *Brady*/*Giglio* obligations. If that were true, the District Attorney would not be a "person" subject to suit under 42 U.S.C. § 1983. *See generally Daves v. Dallas County, Texas*, 22 F.4th 522, 532 (2022) (en banc) ("Municipalities, which include counties and certain other local governmental bodies, are 'persons' under Section 1983. . . . States and their officials are not 'persons' under Section 1983.").

But binding precedent dictates precisely the opposite. In *Burge v. Parish of St. Tammany*, the Fifth Circuit held that, in a civil rights suit against a Louisiana district attorney "for

1

constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of Brady material," the district attorney is "an independent *local* entity." 187 F.3d 452, 470 (5th Cir. 1999) (emphasis added).

OPDA argues, however, that *Burge* has been implicitly overruled, though the Fifth Circuit itself has never said so. OPDA asks the Court to independently declare *Burge* bad law because in *Arnone v. County of Dallas County,* 29 F.4th 262, 266 (5th Cir. 2022), the Fifth Circuit found that a Texas district attorney acted as the state entity in deciding to revoke a sex offender's supervised release. But *Arnone* itself acknowledges that whether an official is acting for a state or locality is both *state-law specific* and *function-at-issue specific*. *See id.* ("[C]ourts do not categorize officials in some categorical, all or nothing manner." (citing *McMillian v. Monroe County, Alabama* 520 U.S. 781, 785 (1997)). And OPDA's motion fails on both points: OPDA cites no support for the idea that Louisiana treats district attorneys as state officials for Section 1983 purposes. And OPDA cites no support for the idea that a district attorney acts for the state when he trains, supervises, and disciplines subordinates with regard to *Brady/Giglio* obligations.

Because of the lack of authority for OPDA's position, five Eastern District of Louisiana judges have recently rejected the same argument in "materially indistinguishable cases."[1] And just last year, the Fifth Circuit favorably cited *Burge* to reiterate that "[f]or purposes of 'official capacity' suits under § 1983, [a Louisiana's] district attorney's office resembles other local government entities." *Kimble v. Jefferson Par. Sheriff's Off.*, No. 22-30078, 2023 WL 1793876,

---

[1] *Jones v. Williams*, No. 22-cv-5097, 2023 WL 3211865, at *3 (E.D. La. May 2, 2023) (Ashe, J.); *see also Williams v. Williams*, No. 23-cv-1922, 2023 WL 6160990 (E.D. La. Sept. 21, 2023) (Africk, J.); *Reeder v. Williams*, No. 22-cv-4614, 2023 WL 2771481 (E.D. La. Apr. 4, 2023) (Zainey, J.); *Floyd v. Dillmann*, 659 F. Supp. 3d 724 (E.D. La. Mar. 6, 2023) (Milazzo, J.); *Smith v. Williams*, No. 22-cv-1550, 2023 WL 2263841 (E.D. La. Feb. 28, 2023) (Brown, J.).

at *3 (5th Cir. Feb. 7, 2023).[2] Thus, as the Fifth Circuit and this Court's Judges Brown, Zainey, Africk, Milazzo, and Ashe have already held, the District Attorney's argument is foreclosed by settled precedent.

Because the law so clearly rejects OPDA's argument, OPDA proffers a back-up policy argument: that wrongfully convicted persons take "improper advantage" of OPDA when they sue for compensation, and that OPDA "simply cannot afford" to be held accountable for its actions. R. Doc. 11 at 2. This assertion is both offensive to the rule of law and unsupported by authority. Again, the motion to dismiss should be denied.

## LAW AND ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead enough facts—accepted as true—to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, OPDA does not challenge the plausibility of Brown's claims or any of his well-pleaded factual allegations. OPDA merely argues that it should not be liable based on his reading of clearly distinguishable Fifth Circuit law.

