UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK W. BROWN,<br><br>    *Plaintiff*,<br><br>v.<br><br>JASON R. WILLIAMS, in his official capacity as Orleans Parish District Attorney,<br><br>    *Defendant*. | Civil Action No. 24-00423<br><br>Section R<br>Judge Sarah S. Vance<br><br>Division 4<br>Magistrate Judge Karen Wells Roby |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

    Jason R. Williams, in his official capacity as Orleans Parish District Attorney ("OPDA"), through undersigned counsel, respectfully submits this supplemental memorandum in support of his motion seeking dismissal of Plaintiff Patrick Brown's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Pursuant to the Court's May 28, 2024 Order (Doc. No. 22), OPDA notes that it intends to reassert its previously filed Motion to Dismiss (Doc. No. 11) in response to Mr. Brown's Amended Complaint (Doc. No. 20). OPDA also submits this supplemental memorandum to address the new claims and allegations included in the Amended Complaint.

**INTRODUCTION**

    In 1994, Mr. Brown was convicted in Orleans Parish Criminal District Court of raping his six-year-old stepdaughter, L.B. At trial, a doctor who treated L.B. for a gonorrhea infection testified that L.B. identified Mr. Brown by name and described the sexual act that he did to her. That statement was consistent with L.B.'s statements at the time to police, prosecutors, and family members. The evidence also showed that, like L.B., Mr. Brown had gonorrhea. Notwithstanding the clear physical evidence showing that L.B. had been raped, Mr. Brown's lawyer argued that

L.B. was "not a victim of rape," but, rather, a "victim of what you would consider a very dysfunctional family."

At some point in the years following Mr. Brown's conviction, L.B. began to tell Mr. Brown and others that she believed Mr. Brown was innocent and had not raped her. In 2022, Mr. Brown filed a state-court application for post-conviction relief under Louisiana Code of Criminal Procedure article 926.2, arguing that the recanting statements of L.B. prove that he is factually innocent. The application did not allege any wrongdoing by police, prosecutors, or any other state actors. In light of L.B.'s recantation, and particularly considering that she did not testify at Mr. Brown trial, the State chose not to contest Mr. Brown's petition and joined his request to vacate his conviction on grounds of actual innocence. The State did not admit, and no court to this day has ever found, that any police, prosecutors, or other state actors engaged in any wrongdoing in connection with Mr. Brown's case.

Nevertheless, after obtaining his freedom with the assistance of OPDA and its Civil Rights Division, Mr. Brown filed this lawsuit alleging that the District Attorney's Office caused him to be wrongly convicted by suppressing *Brady* evidence. On April 4, 2024, OPDA filed a Rule 12(b)(6) motion to dismiss, arguing that the District Attorney's Office, as an independent local government entity, cannot be held liable for any alleged wrongdoing because its prosecutors were acting as state officers and exercising powers of the State of Louisiana at all relevant times. *See* Doc. No. 11.

On May 24, 2024, Mr. Brown filed an amended complaint adding claims against four new defendants: David Wolff, a former OPDA prosecutor; Cathey Carter, a former NOPD detective; "Doe Handwriting NOPD Officer"; and the City of New Orleans. *See* Doc. No. 20 at ¶¶ 4–7. The claims against Mr. Wolff are based on the allegation that he sent a letter and "fake subpoena" to

L.B. requesting a meeting with her before trial. *See id.* at ¶¶ 199–208, 268. Based solely on this alleged action, Mr. Brown asserts claims against Mr. Wolff under the due process clause of the Fourteenth Amendment of the U.S. Constitution; under unspecified clauses of the Louisiana Constitution; and for the torts of negligence and abuse of process under Louisiana law. Mr. Brown asserts the same additional claims against OPDA, alleging that OPDA is vicariously liable under state law for Mr. Wolff's actions. *See id.* at ¶¶ 286, 288.

OPDA reasserts the arguments in its Motion to Dismiss, Doc. No. 11, and provides this supplemental memorandum only to address the new claims and allegations in the Amended Complaint based on an alleged "fake subpoena." As explained in OPDA's earlier motion and supporting memorandum, actions taken by Louisiana prosecutors during the prosecution of state-law crimes in state court on behalf of the State of Louisiana are attributable to the state for purposes of 42 U.S.C. § 1983. Because the "fake subpoena" allegations in the Amended Complaint are based on alleged actions taken in the course of a state-court prosecution, the arguments made in the Motion to Dismiss are fully applicable to these new claims and allegations as well.

