UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK BROWN ) | |
| ) | Civil Action No. 24-00423 |
| *Plaintiff*, ) | |
| v. ) | Section R |
| ) | Judge Sarah S. Vance |
| JASON R. WILLIAMS, in his official capacity as ) | |
| Orleans Parish District Attorney, et al. ) | Division 4 |
| ) | Magistrate Judge Karen Wells Roby |
| *Defendants*. ) | |
| ) | |

### PATRICK BROWN'S
### OPPOSITION TO DEFENDANT'S SUPPLEMENTAL 12(b)(6) MOTION TO DISMISS

Plaintiff Patrick Brown reasserts his arguments made in opposition to Defendant Jason William's Rule 12(b)(6) motion to dismiss (R. Doc. 18) and further opposes Williams' supplemental memorandum in support of Williams' original motion (R. Doc. 24).

Williams' supplemental memorandum deals with the amended complaint's "fake subpoena" claims. But consistent with Judge Milazzo's holding in *Singleton*, which involved Orleans Parish District Attorneys sending fake subpoenas to victims, Mr. Brown has plausibly stated claims against Defendants for sending a fake subpoena to the victim, L.B., who was a critical witness in the case against Mr. Brown. Williams' motion should be denied.

Mr. Brown sued the Orleans Parish District Attorney after he was wrongfully convicted of raping a child and imprisoned for thirty years for this crime he did not commit. On May 24, 2024, Mr. Brown filed an amended complaint (R. Doc. 20), adding assistant district attorney David Wolff, among others, as additional defendants. Williams, in his official capacity as the District Attorney, filed a supplemental memorandum in further support of his original motion to dismiss to address Mr. Brown's claims against Wolff (although Wolff is not identified as a movant in the District Attorney's supplemental memorandum) and related to the District Attorney's fake

1

subpoena to L.B.. R. Doc. 24 at 3.[1]

## LAW AND ARUGMENT

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only plead enough facts—accepted as true—to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Nevarez v. Coleman*, No. 21-1855, 2023 WL 372088, at *3 (E.D. La. Jan. 24, 2023) (Vance, J.) (quoting *Iqbal*, 556 U.S. at 678). "The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff." *Id.* (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009)).

I.  **The Court should reject OPDA's supplemental arguments because issuing a fake subpoena violates Mr. Brown's due process rights, explained in *Singleton v. Cannizzaro*.**

"An executive official violates a person's substantive due process rights when the official's conduct is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Singleton*, 372 F. Supp. 3d at 415, *affirmed in part in Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020) (citing *Reyes v. N. Texas Tollway Auth.*, 861 F.3d 558, 562 (5th Cir. 2017)). There should be no question that the claims Mr. Brown has raised against Defendants for sending a fake subpoena to a key witness in his case violated his due process rights.

In *Singleton v. Cannizzaro*, Judge Milazzo held that the Orleans Parish District Attorney's practice of issuing fake subpoenas to victims sufficiently shocked the conscience such that the

---

[1] Most, if not all, of the statements described in Williams' first two paragraphs of his introduction are not found in Mr. Brown's complaint—and are in fact inaccurate. This is evident by the lack of citations to Mr. Brown's First Amended Complaint. The Court should therefore disregard these extraneous assertions at this initial pleading stage.

2

*Singleton* plaintiffs' allegations defeated 12(b)(6) arguments. *See Singleton*, 372 F. Supp. 3d at 415. Judge Milazzo explained that "Plaintiffs' allegations that prosecutors manufactured 'subpoenas,' deliberately side-stepping judicial oversight of the subpoena process, appears to… represent a breed of official misconduct." *Id*. The Fifth Circuit agreed, noting that OPDA's "use of the fake subpoenas violated Louisiana law, which requires prosecutors to channel proposed subpoenas through a court." *Singleton*, 956 F.3d 773, 777 (5th Cir. 2020). Louisiana Code of Criminal Procedure article 66 allows prosecutors to seek subpoenas for witnesses they want to question, but those subpoenas must be authorized by a judge. Like the defendant-prosecutors in *Singleton*, the defendant-prosecutors in Mr. Brown's case "side-stepped the judicial process to the extent that they created and disseminated 'subpoenas' to compel witnesses to meet with them outside of court" without judicial authority. *See Singleton*, 372 F. Supp. 3d at 407.

