**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

PATRICK W. BROWN,

     *Plaintiff*,

v.

JASON R. WILLIAMS, in his official
capacity as Orleans Parish District Attorney,

     *Defendant*.

Civil Action No. 24-00423

Section R
Judge Sarah S. Vance

Division 4
Magistrate Judge Karen Wells Roby

---

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DAVID WOLFF**</u>

Defendant David Wolff, through undersigned counsel, respectfully submits the following memorandum in support of his motion to dismiss Plaintiff Patrick Brown's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Mr. Wolff hereby adopts OPDA's Supplemental Memorandum in Support of Motion to Dismiss for Failure to State a Claim (the "Supplemental Memo"), Doc. No. 24, in its entirety. For the reasons explained in the Supplemental Memo, Mr. Brown has not adequately alleged a claim against Mr. Wolff under the Fourteenth Amendment to the U.S. Constitution, under the Louisiana Constitution, or for the state-law torts of negligence or abuse of process. Additionally, even assuming for the sake of argument that Mr. Brown has stated a cognizable claim under one or more theories, Mr. Wolff is entitled to absolute and qualified immunity for the reasons explained below. The claims against Mr. Wolff therefore must be dismissed with prejudice.

**I.**     **Mr. Wolff is entitled to absolute immunity under federal and Louisiana law for any claims arising out of his allegedly sending documents to L.B. requesting a meeting.**

    **A.**     **Federal law**

"[P]rosecutors are absolutely immune with respect to activities that are 'intimately associated with the judicial phase of the criminal process.'" *Cousin v. Small*, 325 F.3d 627, 631–

1

32 (5th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate of the State.'" *Id.* at 632 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993)); *see also Buckley*, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

To determine whether a specific action falls within the protection of absolute immunity, courts employ a "functional test," *Cousin*, 325 F.3d at 631–32, distinguishing acts of advocacy from "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley*, 509 U.S. at 273. This functional test "focuses on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused *or the question whether it was lawful*." *Id.* at 271 (emphasis added). Of particular importance to this case, the Supreme Court noted in *Imbler* that a prosecutor's out-of-court effort "to control the presentation of his witness' testimony" was "fairly within his function as an advocate." *Imbler,* 424 U.S. at 431 n.32.

Developing, securing, preparing, and presenting witness testimony at trial are quintessential prosecutorial functions. *See Imbler*, 424 U.S. at 430-31; *Adams v. Hanson*, 656 F.3d 397, 405 (6th Cir. 2011) ("[C]onduct related to the preparation and presentation of witness testimony may be protected whether it occurs in or out of court."); *Buckley*, 509 U.S. at 284 (Kennedy, J., concurring in part and dissenting in part) ("Actions in obtaining, reviewing, and evaluating witness testimony are a classic function of the prosecutor as advocate.") (internal quotation and citation omitted); *Green v. New Orleans Police Dept.*, No. 12-cv-1992, 2013 WL

2

5739076, at *5 (E.D. La. Oct. 22, 2013) ("[A]bsolute prosecutorial immunity . . . extends to those acts 'intimately associated with the judicial phase of the criminal process,' which includes the presentation of the State's case, evaluating evidence, and ***interviewing witnesses in preparation for trial***.") (quoting *Burns v. Reed*, 500 U.S. 478, 492 (1991)) (emphasis added); *Mowbray v. Cameron County*, 274 F.3d 269, 277 (5th Cir. 2001) (alleged actions involved "the prosecutors' choosing expert witnesses, preparing those witnesses for trial, and performing the state's trial duties" and were therefore protected by absolute immunity); *Doe v. Harris County*, 751 F. App'x 545, 548 (5th Cir. 2018) (holding that "detaining a witness in order to compel testimony at trial is prosecutorial and that any lawsuits arising out of a prosecutor's performance of this function are barred, . . . . even where the prosecutor acted inappropriately") (quotation omitted).

Mr. Brown cites the Fifth Circuit's decision in *Singleton v. Cannizzaro*, 956 F.3d 773, 782 (5th Cir. 2020), which held that, "[b]ased on the pleadings before [the Court] at this time," claims by plaintiffs who allegedly received "fake subpoenas" were not barred by absolute immunity. The Fifth Circuit characterized the alleged use and purpose of the "fake subpoenas" in that case as "information-gathering" that was "more analogous to investigative police work than advocatory conduct." *Id.* at 783.[1] The Fifth Circuit noted that the documents were allegedly used "to pressure crime victims and witnesses to meet with [prosecutors] privately." *Id.* The Fifth Circuit also noted that the defendants had allegedly "intentionally avoided the judicial process that Louisiana law requires for obtaining subpoenas." *Id.* at 784.

