UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK W. BROWN,<br><br>    *Plaintiff*,<br><br>v.<br><br>JASON R. WILLIAMS, in his official capacity as Orleans Parish District Attorney,<br><br>    *Defendant*. | Civil Action No. 24-00423<br><br>Section R<br>Judge Sarah S. Vance<br><br>Division 4<br>Magistrate Judge Karen Wells Roby |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS BY DAVID WOLFF**

    Defendant David Wolff, through undersigned counsel, respectfully submits this reply in support of his motion to dismiss Plaintiff Patrick Brown's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), Doc. No. 31, in order to respond to the arguments made in Mr. Brown's opposition memorandum, Doc. No. 33.

    Initially, Mr. Wolff must respond to the accusation that he prosecuted Mr. Brown despite "clear evidence that [he] was innocent." Doc. No. 33. At the time of Mr. Brown's trial, L.B. had previously identified him to doctors, police officers, prosecutors, and family members as the man who raped her. And while Mr. Brown suggests that L.B. may have been confused or misunderstood, *see* Doc. No. 20 at ¶ 88 n.4, even he does not allege that L.B. ever identified any other person as the perpetrator before the date of his conviction. As for the alleged "confession" by L.B.'s cousin, that statement was known to Mr. Brown and presented at trial but apparently rejected by the jury. *See* Doc. No. 20 at ¶¶ 156–157.

1

**I.      Mr. Brown has not adequately alleged a claim against Mr. Wolff under any theory.**

Mr. Wolff adopts and incorporates OPDA's reply in support of its motion to dismiss, Doc. No. 30, which responds to the arguments in Mr. Brown's opposition and explains why Mr. Brown has not adequately alleged a claim under any theory.

**II.     The claims against Mr. Wolff are barred by absolute immunity.**

Mr. Brown argues that absolute immunity should be denied because this case is indistinguishable from *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020). Yet *Singleton* is distinguishable for multiple reasons. First, the document allegedly sent to L.B. is nothing like the "fake subpoenas" at issue in *Singleton*. *See* Doc. No. 24 at 8–9 (comparing the two documents). Second, as Mr. Brown notes, the Fifth Circuit concluded in *Singleton* that "fake subpoenas" were allegedly used for "information-gathering . . . more analogous to investigative police work than advocatory conduct." *See* Doc. No. 33 at 4–5. Yet nothing in the Amended Complaint suggests that the document allegedly sent to L.B. was for "investigative" or "information-gathering" purposes. To the contrary, Mr. Brown contends that it was used "to compel [L.B.'s] testimony." Doc. No. 33 at 7; *see also* Doc. No. 29 at 4 (arguing that the document was used "to coerce or thwart accurate witness testimony").[1]

Finally, Mr. Brown alleges no facts that would show that the document allegedly sent to L.B. was used or intended to "pressure" her or her family to do anything. Mr. Brown argues that Mr. Wolff's motive, and L.B. cooperativeness, are irrelevant. *See* Doc. No. 33 at 5–6. But as Mr. Brown notes, the Fifth Circuit found it important in *Singleton* that "fake subpoenas" were allegedly used "in an attempt to pressure crime victims and witnesses" to meet privately with prosecutors.

---

[1] To be clear, these are nothing more than the false allegations of Mr. Brown. In fact, Mr. Wolff did not coerce or compel L.B. or her family to do anything.

2

*Singleton*, 956 F.3d at 783. Unlike *Singleton*, there are no factual allegations here showing that Mr. Wolff was "attempting" any such thing, or that L.B. or her family were in fact "pressured" to do something they did not want to do. Mr. Brown does not even allege that L.B. actually received or read the document.

**III.     The constitutional claims against Mr. Wolff are barred by qualified immunity.**

Mr. Brown argues that Mr. Wolff is not entitled to qualified immunity because he "knowingly violate[d] the law." Doc. No. 33 at 6. He argues that Louisiana Code of Criminal Procedure article 66 "clearly established" that Mr. Wolff's alleged actions were illegal. Doc. No. 33 at 6. Even if Mr. Brown could demonstrate that Mr. Wolff's alleged actions were contrary to state procedural law (and he cannot), that still would not defeat qualified immunity.

"In a section 1983 suit, the relevant law addressed for this purpose is only the federal law the asserted violation of which provides the basis for the claim sued on." *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014) (quoting *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). "[A]llegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right. This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question." *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986).

Mr. Brown alleges that his own Fourteenth Amendment substantive due process rights were violated when Mr. Wolff allegedly sent the correspondence attached as Doc. No. 24-1 to L.B. Unless *those* rights were "clearly established at the time of the challenged conduct," Mr. Wolff is entitled to qualified immunity. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

3

But Mr. Brown has not cited a single decision even suggesting that the Fourteenth Amendment establishes such a right possessed by a criminal defendant. Nor is such a right "self-evident" or "obvious" in light of "general standards." *See* Doc. No. 33 at 7.

In any event, the factual allegations do not show that Mr. Wolff violated any law, knowingly or otherwise. Article 66 has no application to the alleged facts of this case. That article establishes a procedure by which district attorneys can obtain court-issued subpoenas "ordering" a witness to appear for questioning, subject to punishment for contempt of court if the subpoena is not obeyed. Nothing in Article 66 prohibits a prosecutor from sending an informal notice that does not purport to be (1) issued by a judge or the clerk of court, (2) issued pursuant to Article 66, or (3) legally enforceable by punishment for contempt of court.