I.  **The Court should deny OPDA's motion because OPDA's legal theory and arguments are contrary to Fifth Circuit precedent in *Burge v. Parish of St. Tammany*.**

The Fifth Circuit's holding in *Burge*—that Louisiana district attorneys are local government policymakers when designing and enforcing *Brady*—is and has been good law for over 24 years. *See generally* 187 F.3d at 468.

In *Burge*, a wrongfully convicted person filed a civil rights suit against the St. Tammany Parish District Attorney and Sheriff (in their official capacities), alleging that their "deliberately indifferent policies and customs . . . regarding the supervision and training of employees in the

---

[2]   In the same case, the Fifth Circuit favorably cited cases that the *Orleans Parish District Attorney* is a local, rather than state, entity. *See* 2023 WL 1793876, at *3.

3

handling of exculpatory evidence" violated his due process rights and led to his wrongful conviction. *Id.* at 458. On an appeal from summary judgment and relying specifically on the analytical framework established by the Supreme Court in *McMillian v. Monroe County*, 520 U.S. 781 (1997), the Fifth Circuit considered what government entity is liable for damages under Section 1983 "in an 'official capacity' suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants." *Id.* at 468–69. The Court noted that the answer to that question "depend[ed] on an analysis of state law" and "understanding . . . the actual function of a governmental official, in a particular area, [which] necessarily . . . depend[s] on the definition of the official's functions under relevant state law." *Id.*

"Considering the Louisiana constitutional and statutory law and tort cases," the Fifth Circuit then held that "in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." *Id.* at 469–70 (citing the Louisiana Constitution, Louisiana Revised Statutes, and the Louisiana caselaw).

*Burge* thus decided in materially indistinguishable circumstances that in a *Monell* claim against a Louisiana district attorney, in his official capacity, for a pattern or practice of *Brady* violations leading to a wrongful conviction, the district attorney is properly considered to be the policymaker for a *local* entity, rather than the State of Louisiana, and can be liable for damages.[3]

---

[3] The District Attorney argues that *Burge* did not "squarely" address whether "a Louisiana district attorney act[s] on behalf of the State of Louisiana, or on behalf of the 'district attorney's office' . . . when he or she creates policies relating to disclosure of evidence in prosecutions for state-law crimes." R. Doc. 11-1 at 18–19. But as explained above, *Burge* plainly states "we conclude that, in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney[] as an independent local entity." *Id.* at 470.

That OPDA believes the Fifth Circuit should now reach a different conclusion based on newly developed theories does not undermine that the holding in *Burge* forecloses those arguments unless and until the en banc Fifth Circuit says otherwise. *See Floyd*, 659 F. Supp. 3d at 729 ("Even assuming that

*See Jones*, 2023 WL 3211865, at *3 ("*Burge* necessitates the conclusion that a district attorney in Louisiana acts on behalf of the district attorney's office when making decisions regarding the disclosure of exculpatory evidence—not the state."); *Floyd*, 659 F. Supp. 3d at 728 ("[T]he Fifth Circuit has already foreclosed a holding that a district attorney is acting for the State in creating *Brady* policies under Louisiana law.").

Faced with this settled precedent, OPDA argues that *Daves*—a case about the role of Texas county judges deciding bail policies under Texas law—implicitly overruled *Burge* and that, in OPDA's view, the Fifth Circuit's later panel decision in *Arnone* implicitly confirms as much. But neither case mentions *Burge*, *Burge* is not incompatible with *Daves*, and the Fifth Circuit has never declared *Burge* overruled. Indeed, courts in this circuit, as well as the Fifth Circuit itself, continue to rely on *Burge* post-*Daves*.

The legal theory underlying OPDA's brief takes the following five steps:

1. Local governments, but not state governments, are "persons" subject to liability under 42 U.S.C. § 1983.

2. The Supreme Court has set out a test for determining whether a government official's role is for the state or for the local government. The test turns on state law and also varies depending on the official's different functions because sometimes an official "wears more than one hat."