Additionally, as explained further below, these new claims should also be dismissed because they are legally deficient. Even accepting Mr. Brown's factual allegations as true for purposes of this motion, the allegations do not plausibly state a claim under any of the theories Mr. Brown has asserted. In short, allegedly sending a "fake subpoena" to a witness in a criminal case does not violate any right of the defendant or breach any duty owed to the defendant. And Mr. Brown's suggestion that the document sent to L.B. caused him to be wrongly convicted, when he otherwise would have been acquitted, is speculative and unsupported by any reasonable inferences drawn from his factual allegations.

**DISCUSSION**

All of the new claims against OPDA are based on the allegation that, on March 14, 1994, Mr. Wolff sent a letter and enclosed document to L.B. Because these documents are discussed and excerpted in the Amended Complaint and are central to Mr. Brown's claims, the documents referred to are attached as Exhibit 1.[1] The letter states:

> Dear [L.]:
>
> I am presently reviewing a case in which you are the victim. Attached to this letter is a subpoena requesting you to appear in my office at 619 S. White Street on March 19, 1994, at 11:30 a.m. If you cannot be present at that time, please contact me at 827-7316 or 822-2414 so that another appointment can be arranged. Failure to call or contact me or your not appearing on the scheduled date will result in this case being dismissed by our office.

The letter also states: "Enclosed: Subpoena." Enclosed with the letter was a notice with the header "Office of District Attorney," "Criminal District for the Parish of Orleans." The notice, which was addressed to L.B., states:

> YOU ARE HEREBY NOTIFIED to appear before the District Attorney in the Criminal District Court for the Parish of Orleans, on the 19th day of March in the year of our Lord, 1994, at 11:30 o'clock A.M., to testify to the truth according to your knowledge in such matters as may be required of you. On arriving at 619 S. White St. you will report to David Wolff.

The notice is signed: "David Wolff, Assistant District Attorney."

Mr. Brown alleges that the letter and notice sent to L.B. were "fraudulent and coercive process" and were "part of what caused J.B. [sic] to be so terrified to take the stand, such that she began spontaneously bleeding." Doc. No. 20 at ¶ 32; *see also id.* at ¶ 279 ("The use of a fake

---

[1] Although generally "a district court must limit itself to the contents of the pleadings, including attachments thereto, . . . [d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499–500 (5th Cir. 2000) (quotation omitted).

4

subpoena on a six-year-old child was a coercive measure that helped prevent L.B. from testifying truthfully that Brown did not rape her.").

I. **The document allegedly sent to L.B. did not violate Mr. Brown's right to substantive due process under the Fourteenth Amendment.**

A plaintiff asserting a Fourteenth Amendment substantive-due-process claim must show that the defendant's actions (1) caused an injury; (2) "were grossly disproportionate to the need for action under the circumstances"; and (3) "were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998). "The burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012) (quotation omitted); *see also Jordan v. Fisher*, 823 F.3d 805, 812–13 (5th Cir. 2016) ("The Court's test for the substantive component of the due process clause prohibits only the most egregious official conduct, and it will rarely come into play.") (quotation omitted); *Kinzie v. Dallas Cty. Hosp. Dist.*, 239 F. Supp. 2d 618, 630 ("[C]ourts have shown great reluctance to find that the behavior of a state official 'shocks the conscience.'").

A. **The allegations do not demonstrate any egregious abuse of official power that "shocks the conscience."**

Sending a letter and notice requesting a pre-trial meeting with L.B., a crime victim, is not even arguably a violation of Mr. Brown's substantive due process rights, for multiple reasons. First, although the Amended Complaint alleges in a conclusory manner that the letter and notice were "coercive," *see* Doc. No. 20 at ¶ 279, there are no facts supporting this characterization. Mr. Brown does not allege that L.B. or her guardians were uncooperative or unwilling to speak with

prosecutors, or that prosecutors had any reason or motive to "coerce" L.B. into a meeting.[2] Nor does he allege that L.B., a six-year-old child, even read the documents; that she knew what a "subpoena" was; or that she was misled by the documents. And there are certainly no facts alleged that would suggest that Mr. Wolff or any other prosecutor intended to improperly influence or interfere with L.B.'s testimony.