Here, the allegations against the same District Attorney's office for the same illegal conduct are sufficient to overcome OPDA's supplemental arguments. Mr. Brown's allegations about prosecutors' manufacturing and issuing fake subpoenas are almost identical to the allegations that survived 12(b)(6) in *Singleton* because the language and intent of the defendants' fake subpoenas was the same (further suggesting the existence of a long-standing pattern or practice): the documents were referred to as "subpoenas," self-identified as compulsory process to appear to testify before the District Attorney and in Criminal District Court, and explicitly stated that the recipients were "to testify to the truth according to your knowledge in such matter as may be required of you." *Compare Singleton v. Cannizzaro,* 17-cv-10721, R. Doc. 52 at 83 (fake subpoena), *with* R. Doc. 20 ¶¶199-208.

OPDA argues that Wolff used different fake subpoenas than those that were challenged in *Singleton* because the *Singleton* fake subpoenas included the word "subpoena" and a threat of imprisonment. *See* R. Doc. 24 at 9. Here, the word "subpoena" appears in Wolff's letter, rather

3

than the attachment. R. Doc. 20 ¶202 ("Enclosed: Subpoena"). But this is a distinction without a difference: OPDA does not cite any authority to suggest that it matters which piece of paper the word "subpoena" appears on or that a prosecutor's using "subpoena" in official correspondence is any less threatening. The point of Wolff's letter and enclosure of a document masquerading as a subpoena is to illegally compel the witness's compliance and appearance, without following the proper procedures for legitimately doing so. That is exactly why Wolff referred to the document—which was styled as a subpoena—as a "subpoena." R. Doc. 20 ¶¶ 201-202. That term carries specific meaning and implies significant legal consequences, which Mr. Brown sufficiently alleges Wolff used to intimidate witnesses during his unlawful and wrongful prosecution.

Mr. Brown's allegations therefore sufficiently allege a due process violation. The Louisiana Code of Criminal Procedure are the rules that guarantee procedural due process and a fair trial to a criminal defendant. *See United States v. Avila-Dominguez*, 610 F.2d 1266, 1270 (5th Cir. 1980) ("The purpose of a criminal trial is to produce evidence which shows the truth. The purpose of criminal procedure is to assure that end through fair means.") La. Code of Criminal Procedure article 66 dictates how a prosecutor should engage with witnesses, not only to protect witnesses, but also to protect the constitutional due process rights of the accused who must face those witnesses. *See* La. Code Crim. Proc. art. 66 cmt. (b) ("The requirement of court approval before the subpoena is actually issued by answers the only real objection to the device, i.e., the possible abuse of it by the district attorney.") When a prosecutor uses false and misleading information to coerce or thwart accurate witness testimony, that directly impacts the accused. By alleging that Wolff and OPDA unlawfully coerced and scared six-year-old L.B. to participate in prosecution of Mr. Brown, an innocent person who was ultimately wrongfully convicted, Mr. Brown has sufficiently stated a constitutional claim to survive a Rule 12(b)(6) motion.

OPDA's supplemental arguments should be rejected.