For multiple reasons, the decision in *Singleton* is distinguishable. Mr. Brown does not plausibly allege that Mr. Wolff sought to pressure, coerce, or compel L.B. or to avoid any judicial

---

[1] The Fifth Circuit noted, with respect to several of the plaintiffs, that prosecutors never sought to use their testimony at trial. *See Singleton*, 956 F.3d at 782 n.5.

restraints or oversight. Nor does he allege that Mr. Wolff had any reason or motive to do so. Mr. Brown does not allege that L.B. or her guardians were uncooperative or unwilling to speak with him or other prosecutors.[2] Moreover, as the victim of the rape and the person who identified Mr. Brown as the perpetrator, L.B. was obviously an important witness and was in fact called as a witness by the State. Mr. Wolff's correspondence requesting a meeting with L.B. clearly related to her prior identification of Mr. Brown and her testimony that would ultimately be presented in court.

Nothing in the Amended Complaint suggests otherwise. Indeed, Mr. Brown makes clear that his "fake subpoena" claims ultimately relate to L.B.'s testimony at trial. He accuses Mr. Wolff of using "false and misleading information to coerce or thwart accurate witness testimony" or "coerc[ing] and scar[ing] six-year-old L.B. to participate in prosecution of Mr. Brown." *See* Doc. No. 29 at 4. These accusations are absolutely false and are made without any factual support. But even if they were true, they would only confirm that Mr. Wolff is being sued for alleged conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Mr. Wolff is therefore entitled to absolute immunity.

### B.    Louisiana law

Louisiana law provides absolute immunity to prosecutors for alleged conduct "within the scope of the prosecutor's role as an advocate for the state" that is "intimately associated with the conduct of the judicial phase of the criminal process." *Knapper v. Connick*, 681 So. 2d 944, 950 (La. 1996); *Jameson v. Montgomery*, 366 So. 3d 1210, 1214 (La. 2023) (holding that various Louisiana tort and constitutional claims were barred by absolute prosecutorial immunity); *see also Muhammad v. State*, No. 99-cv-3742, 2000 WL 1568210, at *4 & n.5 (E.D. La. Oct. 18, 2000)

---

[2] Nor could he allege such a thing, because it would be false.

(holding that abuse-of-process claim and other Louisiana tort claims were barred by absolute prosecutorial immunity). For the same reasons explained above in Section I.A, the Louisiana constitutional and tort claims against Mr. Wolff are barred by absolute immunity.

## II.   Mr. Wolff is entitled to qualified immunity as to the federal and Louisiana constitutional claims against him.

### A.   Federal law

With respect to any official actions that are not covered by absolute immunity—such as "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings"—prosecutors are entitled to qualified immunity. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quotation omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quotation omitted). "[Q]ualified immunity represents the norm, . . . and courts should deny a defendant immunity only in rare circumstances." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quotation omitted). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan*, 659 F.3d at 371 (quotation omitted).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The plaintiff "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."

*Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (quotation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted).

As explained in OPDA's Supplemental Memo, Doc. No. 24 at 5–9, a prosecutor sending a letter and notice requesting a pre-trial meeting with L.B., a crime victim, is not even arguably a violation of Mr. Brown's substantive due process rights under the Fourteenth Amendment. But even assuming for the sake of argument that the Court disagrees, any such rights were not clearly established in 1994 (and are not clearly established even today). Undersigned counsel is not aware of any jurisprudence as of 1994 holding that sending allegedly unlawful "subpoenas" to crime victims or witnesses would violate the substantive-due-process rights of those victims or witnesses, much less the rights of a criminal defendant. Notably, even the decision in *Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 415–16 (E.D. La. 2019), which Mr. Brown cites repeatedly in his Amended Complaint, held that the individual defendants were entitled to qualified immunity as to the Fourteenth Amendment claims based allegedly sending "fake subpoenas." The Court noted the absence of "any case law suggesting that the Defendants violated a clearly established right of Plaintiffs." *Id.*

### B.   Louisiana law

"Louisiana applies qualified immunity principles to state constitutional law claims based on 'the same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (quoting *Moresi v. Dep't of Wildlife and Fisheries*, 567 So. 2d 1081, 1093 (La. 1990)). Accordingly, for the same reasons explained above in Section II.A, the Louisiana constitutional claims against Mr. Wolff are barred by qualified immunity.

**CONCLUSION**

For the reasons set forth above and in OPDA Supplemental Memo, Doc. No. 24, the claims against David Wolff should be dismissed with prejudice.

Respectfully submitted,

_/s/ Matthew J. Paul_____
W. Raley Alford, III, 27354
Matthew J. Paul, 37004
STANLEY REUTER THORNTON ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile:  (504) 524-0069
wra@stanleyreuter.com
mjp@stanleyreuter.com

*Counsel for David Wolff*