**IV.     Mr. Brown's arguments challenging the very existence of official immunity are unpersuasive on the merits and are unequivocally foreclosed by binding Supreme Court and Fifth Circuit precedent.**

Mr. Brown also argues that absolute and qualified immunity should be denied because these doctrines are not supported by "Section 1983's statutory text." Doc. No. 33 at 7. He argues that the version of 42 U.S.C. § 1983 originally enacted by Congress in 1871 (as part of the Civil Rights Act of 1871) differs from the version enacted by Congress in 1874 (as part of the Revised Statutes of 1874). Specifically, he contends that the 1871 version included a "notwithstanding clause" that, in his view, reflects the intent of Congress to eliminate common-law defenses such as qualified immunity (as it is now known). This clause was omitted in the 1874 version of the statute.

Mr. Brown contends that "the omitted clause still has the force of law," Doc. No. 33 at 7–8, but this is incorrect. "[T]he *Revised Statutes* of 1873[2] are an example of positive law—a compilation that itself was officially passed into law through the legislative process."[3] "[T]he *Revised Statutes* of 1873 were passed into law while simultaneously repealing all laws enacted prior to December 1, 1873, that were embraced in any section of the *Revised Statutes*."[4] Thus, even the law review article on which Mr. Brown "relies substantially," *see* Doc. No. 33 at 7 n.3, acknowledges that "the Notwithstanding Clause is not formally positive law."[5] And, indeed, Mr. Brown himself later admits that "[t]he 43rd Congress passed Durant's revisions as the Revised Statutes in 1874, which later became the U.S. Code." Doc. No. 33 at 12–13.

Mr. Brown further argues that the 1871 version best reflects the intent of Congress because the 1874 revisions were "explicitly intended *not* to change the substantive provisions of the law." Doc. No. 33 at 13.[6] That contention is debatable at best. The Supreme Court confronted a very similar dispute over the same statute (42 U.S.C. § 1983) in *Maine v. Thiboutot*, 448 U.S. 1 (1980). As explained by Justice Powell in dissent:

> Section 1983 derives from § 1 of the Civil Rights Act of 1871, which provided a cause of action for deprivations of constitutional rights only. "Laws" were not mentioned. Act of Apr. 20, 1871, 17 Stat. 13. The phrase "and laws" was added in

---

[2] As explained in the cited article, the Revised Statutes of 1874 are sometimes also referred to as the Revised Statutes of 1873.

[3] *See* Shawn G. Nevers & Julie Graves Krishnaswami, *The Shadow Code: Statutory Notes in the United States Code*, 112 LAW LIBRARY J. 213, 218 (2020).

[4] *Id.* (quotation and footnote omitted).

[5] *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV. 201, 237–38 (2023).

[6] Ironically, Mr. Brown contends that "only the written word is the law," Doc. No. 33 at 14 (quoting *Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020)), while arguing that this Court should ignore the actual current statutory language of § 1983 (enacted in 1874) in favor of an earlier version that was repealed.

> 1874, when Congress consolidated the laws of the United States into a single volume under a new subject-matter arrangement.

*Id.* at 15 (Powell, J., dissenting). The Court held that the phrase "and laws" expanded 42 U.S.C. § 1983 to encompass "claims based on purely statutory violations of federal law," in addition to constitutional claims. *Id.* at 3. The dissenting justices argued forcefully that "the variations in phrasing introduced in the 1874 revision were inadvertent, and . . . each section was intended to have precisely the same scope." *Id.* at 16 (Powell, J., dissenting). However, the majority disagreed and noted that "Congress's attention was specifically directed to this new language":

> Representative Lawrence, in a speech to the House of Representatives that began by observing that the revisers had very often changed the meaning of existing statutes, 2 Cong. Rec. 825 (1874), referred to the civil rights statutes as "possibly [showing] verbal modifications bordering on legislation," *id.* at 827. He went on to read to Congress the original and revised versions. In short, Congress was aware of what it was doing, and the legislative history does not demonstrate that the plain language was not intended.

*Id.* at 7–8. The majority further noted that Congress had "remained quiet in the face of [the Supreme Court's] many pronouncements on the scope of § 1983." *Id.* at 8.

Ultimately, there is no occasion for this Court to examine what Congress intended 150 years ago because the doctrines of absolute and qualified immunity are unequivocally established by binding Supreme Court and Fifth Circuit precedent. *See, e.g.*, *Otkins v. Gilboy*, No. 21-cv-1275, 2024 WL 1013916, at *2 (E.D. La. Mar. 8, 2024) ("This Court cannot ignore the firmly established law of the land in favor of amicus briefs, scholarly articles, and concurring and dissenting opinions."); *Asante-Chioke v. Dowdle*, No. 22-cv-4587, 2024 WL 2863379, at *4 (E.D. La. June 6, 2024) ("[N]either the Fifth Circuit and the Supreme Court have overturned decades of qualified immunity jurisprudence on the basis that Plaintiff requests, and therefore this Court must also refrain from doing so as well."); *Erie v. Hunter*, 675 F. Supp. 3d 647, 652 n.2 (M.D. La. 2023) ("It is far above this Court's pay grade to cast aside the qualified immunity doctrine here, particularly

absent any argument from the parties. Indeed, at this point, only the Supreme Court can definitely 'overrule' the defense.").

## CONCLUSION

For the reasons set forth above and in other briefing on Mr. Wolff's and OPDA's motions to dismiss (Doc. Nos. 24, 30, and 31), the claims against David Wolff should be dismissed with prejudice.

                                                          Respectfully submitted,

                                                          */s/ Matthew J. Paul*
                                                          W. Raley Alford, III, 27354
                                                          Matthew J. Paul, 37004
                                                          STANLEY REUTER THORNTON ALFORD LLC
                                                          909 Poydras Street, Suite 2500
                                                          New Orleans, Louisiana 70112
                                                          Telephone: (504) 523-1580
                                                          Facsimile:  (504) 524-0069
                                                          wra@stanleyreuter.com
                                                          mjp@stanleyreuter.com

                                                          *Counsel for David Wolff*