3. In *Arnone,* the Fifth Circuit said that Texas district attorneys act for the state in adopting a policy of seeking revocation of supervised release or deferred adjudication based on polygraph results.

4. In OPDA's view, Louisiana law generally describes district attorneys similarly to Texas law.

5. Therefore, according to OPDA, when a district attorney "prosecut[es] Louisiana state-law offenses in Louisiana state courts on behalf of the State of Louisiana, he is acting on behalf of the state and not on behalf of any local governmental entity" and cannot be subject to

---

Defendant's characterization of the *Burge* opinion has merit, this Court is not any less bound by the holding."); *Jones*, 2023 WL 3211865, at *3 ("'The district court [is] not free to overturn' binding Fifth Circuit precedent, notwithstanding an intervening change in the law effected by post-precedent Supreme Court decisions." (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021)).

5

suit under 42 U.S.C. § 1983. R. Doc. 11-1 at 15.[4]

Describing OPDA's argument in these steps reveals its flaw: OPDA concedes that the state/local analysis is *specific to a particular function* of the district attorney, but neglects to address, at steps 3–5, the particular district attorney functions relevant to Brown's lawsuit. OPDA's theory says nothing about the role in which a district attorney acts when he adopts an internal policy or develops an internal practice of failing to identify and disclose *Brady* material and fails to internally train subordinates on their obligations under *Brady*. Even worse, OPDA fails to explain how it could be that the Orleans Parish District Attorney has such well-established history and culture of failing to disclose *Brady* material unlike other parishes if *Brady* policies are attributable to the State of Louisiana, rather than a local policymaker unique to Orleans Parish.

For its theory, OPDA leans primarily on *Daves* and *Arnone*. In *Daves v. Dallas County*, 22 F.4th 522, 540 (5th Cir. 2022) (en banc), the Fifth Circuit held that Texas county judges acted on behalf of the state in developing bail schedules because they were "exercising state judicial power." In *Arnone v. County of Dallas County*, 29 F.4th 262 (5th Cir. 2022), the Fifth Circuit held that a Texas district attorney acted on behalf of the state in adopting a policy of seeking to revoke supervised release or deferred adjudication based on polygraph results. But these cases note that "sometimes a policymaker wears more than one hat"—meaning he may act for the state in some contexts and the local government in others. *Arnone*, 29 F.4th at 266 (citing *McMillian*, 520 U.S. at 785, 789).

OPDA contends that *Daves* and *Arnone* lead "inexorably to the conclusion, as a matter of law, that a Louisiana district attorney represents and acts on behalf of the State of Louisiana when prosecuting offenses against the state, determining what evidence to disclose in the course of those

---

[4] Because it has a cover page and table of contents, the pagination of OPDA's memorandum differs from the R. Doc. page numbers. We cite the R. Doc. page numbers.

6

prosecutions, and adopting policies relating to such disclosure." R. Doc. 11-1 at 5. This is the opposite of OPDA's position (to avoid liability) in other, related litigation: in Rule 12(b)(6) briefing in *Juluke v. Davis*, where OPDA argued that the City bears responsibility for Juluke's harms, OPDA said "the Orleans Parish District Attorney's Office . . . is treated as an independent municipal entity under Fifth Circuit jurisprudence." *See* EDLA No. 2:23-cv-31111, R. Doc. 99 at 1–2 & n.1 (citing *Burge*, 176 F.3d at 470).