Second, the document itself negates any inference of impropriety. The letter makes clear that it is simply a prosecutor's request for a meeting with a crime victim. Nothing in the letter or the attached notice states that the recipient is under legal compulsion to appear at the time and place stated. Indeed, the letter offers that the time may be rescheduled at the convenience of the recipient. Mr. Brown focuses on the letter's incorrect description of the attachment as a "subpoena" (which it clearly is not), but the same sentence referring to the attachment as a "subpoena" also characterizes it as a "request[ ]" rather than a compulsory court order. There is no language threatening punishment for failure to comply; the only consequence of not appearing, as stated in the letter, is "this case being dismissed by our office." Particularly in the absence of any factual allegations that the documents were used or intended to accomplish a malicious, illegal purpose, the allegations do not even come close to showing an egregious abuse of power that shocks the conscience.

> **B.    Mr. Brown has not plausibly alleged that sending a document to L.B. harmed him by causing him to be wrongly convicted when he otherwise would have been acquitted.**

Third, even if Mr. Brown could show that the documents were used to coerce a reluctant witness to meet with prosecutors (and he cannot), that would be a harm to the witness—not to Mr. Brown. Mr. Brown has not plausibly alleged any way in which these alleged actions harmed *him*.

---

[2] Nor could he allege such a thing, because it would be false.

He alleges that "[t]he use of a fake subpoena on a six-year-old child was a coercive measure that helped prevent L.B. from testifying truthfully that Brown did not rape her." Doc. No. 20 at ¶ 279. Thus, Mr. Brown appears to suggest that, but for the letter and notice sent to L.B. nine months earlier, L.B. would have been emotionally capable of testifying at trial and would have testified that Mr. Brown was innocent. This suggestion is wildly implausible and cannot be accepted as true for purposes of this Rule 12(b)(6) motion.

The suggestion that prosecutors employed "coercive measures" to *prevent* L.B. from testifying and exonerating Mr. Brown is absurd. As Mr. Brown acknowledges in his own complaint, it was the prosecution who called L.B. as a witness and attempted to elicit her testimony—not just once, but three times. *See* Doc. No. 20 at ¶¶ 145–154. It was Mr. Brown, not the State, who sought to prevent L.B. from testifying. Moreover, there is no plausible explanation for why allegedly receiving a letter and notice from prosecutors requesting a meeting nine months earlier would cause a six-year-old witness to break down and be unable to proceed further while testifying in court. Finally, the suggestion that, if L.B. had testified, she would have contradicted her recent statements to doctors, police, and others and exonerated Mr. Brown is nothing but baseless, counterfactual speculation.

To survive a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must have "facial plausibility," meaning that the "factual content" alleged by the plaintiff "allows the court to draw the **reasonable** inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). A claim must be dismissed if the factual allegations do not allow the Court to reasonably infer the necessary causation.

7

For example, in *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019), the Fifth Circuit affirmed the dismissal of the plaintiff's claim under Rule 12(b)(6) because he "failed to allege a sufficient causal connection" that was necessary to his claim. The plaintiff alleged that he was fired in January 2017 in retaliation for a letter that he sent in June 2015. *See id.* at 336. To state a claim, the plaintiff's allegations had to "permit a plausible inference that [his] firing was causally connected to his speech." *Id.* at 338. The Fifth Circuit explained that, because the allegations did not allow the court to "plausibly infer" a causal connection, the plaintiff's "right to relief is only speculative." *Id.* Similarly, Mr. Brown's allegation that the documents sent to L.B. caused him to be wrongly convicted, when he would have otherwise been acquitted, is speculative and not based on any reasonable inference.

      **C.**      **The decision in *Singleton v. Cannizzaro* does not support Mr. Brown's claim.**

In the Amended Complaint, Mr. Brown refers to a 2019 decision in a different case in another section of this Court holding that plaintiffs had stated cognizable Fourteenth Amendment substantive due process claims based on their alleged receipt of "fake subpoenas." *See* Doc. No. 20 at ¶ 265 (quoting *Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 415 (E.D. La. 2019). Even putting aside the question of whether that decision was legally correct,[3] that decision was based on different alleged facts that are not present here.

First, the claims were brought by witnesses who had allegedly received "fake subpoenas"—not criminal defendants complaining that "fake subpoenas" had been used in their cases. Second, the claims in *Singleton* were based on documents allegedly used between 2013 and

---

[3] OPDA respectfully submits that the decision is contrary to law and should not be followed. Notably, the *Singleton* court went on to hold that "the Individual Defendants are entitled to qualified immunity on these claims," explaining that there is no prior jurisprudence suggesting that any analogous action is a violation of the Fourteenth Amendment. *See Singleton*, 372 F. Supp. 3d at 415–16.