**II.     Even if Mr. Brown's allegations were not similar to *Singleton*, he has sufficiently alleged due process violations when accepting such allegations as true and drawing all reasonable inferences in his favor.**

All of OPDA's arguments for dismissal depend on drawing inferences in *OPDA's favor*—which this Court cannot do on a Rule 12(b)(6) motion. For example, OPDA tries to characterize Wolff's fake subpoena as a "letter and notice requesting a pre-trial meeting with L.B.," and argues that Wolff's "letter makes clear that this is simply a prosecutor's request for a meeting." R. Doc. 24 at 5–6. But as explained above, the letter does not objectively negate the coercive nature of the fake subpoena attached to it. If anything, the letter contributes to (fake) air of judicial authority surrounding the enclosed subpoena. As explained above, the term "subpoena" is typically understood as a legal term of art that implies court involvement and carries significant consequences if ignored. OPDA tries to ignore that the letter itself refers to the enclosed document as a "subpoena," carrying all the implications that come with using that legal term. Though OPDA now contends that Wolff's reference is incorrect—which we all know now—OPDA offers no explanation for *why* Wolff said it anyway. As Mr. Brown has alleged, Wolff did so deliberately to imbue the fake subpoena with suggestions of legal authority and significant legal consequences so that the witness who received it would comply without pushback. R. Doc. 20 ¶¶199-208, 261-268. Far from communicating a simple request for voluntary cooperation, the fake subpoena uses all capital letters, again to command and intimidate:

"YOU ARE HEREBY NOTIFIED to appear." R. Doc. 20 ¶ 203.

All of this is especially true when the recipient of Wolff's subpoena is a six-year-old girl, who was already traumatized by her recent sexual assault and separation from her family while this prosecution proceeded. While OPDA tries to argue that L.B. may not have been able to read and understand the subpoena, this suggestion actually works in Mr. Brown's favor. L.B. was at the mercy of adults, including OPDA's prosecutors, around her. It is thus fairly inferable that upon receiving Wolff's fake subpoena, Carolyn Wharton—as L.B.'s temporary guardian and mother of

5

Lamar Wharton, whom L.B. says actually raped her—would have communicated the seriousness of Wolff's correspondence and felt compelled to bring L.B. to meet with prosecutors. As Mr. Brown's complaint alleges, L.B. herself tried over and over again—even at a very young age—to tell these adults that they got it all wrong, and no one would listen to her.

Yet, OPDA argues that Mr. Brown has not alleged that he was harmed by Wolff's compelling L.B. to involuntarily participate in Mr. Brown's prosecution through the fake subpoena. R. Doc. 24 at 6-8. But accepting the Mr. Brown's allegations as true, as he has pleaded them in his amended complaint without OPDA's improper gloss, and by drawing all reasonable inferences in his favor, Mr. Brown has sufficiently alleged constitutional harm. Specifically:

- L.B was a six-year-old rape victim, who, one can infer, had been through immense trauma. *See* R. Doc. 20 ¶¶ 80-90.

- L.B. is confident she did not voluntarily accuse Mr. Brown of raping or assaulting her, despite what doctors and NOPD said. R. Doc. 20 ¶¶ 88-92, n.4.

- NOPD offers questioned L.B. about "daddy Patrick" raping her but didn't ask whether she had been raped by or felt unsafe around anyone else. R. Doc. 20 ¶¶ 93, 189-198.

- Mr. Brown, who L.B. considered a father, was arrested that same day for this offense. R. Doc. 20 ¶ 99.

- Three weeks later, Wolff and OPDA sent L.B. a fake subpoena to appear and "testify" to Wolff about Mr. Brown. R. Doc. 20 ¶¶199-208.

- OPDA tried to call L.B. at trial to testify, yet she was overcome with fear and illness and unable to testify in any detail about who raped her. R. Doc. 20 ¶¶ 145-154.

- Terrified, and again surrounded by adults who would not listen to her, L.B. was unable to testify about the consequences of telling a lie without her nose beginning to bleed. R. Doc. 20 ¶ 151.

Given these facts, taken as true, it is reasonable to infer that L.B. or her guardians believed there would be legal consequences if L.B. did not comply with the "subpoena" to "testify" at the District Attorney's office. It is reasonable to infer that she was compelled to do so by the receipt

of Wolff's fake subpoena. It is reasonable to infer that Wolff encouraged and expected L.B. to testify, specifically, that Mr. Brown raped her, because he tried to call her as a witness during Mr. Brown's trial. It is reasonable to infer that L.B. was too overcome with fear and emotion at the prospect of testifying against Mr. Brown, that she was unable to honestly testify at all. And finally, it is reasonable to infer that the jury believed L.B. was too traumatized to testify as a result of Mr. Brown's alleged actions. Therefore, compelling L.B. to cooperate against Mr. Brown, despite not being able to testify, resulted in his wrongful conviction. OPDA's motion should be denied.