      In any event, neither *Daves* nor *Arnone* mentions *Burge*, let alone expressly overrules it. *See Williams*, 2023 WL 6160990, at *2 ("The Fifth Circuit has not overturned *Burge*."); *Reeder*, 2023 WL 2771481, at *3 ("[N]o legitimate argument can be made that the en banc *Daves* decision overruled *Burge*."); *Floyd*, 659 F. Supp. 3d at 729 ("[T]his Court does not agree with Defendant that *Daves* overrules *Burge*."). The question then is whether the holding in *Burge* that district attorneys in Louisiana are local actors when sued for unconstitutional *Brady* policies is so incompatible with the holding in *Daves* that county judges in Texas exercise state judicial power in setting bail schedules that *Burge* must be deemed implicitly overruled. The Fifth Circuit has explained that "where an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis, [Fifth Circuit] precedents relying on that analysis are implicitly overruled." *Martinelli v. Hearst Newspapers, L.L.C.*, 65 F. 4th 231, 234 (5th Cir. 2023) (quoting *Bonvillian*, 19 F. 4th at 792). Assuming this same inquiry applies to en banc Fifth Circuit decisions implicitly overruling panel decisions never referenced by the en banc court, the Fifth Circuit is clear that "this is only true when the changed analysis clearly applies to the case before us, such that we are 'unequivocally directed by controlling Supreme Court precedent' to 'overrule the decision of the prior panel.'" *Id.* (cleaned up). The Fifth Circuit has "specifically rejected the idea that later Supreme Court and other decisions that were not directly on point could alter the binding nature of our prior precedent." *Id.* at 244.

Under this test, *Daves* could not have "unequivocally" overruled *Burge*. *Daves* is not "directly on point"; nor did it "fundamentally change[] the focus of the relevant analysis."[5] *See generally id.* at 243–44. The Supreme Court in *McMillian*—not the Fifth Circuit in *Daves*—established the general, controlling analysis for determining the role of government officials in Section 1983 cases. The en banc *Daves* court did not purport to change that analysis, nor could it. *See Daves*, 22 F.4th at 534 ("[N]othing [in a Fifth Circuit decision] can override a Supreme Court decision"). *Daves* merely applied the relevant analysis outlined in *McMillian*, "ask[ing] whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *McMillian*, 520 U.S. at 785. Importantly, *McMillian* also specifically states that it, and by extension appellate courts applying *McMillian*, "are *not* seeking to make a characterization of [the government official] that will hold true for every type of official action they engage in." *Id.* at 786.

Thus, *Burge*, a case about district attorneys in Louisiana making bad *Brady* policies within their districts, can be reconciled with *Daves*, a case about Texas judges exercising state judicial power. The same is true for *Arnone*, another Texas case applying Texas law to Texas officials. So *Burge* remains good law and still controls here. *See Reeder*, 2023 WL 2771481, at *3 ("Given that Daves dealt with the role of judges under Texas law, no legitimate argument can be made that the en banc Daves decision overruled Burge."); *Smith*, 2023 WL 2263841, at *7 ("*Daves* and *Arnone* are not determinative because both of those cases involved interpretation of Texas law."); *Floyd*, 659 F. Supp. 3d at 729 ("Accordingly, *Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making Brady policy.").

---

[5] *Id.* at 234, 244 (citation omitted); *see also id.* at 243–44 (holding that a Supreme Court decision did not unequivocally overrule a prior Fifth Circuit decision because it was not "directly on point" and "left room for exceptions, including an exception upon which our court might have relied").

**II.     The Court should deny OPDA's motion because applying Supreme Court precedent, the Fifth Circuit correctly determined in *Burge* that Louisiana district attorneys are local actors for *Brady* policies leading to wrongful convictions actionable under Section 1983.**

*Burge* is controlling precedent regardless of whether it was correctly decided. *See Williams*, 2023 WL 6160990, at *3 ("There is no need to conduct a comprehensive comparison of the similarities and differences between district attorneys in Texas and Louisiana because a separate analysis of each has previously been conducted in *Arnone* and *Burge*. As the reasoning of *Burge* has not been undermined, it remains binding precedent."). But, in any event, the *Burge* court correctly conducted the analysis that the Supreme Court announced in *McMillian* to determine whether Louisiana district attorneys act on behalf of a local entity when designing *Brady* policies.