2017—approximately 20 years after the events of Mr. Brown's cases, and under the administration of a different District Attorney. *See Singleton*, 372 F. Supp. 3d at 402–03. Third, the alleged "fake subpoenas" in *Singleton* were very different from the document allegedly sent to L.B. The document at issue in *Singleton* stated at the top, in large bold letters: "SUBPOENA," "A FINE AND IMPRISONMENT MAY BE IMPOSED FOR FAILURE TO OBEY THIS NOTICE."[4] The document also stated that it was "process of Court" and referenced Louisiana Code of Criminal Procedure article 66, even though, as alleged by the plaintiffs, the Article 66 procedure was not followed and no court was involved in the issuance.[5] The plaintiffs further alleged that Mr. Cannizzaro's First Assistant District Attorney distributed the "fake subpoena" to OPDA staff and directed them to use it. *See Singleton*, 372 F. Supp. 3d at 407–08. Even on its own terms, the decision in *Singleton* sheds no light on whether Mr. Brown has stated a cognizable Fourteenth Amendment substantive due process claim in the Amended Complaint.

**II.     Mr. Brown has not adequately alleged any violation of his rights under the Louisiana Constitution.**

Mr. Brown alleges that "[t]he same conduct that violated [his] federal constitutional rights also violated the rights that the Louisiana Constitution guarantees to [him]." Doc. No. 20 at ¶ 275. However, he does not further specify which of his rights under the Louisiana Constitution were purportedly violated by the sending of a letter and notice to L.B. Mr. Brown merely cites and references various constitutional rights and articles, most of which—such as articles concerning "equal protection," "unreasonable seizure," "discrimination," and "cruel, excessive, or unusual punishment"—are plainly inapplicable. To the extent that Mr. Brown asserts the same "substantive due process" claim under the Louisiana Constitution that he asserts under the U.S. Constitution,

---

[4] *See Singleton v. Cannizzaro*, EDLA Case No. 17-cv-10721, Doc. No. 52 at 83.

[5] *See Singleton v. Cannizzaro*, EDLA Case No. 17-cv-10721, Doc. No. 52 at 83.

and assuming for the sake of argument that such a claim for damages is even cognizable under the Louisiana Constitution, the claim fails for the same reasons set forth above with respect to Mr. Brown's Fourteenth Amendment claim.

### III. Mr. Brown has not adequately alleged a claim for negligence.

Mr. Brown alleges that Mr. Wolff "failed to take due care, and instead was negligent and/or grossly negligent in using a fake subpoena in the case against him." Doc. No. 20 at ¶ 278. Mr. Brown further alleges that, "as a result of such negligence," he "was wrongfully detained and incarcerated and served almost thirty years for a crime he did not commit." *Id.* at ¶ 281. Mr. Brown further alleges that, as Mr. Wolff's employer, OPDA is vicariously liable for his alleged tortious actions. *Id.* at ¶¶ 286, 288.

"Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element)." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006).[6] Mr. Brown's claim fails to establish four of these elements.

---

[6] The "legal cause" element is also sometimes referred to as "scope of duty." *See, e.g.*, *Malta v. Herbert S. Hiller Corp.*, 333 So. 3d 384, 395 (La. 2021).

10

### A.  Duty

"The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006). "The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023).

OPDA is unaware of any Louisiana law or jurisprudence establishing that a prosecutor owes duties *to a criminal defendant* governing how the prosecutor communicates with witnesses in preparation for indictment and trial. Louisiana Code of Criminal Procedure article 66 establishes a procedure by which a prosecutor may obtain a subpoena from the criminal court compelling a witness to appear for questioning. However, Article 66 does not govern prosecutors' communications with witnesses in general, including efforts to meet with witnesses *without* an enforceable subpoena. And even assuming for the sake of argument that Article 66 creates some tort duty owed to *witnesses*, that duty plainly would not extend to criminal defendants.[7] OPDA respectfully submits that Louisiana law would not recognize any duty owed by Mr. Wolff to Mr. Brown under the circumstances alleged in the Amended Complaint.

### B.  Breach

Even assuming for the sake of argument that some duty was owed, it was not breached because the document sent to L.B. was not illegal, inappropriate, or unreasonable. As explained in

---

[7] By way of analogy, this Court recognizes that "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *See, e.g., Black v. DMNO, LLC*, No. 16-cv-2708, 2018 WL 488991, at *2 (E.D. La. Jan. 19, 2018) (quoting C. Wright & A. Miller, 9A Fed. Prac. and Proc. Civ. § 2459 (3d ed.)).