**III.     The motion should be denied because Mr. Brown has sufficiently alleged claims against Defendants pursuant to the Louisiana Constitution.**

In Count Two of the First Amended Complaint, Mr. Brown alleges that the same conduct described in the preceding sections as violations of the United States Constitution also violates the Louisiana Constitution. OPDA makes no new arguments addressing the state constitutional claims. Therefore, for the reasons already provided in this opposition, Mr. Brown has sufficiently pleaded allegations to defeat Defendants' motion to dismiss.

**IV.     The motion should be denied because Mr. Brown has sufficiently alleged a claim against Defendants for negligence.**

OPDA also moves to dismiss Plaintiff's negligence claim. The District Attorney is not directly liable for that claim but would be vicariously liable. See R. Doc. 20 at ¶¶ 285-288 (Vicarious Liability for State Law Torts). Under the Louisiana Supreme Court's duty-risk analysis for assigning tort liability for negligence, a plaintiff must establish that "(1) the plaintiff suffered an injury; (2) the defendant owed a duty of care to the plaintiff; (3) the duty was breached by the defendant; (4) the conduct in question was the cause-in-fact of the resulting harm; and (5) the risk of harm was within the scope of protection afforded by the duty breached." *Doe v. McKesson*, 2021-00929 (La. 03/25/22), 339 So. 3d 524, 531 (citing *Posecai v. Wal-Mart Stores, Inc.*, 752 So.2d 762, 766 (La. 1999)) (citations omitted). "Under Louisiana law, the existence of a duty presents a question of law that varies depending on the facts, circumstances, and context of each

case and is limited by the particular risk, harm, and plaintiff involved." *Bursztajn v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) (quotations omitted).

"At the motion to dismiss stage… [the Court is] simply required to decide whether [Plaintiff's] claim for relief is sufficiently plausible to allow him to proceed to discovery." *McKesson*, 339 So. 3d at 532. The Court need not determine whether liability is appropriate at this stage. *Id*.

Prosecutors, who hold immense power in their authority to charge and convict criminal defendants, owe those defendants a duty not to abuse or exceed their authority to obtain a conviction. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Agurs*, 427 U.S. 97 (1976); *Kyles v. Whitley*, 514 U.S. 419 (1995); American Bar Association Criminal Justice Standards, 3-2.1(b) ("The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict."). Additionally, the Louisiana Code of Criminal Procedure provides the rules that guarantee procedural due process and a fair trial to a criminal defendant.

But prosecutorial power does not and has never included the authority to unilaterally subpoena witnesses. *Singleton*, 372 F. Supp. 3d at 407. As explained above, the Code of Criminal Procedure provides that "*the court may order* the clerk to issue subpoenas" to witnesses to be questioned by prosecutors. art. 66 (emphasis added). Therefore, "[a]llegations that . . . Defendants purported to subpoena witnesses without court approval . . . describe more than a mere procedural error or expansion of authority. Rather, they describe the usurpation of the power of another branch of government." *Singleton*, 372 F. Supp. 3d at 407.

Mr. Brown has sufficiently stated a claim for negligence against Wolff for issuing a fake subpoena to L.B. because: (1) Wolff had a duty—pursuant to United States Supreme Court precedent, ethical and professional rules of conduct for prosecutors and the Louisiana Code of

8

Criminal Procedure—to act within the bounds of law to seek the truth and justice, and not merely to convict; (2) Wolff breached that duty when he exceeded the procedural boundaries of Louisiana law to send an unlawful subpoena to L.B. to compel her to participate in OPDA's wrongful prosecution of Mr. Brown; (3) L.B. in fact felt compelled to participate with the wrongful prosecution; (4) it was foreseeable that compelling L.B.'s involuntary participation would cause Mr. Brown to be wrongfully convicted and imprisoned; and (5) Mr. Brown was wrongfully convicted and imprisoned.