OPDA bemoans that "*Burge* apparently gave no weight to the factors that were deemed 'most relevant' in *Daves*—specifically, the constitutional provisions, statutes, and jurisprudence holding [in OPDA's view] that Louisiana district attorneys are state officials who are empowered to prosecute state-law crimes." R. Doc. 11-1 at 19. But OPDA misreads both *Burge* and *Daves*. *Burge* itself says that "the Louisiana constitutional and statutory law and tort cases"—the very sources OPDA asserts *Burge* failed to consider—mean that in a suit "for constitutional torts caused by the district attorney's policies regarding . . . *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." 187 F.3d at 470. Indeed, the Fifth Circuit in *Burge* explicitly determined that (1) "[u]nder the Louisiana Constitution and laws, a district attorney . . . is virtually an autonomous local government official," (2) "the entity liable for the torts of a district attorney's employees under state law is the office of the district attorney as an independent local government entity," and (3) "constitutional and statutory provisions indicate that a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." *Id.* at 469–470.

And in *Daves*, the Fifth Circuit did not purport to identify the "most relevant" factors from

9

the Supreme Court's analysis in *McMillian*. Instead, in analyzing the Texas Constitution to determine how Texas law categorizes county judges (as *McMillian* generally instructs), the Fifth Circuit said: "Most relevant, and analogous to the Alabama provision for sheriffs [in *McMillian*], is that Texas law divides *state* judicial power among the different courts . . . [including] *County Courts*." 22 F. 4th at 537. By this "most relevant" language, the Fifth Circuit in *Daves* did not purport to dictate what courts must consider above all else when applying *McMillian*'s factors. *McMillian* itself acknowledges that "States have wide authority to set up their state and local governments as they wish. . . . [meaning] the nature of county government ha[s] varied historically from region to region, and from State to State." 520 U.S. at 795. So, contrary to OPDA's arguments nothing about the application of Texas law in a case involving Texas officials "compels" a particular outcome under Louisiana law here. *See* R. Doc. 11-1 at 21.

Beyond the *McMillian* factors already analyzed in *Burge*, Louisiana law supports the conclusion *Burge* reached. *First,* unlike the Alabama Constitution analyzed in *McMillian*, 520 U.S. at 787, and the Texas Constitution analyzed in *Daves*, 22 F. 4th at 538, the Louisiana Constitution does not vest district attorneys with state power. While the Louisiana Constitution refers to district attorneys within Article V, relating to the judicial branch,[6] it also declares that the state judicial power is vested *only* "in a supreme court, courts of appeal, district courts, and other *courts* authorized by this Article." La. Const. art. V, § 1 (emphasis added). In other words, the district attorneys' inclusion in Article V of the Louisiana Constitution may make them "public officials," but it does not follow that they are necessarily "state officials." *See generally* La. R.S. § 42:1441.3 ("While all offices created by the constitution or law are 'public offices', they are not all 'state offices,' as they include parish offices, municipal offices, district offices, and offices of political

---

[6] The "chief legal officer of the state"—the Louisiana Attorney General—is separate and part of the executive branch. *See* La. Const. art. IV, § 8.

10

subdivisions.").[7] The reach of a district attorney is limited to "each judicial district" in which the attorney is elected, and he must reside "in the district" to be eligible for the office. La. Const. Art. 5, § 26. Because the Louisiana Constitution grants specific powers and duties to district attorneys—separate from the powers and duties exercised by other officials—"[t]hese constitutional provisions indicate that a district attorney is . . . a wholly autonomous local government official. *Smith*, 2023 WL 2263841, at *8 (quoting *Burge*, 187 F.3d at 469).[8]