11

Section I.A above, the factual allegations do not establish that the document sent to L.B. was coercive in intent or in effect.

### C. Cause in fact

"Cause-in-fact is a 'but for' inquiry, which tests whether the accident would or would not have happened but for the defendant's substandard conduct. Where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident." *Perkins v. Entergy Corp.*, 782 So. 2d 606, 611 (La. 2001) (citation omitted). For the same reasons explained in Section I.B above, Mr. Brown's negligence claim fails on the "cause in fact" element because he has not plausibly alleged that the document sent to L.B. caused him to be wrongly convicted, when he otherwise would have been acquitted.

### D. Legal cause

"The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner." *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 294 (La. 1993). "The scope-of-the-duty inquiry is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty. The determination of legal cause/scope of the duty involves a purely legal question." *Malta v. Herbert S. Hiller Corp.*, 333 So. 3d 384, 399 (La. 2021) (citation omitted). "Some risks that arise because of a defendant's conduct are not within the scope of the duty owed to a particular plaintiff simply because they are unforeseeable." *Malta*, 333 So. 3d at 399.

The principles of legal cause are illustrated in *Talbert v. Affordable Rent-To-Own of Thibodaux, LLC*, 370 So. 3d 1 (La. App. 1st Cir. 2023). In that case, a rental company (Affordable) wrote a letter to the City Court requesting that criminal charges be filed against Mr. Talbert after he failed to pay for rented movable property and failed to return the property following demand by the company. *Id.* at 4–5. However, Affordable did not notify the City Court or the prosecutor

12

when Mr. Talbert subsequently returned the property and paid the outstanding balance. *Id.* at 5. The prosecution therefore went forward and Mr. Talbert was arrested after failing to appear for arraignment, even though he was not served with notice. *Id.* Mr. Talbert brought a negligence action against the company, arguing that the breach of its duty to notify the police, the court, or the prosecutor caused him to be wrongfully arrested and incarcerated. *Id.* However, the Louisiana First Circuit held that "the relationship between Affordable's action and inaction, and the events Mr. Talbert alleged caused him harm, were too attenuated to support a finding of legal cause." *Id.* at 11. The court further explained: "Affordable could not have foreseen that the City Court would fail to serve Mr. Talbert with notice of his arraignment hearing, that he would not appear at the hearing, and that such would lead to the City Court's issuance of a bench warrant result in Mr. Talbert's arrest, despite a documented lack of service." *Id.* at 11.

      Mr. Brown's negligence claim also fails on the "legal cause" element. Even assuming for the sake of argument that Mr. Wolff owed some duty to Mr. Brown that was breached by sending a document to L.B. in March 1994, this would not have plausibly or foreseeably caused Mr. Brown to be wrongly convicted. It simply does not make sense that receiving such a document would cause L.B., at trial nine months later, to break down while testifying and be unable to continue her testimony. Nor is there any "ease of association" between "the plaintiff's complained of harm" and the defendant's alleged conduct. *See Malta*, 333 So. 3d 399. Sending a letter asking to meet with the key witness for the State is not an act that would be reasonably intended or expected to *prevent* her from testifying. And Mr. Wolff certainly had no reason to believe or foresee that, if L.B. had testified, she would have exonerated Mr. Brown, when her prior statements had implicated him.

**IV.     Mr. Brown has not adequately alleged a claim for abuse of process.**

Mr. Brown alleges that "Wolff's use of a fake subpoena was also an abuse of process," and that OPDA is vicariously liable for Mr. Wolff's alleged tortious actions. *See* Doc. No. 20 at ¶¶ 284, 286, 288. "An abuse of process claim originates from the common law and is recognized under [Louisiana] jurisprudence as a compensable tort under LSA-C.C. art. 2315." *No Drama, LLC v. Caluda*, 177 So. 3d 747, 751 (La. App. 5th Cir. 2015) (quotation omitted). "The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990). "The precise inquiry involves the misuse of a process already legally issued whereby a party attempts to obtain some result not proper under law." *Id.* "The plaintiff must also prove damage resulting from the abuse." *Orrill v. Mortgage Electronic Registration Systems, Inc.*, No. 06-cv-10012, 2008 WL 1867706, at *2 (E.D. La. Apr. 24, 2008).[8]