### V. Mr. Brown has sufficiently stated a claim for abuse of process according *Singleton v. Cannizzaro*.

OPDA moves to dismiss Plaintiff's abuse of process claim. Here too, the District Attorney is not directly liable for that claim but would be vicariously liable.

In *Singleton*, Judge Milazzo held that Plaintiffs plausibly stated claims for abuse of process involving the investigative subpoena process when those defendants sent fake subpoenas to victims without court authority. 372 F. Supp. 3d at 423-24. As Judge Milazzo succinctly explained, "Defendants flouted the investigative subpoena process provided by Article 66 of the Louisiana Code of Criminal Procedure by serving 'subpoenas' on several of the Plaintiffs with the ulterior purpose of avoiding judicial oversight. *Such allegations amount to an abuse of process.*" *Id*. (emphasis added).[2]

Just as in *Singleton*, Mr. Brown has plausibly stated an abuse-of-process claim against Wolff for sending a fake subpoena to L.B. As explained in Section I, the documents Wolff sent are almost identical to the fake subpoenas sent by the *Singleton* defendants. Here, OPDA tries to distinguish Mr. Brown from the plaintiffs in *Singleton* because *he* was not sent a fake subpoena. But an abuse-of-process claim depends on the conduct *of the bad actor*—here Wolff, unlawfully

---

[2] Although the *Singleton* defendants appealed this ruling, the Fifth Circuit declined to exercise pendant interlocutory jurisdiction over the "legal sufficiency of Plaintiffs' state-law claims." *Singleton,* 956 F. 3d at 785 (5th Cir. 2020).

9

sent a fake subpoena to a crime victim to compel the victim's involuntary participation in his prosecution of Mr. Brown "with the ulterior purpose of avoiding judicial oversight." *Singleton*, 372 F. Supp. 3d at 423-24. Thus, *Wolff* abused the process. And as already explained, Mr. Brown—as the victim of a wrongful prosecution and conviction during which Wolff abused the process to help secure that conviction—has standing to bring this claim.

OPDA also argues that the fake subpoena could not have been an abuse of process because it was "not issued by a court and does not even purport to be issued by a court." R. Doc. 24 at 15. But that is the whole point. The largest type and only bolded type on the document reads: "**CRIMINAL DISTRICT COURT FOR THE PARISH OF NEW ORLEANS.**" R. Doc. 24-1. And Louisiana law holds that things can be abuse of process even if not directly issued by a court. *See In re Matter Under Investigation*, 15 So. 3d 972, 987 (La. 2009) ("[U]nlike a person served with a search warrant, a person receiving a subpoena duces tecum 'may at any time seek protection by the court from hardship or abuse of process by moving to modify or quash the subpoena or order.'"(citing *State of Louisiana v. Lee*, 05-2098, p. 17 (La. 1/16/08), 976 So. 2d 109, 123-24). OPDA's motion should be denied.

## CONCLUSION

This Court should reject OPDA's arguments presented in the supplemental memorandum in further support of OPDA's original motion to dismiss Mr. Brown's claims related to Wolff's issuance of a fake subpoena should not be dismissed.

[*signatures on the following page*]

        Respectfully submitted,

        /s/ *Caroline Gabriel*
        Caroline Gabriel, La. Bar No. 38224
        William Most, La. Bar No. 36914
        MOST & ASSOCIATES
        201 St. Charles Ave., Ste. 2500, #9685
        New Orleans, LA 70170
        T: (504) 509-5023
        williammost@gmail.com

        and

        Chloé M. Chetta, 37070
        BARRASSO USDIN KUPPERMAN
        FREEMAN & SARVER, L.L.C.
        909 Poydras St., Suite 2350
        New Orleans, Louisiana  70112
        Telephone:  (504) 589-9700
        cchetta@barrassousdin.com