*Second*, the Louisiana Legislature has statutorily excluded district attorneys from the officials for whom the state is legally responsible. In *McMillian*, the Supreme Court emphasized the historical development of Alabama's constitutional provisions government sheriffs, viewing the Alabama legislature's constitutional amendments as a "significant step[] in an attempt to solidify the place of sheriffs in the executive department, and to clarify that sheriffs were acting for the State when exercising their law enforcement functions." 520 U.S. at 787–88. Here, however, after the Louisiana Supreme Court held in 1983 that "a district attorney's employee is an employee of the state for purposes of" a state indemnification statute, *Diaz v. Allstate Ins.,* 433 So. 2d 699, 701 (La. 1983), the Legislature enacted laws to exclude district attorneys and their employees from the state-official classification. *See Smith*, 2023 WL 2263841, at *9 (citing La. Stat. § 13:5108.1(E)(3)(b)). And since then, "several intermediate appellate courts have found that the Louisiana Legislature's amendments to the indemnity and limitation of liability statutes evidence a strong legislative intent to designate Louisiana district attorneys as local officers that do not act for the State on the particular issue of their evidence disclosure policies and practices."

---

[7]   Even if Louisiana law explicitly designated district attorneys as "state" officials, the Supreme Court in *McMillian* said this would *not* be enough to end the inquiry: "This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy." 520 U.S. at 786.

[8]   For further discussion of historical considerations, *see Williams v. Williams*, 23-cv-01922-BSL-JVM, R. Doc. 8 at *9-11 (Opposition to Motion to Dismiss) (citing Michael J. Ellis, *The Origins of the Elected Prosecutor*, 121 Yale L.J. 1528 (2012)).

*Id.* (citing *Obermier v. State*, 606 So. 2d 937, 939 (La. App. 3 Cir. 1992)).

Importantly too, the Louisiana Legislature has repeatedly designated district attorneys as local—rather than state—officials: Revised Statutes 42:62(9), 42:1441.3, and 42:1102(2)(a)(vi) all refer to "district attorneys" as separate "political subdivisions," a term statutorily defined as a "unit of local government." Similarly, Revised Statutes 42:1441.1 and 42:1441.2 establish that the state is not vicariously liable for "parish officials," specifically including district attorneys. Accordingly, Louisiana courts hold that "the District Attorney's Office for the Parish of Orleans is *not* the State and the State is not liable for the acts of the District Attorney." *Gibson v. State*, 94-CA-0476 (La. App. 4 Cir. 10/27/94), 644 So. 2d 1148, 1150 (emphasis added). This is the opposite of Alabama sheriffs in *McMillian* and thus leads to the opposite result.

### III. The Court should deny OPDA's motion because the Fifth Circuit and other district courts correctly continue to rely on *Burge*.

Contrary to *Daves* and *Arnone*, both of which concern Texas law and nowhere mention *Burge*, the Fifth Circuit cited *Burge* last year for the principle that district attorneys in Louisiana are local government policymakers. In *Kimble v. Jefferson Parish Sheriff's Office*, the Section 1983 plaintiff sued several defendants, including an assistant district attorney in her official capacity. No. 22-30078, 2023 WL 1793876, at *1 (5th Cir. Feb. 7, 2023). On appeal, the Fifth Circuit made clear that the assistant district attorney was an "arm of Jefferson Parish," quoting *Burge* to say: "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Id.* at *3 (quoting *Burge*, 187 F.3d at 470). The Fifth Circuit ultimately affirmed dismissal of the plaintiff's claim because the plaintiff had failed to allege that *assistant* district attorneys are final policymakers for the parish.[9] *Id.* at *3–4.

---

[9] Relying on *Kimble*'s emphasis on "parish" and other sources, OPDA also argues that if the State is not the proper defendant here, Orleans Parish should be—basically, anyone but him. *See* R. Doc. 11-1 at 29–30.
   Brown sued the District Attorney in his official capacity, and "official capacity suits are really suits against the governmental entity." *See Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). In other

OPDA tries to distinguish *Kimble*'s reliance on *Burge* by arguing that "the parties did not raise the question of which governmental entity . . . a Louisiana prosecutor acts on behalf of in prosecuting crimes . . . and the courts did not analyze that question." R. Doc. 11-1 at 24. But OPDA's argument seems to miss the point. Under the Fifth Circuit's rules, unpublished opinions like *Kimble* are those "that merely decide particular cases on the basis of well-settled principles of law." 5th Cir. R. 47.5.1. That *Kimble* reiterates *Burge*'s holding without question undermines OPDA's contention that later decisions overruled *Burge* without anyone—such as the very Fifth Circuit judges responsible for these decisions—noticing.[10]