First, the document allegedly sent to L.B. cannot give rise to a claim for abuse of process because it is not "process." More than one hundred years ago, the Fifth Circuit held that Louisiana law (specifically Article 2315 of the Louisiana Civil Code) would recognize the common-law tort of abuse of process. *See Gonsouland v. Rosomano*, 176 F. 481, 486–87 (5th Cir. 1910). From this early date, the Fifth Circuit recognized that abuse of process "is applicable to all kinds of abuses ***in the service of lawful process***." *Id.* at 486 (emphasis added). Eighty years later, the Fifth Circuit explained again that "[t]he precise inquiry" in a claim for abuse of process "involves a misuse of a process already ***legally issued*** whereby a party attempts to obtain some result not proper under

---

[8] "Louisiana courts conduct a duty-risk analysis to determine whether to impose liability under Article 2315." *Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014).

14

law." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (emphasis added). Louisiana courts have similarly held that an abuse-of-process claim necessarily involves misuse of **lawful** process. *See, e.g.*, *Almerico v. Dale*, 927 So. 2d 586 (La. App. 5th Cir. 2006) ("In reviewing Louisiana cases on abuse of process, we find none in which the 'process' part of the cause of action has been considered anything other than **legal** process, or **court** process.") (emphasis added); *Delcambre v. Mancuso*, 268 So. 3d 325, 331 (La. App. 3rd Cir. 2019) ("An abuse of process occurs when the actor employs **legal process** in a manner **technically correct**, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect.") (quotation omitted, emphasis added).

The document allegedly sent to L.B. was not issued by a court and does not even purport to be issued by a court. It is simply a notice signed by an Assistant District Attorney that says "Office of District Attorney" at the top. The letter accompanying the notice incorrectly described it as a "subpoena" (while making clear that it was only a "request"), but that description cannot transform an unofficial notice into "legal process."

Second, for the same reasons described above in Section I.A, the document was not sent for an "ulterior purpose" or in an attempt "to obtain some result not proper under the law." *See Duboue*, 909 F.2d at 132.

Third, the for the same reasons described above in Section I.B, Mr. Brown has not alleged any harm to him caused by the alleged abuse of process, because he has not adequately alleged that the document sent to L.B. caused him to be wrongly convicted when he would otherwise have been acquitted.

Mr. Brown relies on the decision in *Singleton* holding that plaintiffs who allegedly received "fake subpoenas" could state a cognizable claim for abuse of process. *See Singleton*, 372 F. Supp.

15

3d at 424. These claims were based on the allegation that "the Defendants flouted the investigative subpoena process provided by Article 66 of the Louisiana Code of Criminal Procedure by serving 'subpoenas' on several of the Plaintiffs with the ulterior purpose of avoiding judicial oversight." *Id.* However, *Singleton* was only concerned with claims by witnesses who had allegedly received "fake subpoenas," and it did not hold, imply, or suggest that sending such a document to a witness would be a tortious act *against a criminal defendant* who did not receive it.

Moreover, the allegations of the Amended Complaint do not show that Mr. Wolff "flouted" the requirements of Article 66. Unlike the "fake subpoena" form at issue in *Singleton*, the document allegedly sent to L.B. did not suggest that it was issued pursuant to Article 66 or refer to Article 66 at all. The allegations also do not suggest that L.B. or her family were reluctant to meet with prosecutors or that the document sent to her was intended to force an unwanted meeting through deception or coercion. In short, the allegations do not establish that the document was anything other than correspondence to arrange a voluntary meeting with witnesses who were fully cooperative.

Finally, the decision in *Singleton* is contrary to Louisiana law to the extent it holds that a failure to "follow the investigative subpoena procedure provided for by law" may give rise to an abuse of process claim. *See Singleton*, 372 F. Supp. 3d at 424. The tort of abuse of process is not implicated by any alleged failure to follow proper procedures in litigation. Rather, as the authorities discussed above demonstrate, it is concerned specifically with the misuse of court-issued legal process for improper purposes. In the absence of court-issued legal process, there can be no claim for abuse of process.

## CONCLUSION

For the reasons set forth above and in OPDA's Motion to Dismiss, Doc. No. 11, Mr. Brown's claims against OPDA should be dismissed with prejudice.

Respectfully submitted,

 /s/ Matthew J. Paul
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER THORNTON ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for Jason R. Williams (in his official capacity as Orleans Parish District Attorney)*