Indeed, OPDA fails to identify a single case—whether an en banc or panel decision, concurrence, or dissent—in which the Fifth Circuit has questioned *Burge*'s holding that, in a Section 1983 lawsuit, district attorneys in Louisiana are local government policymakers for policies related to *Brady* material. And the Supreme Court has never overruled *McMillan*, on which *Burge* relied, or undermined its approach. As OPDA acknowledges, five other judges of this court have denied identical motions to dismiss. *See* R. Doc. 11-1 at 22. While OPDA lodges a litany of criticisms against the decisions, Judge Ashe correctly explained these rulings "thoughtful, well-reasoned, and correct in their application of the binding precedent of *Burge*." *Jones*, 2023 WL 3211865, at *3.

OPDA's criticisms of these persuasive decisions are both unfounded and unfair. For example, OPDA asserts that in *Floyd*, Judge Milazzo "made no attempt to defend the correctness of the *Burge* decision or explain how the same result could be reached considering the factors

---

words, if the District Attorney works for Orleans Parish, then Brown *has* correctly sued the parish in the manner dictated by precedent, and Brown's claims against the District Attorney still should not be dismissed.

[10]   For instance, Judge Smith was in the *Daves* majority and on the *Kimble* panel. If *Daves* fundamentally changed the classification of district attorneys as state or local actors across the circuit, Judge Smith likely would have said so in later decisions dealing with district attorneys as local actors.

relied on in *Daves*." R. Doc. 11-1 at 22–23. Put most simply: she doesn't have to. Judge Milazzo correctly determined, based on the same arguments OPDA makes here, that *Daves* did not overrule *Burge*, and she applied *Burge* as binding precedent. *See Floyd*, 659 F. Supp. 3d at 729. OPDA continues to contend that *Daves* declares some new test, new analysis, or new framework that other judges have failed to comprehend. R. Doc. 11-1 at 25, 30. But it simply does not:

> *McMillan* is clear that the question to be considered is what *state* law provides as to the specific relevant function being challenged. The court in *Daves* applied Texas law to Texas policymakers performing different functions than are at issue here. Accordingly, *Daves* did not create a new analysis, nor does its result have any relevance on what Louisiana law provides as to a district attorney making *Brady* policy.

*Floyd*, 659 F. Supp. 3d at 729.

And OPDA tries to narrow *Burge*'s holding to one dependent on Eleventh Amendment sovereign immunity factors. But it is not: as Judge Africk explained in denying the same motion, "[w]hile the *Burge* court separately conducted an Eleventh Amendment analysis, the *Burge* court also applied the *McMillian* framework to determine whether Louisiana district attorneys are acting on behalf of local government in creating *Brady* policies and how Louisiana law classifies Louisiana district attorneys." 2023 WL 6160990, at *3. And beyond all that, as other judges have also recognized, "[e]ven if the Fifth Circuit ultimately decides to revisit its holding in *Burge*, this Court is without the authority to preempt that prerogative." *Jones*, 2023 WL 3211865, at *3 (citing *Bonvillian*, 19 F.4th at 789). While OPDA "disagrees that a district court lacks the authority to" declare Fifth Circuit panel opinions overruled by an en banc decision when the Fifth Circuit has never said so itself, *see* R. Doc. 11-1 at 31, OPDA's unsupported views are not the law here.

IV. **The Court should deny OPDA's motion because even if a district attorney's prosecuting "state-law crimes" is a function of state government, Brown's suit challenges OPDA's local managerial decisions, made by local policymakers without state intervention or oversight.**

By repeatedly saying "state-law crimes in Louisiana state court" over and over again,

14

OPDA engages in a sleight of hand to try to divert attention away from what Brown's lawsuit is actually about. Brown is not suing OPDA for actions taken "in Louisiana state courts on behalf of the State of Louisiana." R. Doc. 11-1 at 15. Brown sues OPDA for local managerial choices and misconduct—outside-of-court decisions about how to train, supervise, and discipline subordinates in this particular locality.

OPDA concedes that the results of the Fifth Circuit's state-official/local-official analysis may vary depending on the "specific function" at issue because sometimes "a policymaker wears more than one hat." R. Doc. 11-1 at 4, 8; *see also Arnone*, 29 F. 4th at 272 ("What matters under *McMillian* and *Daves* is the specific function the policymaker exercised under state law.") But OPDA cites no authority suggesting that OPDA acted for the state in *this specific function*, when he decided how to train (or not), supervise (or not), and discipline (or not) assistant district attorneys in Orleans Parish—and Orleans Parish only—about their *Brady*/*Giglio* obligations.

In *Arnone*, the Fifth Circuit noted that a Texas "district attorney's promulgating or acquiescing to a policy governing future uses of the power to seek revocation of probation or deferred adjudication is inextricably linked with his power to seek it in individual cases." 29 F. 4th at 270. In other words, the policy challenged in *Arnone* was "inextricably linked" to the power to seek prosecution. *Id.* Not so here. Brown does not challenge OPDA's choice to prosecute; he challenges then-DA Connick's unique managerial choices that he, in his official capacity as District Attorney, made or allowed and for which the District Attorney, in his official capacity, must be liable. *Burge* put it simply: "under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of Brady material," the district attorney is "an independent local entity." 187 F.3d at 470. So even if OPDA's theory is true—that a district attorney acts on behalf of the state to prosecute "Louisiana state-law offenses in Louisiana state courts"—its motion should still be denied.

15

**V.      Even if the Court rejects *Burge* as precedent, ignores the Fifth Circuit and district court decisions continuing to apply *Burge*, and applies *McMillian* differently than every other court in the district, this Court should still deny OPDA's motion as to Brown's state-law claim, which does not turn on the text of, or meaning of "person" under, Section 1983.**

In a footnote, OPDA argues that "Mr. Brown's claim under the Louisiana Constitution is duplicative of his § 1983 claim," and so if his § 1983 claim is dismissed, the state-law claim should be dismissed "on the same grounds." R. Doc. 11-1 at 5 n.1. Aside from being inadequately briefed, this position also fails on its own terms. OPDA's argument about Brown's federal claim turns on the specifics of Section 1983—that the State of Louisiana is not a "person" under that federal statute. And OPDA is explicitly *not* arguing Eleventh Amendment immunity. *See* R. Doc. 11-1 at 16 ("The Fifth Circuit's decision in *Hudson v. City of New Orleans* concerned Eleventh Amendment immunity and is irrelevant to the question presented here"). Brown's state constitutional claim is not tied to the language of Section 1983, so none of OPDA's arguments affect it, and the motion should be denied as to Brown's state-law claim.

## CONCLUSION

The Orleans Parish District Attorney's issue-preservation motion to dismiss should be denied. Under established precedent and the well-pleaded facts, the District Attorney is *not* a state actor immune from suit and can be liable for damages under Section 1983.

Respectfully submitted,

/s/ *William Most*

| | |
|---|---|
| William Most, La. Bar No. 36914 | Chloé M. Chetta, 37070 |
| Caroline Gabriel, La. Bar No. 38224 | BARRASSO USDIN KUPPERMAN |
| MOST & ASSOCIATES | FREEMAN & SARVER, L.L.C. |
| 201 St. Charles Ave., Ste. 2500, #9685 | 909 Poydras St., Suite 2350 |
| New Orleans, LA 70170 | New Orleans, Louisiana 70112 |
| T: (504) 509-5023 | Telephone: (504) 589-9700 |
| williammost@gmail.com | cchetta@barrassousdin.com |