# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CEDRIC DENT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3104** |
| **JASON R. WILLIAMS, ET AL.** | **SECTION "O"** |

## <u>ORDER AND REASONS</u>

Before the Court is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Defendant Orleans Parish District Attorney Jason R. Williams to dismiss Plaintiff Cedric Dent's 42 U.S.C. § 1983 claim. Dent alleges he was wrongfully convicted and imprisoned because the Office of the Orleans Parish District Attorney ("OPDA") suppressed material evidence favorable to him. Williams contends Dent fails to state a Section 1983 claim because the acts of the OPDA attorneys who prosecuted Dent are attributable to the State of Louisiana—not the OPDA. Williams's argument rests on the reasoning of a 2022 en banc Fifth Circuit opinion holding that certain Dallas County judges act for the State of Texas—not for Dallas County—when setting bail schedules. *See Daves v. Dall. Cnty.*, 22 F.4th 522, 534–40 (5th Cir. 2022) (en banc).

---

[1] ECF No. 11.

The Court is not the first to consider Williams's argument; five sections of the Court have rejected it.[2] The Court agrees with its sister sections: *Burge v. Parish of St. Tammany*'s holding—a Louisiana district attorney acts for her office when making *Brady* decisions—requires the Court to reject Williams's argument. 187 F.3d 452, 470 (5th Cir. 1999). *Burge* is binding. The Court is "not free" to avoid it on the ground that *Daves* "abrogated" or "implicitly overruled" it. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021). And even if *Daves* worked the intervening change in law that Williams says it did, that conclusion is the Fifth Circuit's to draw. *See id.* Accordingly, for these reasons and those that follow, Williams's motion is **DENIED**.

## I.    BACKGROUND

This civil-rights case arises from Plaintiff Cedric Dent's claim that he was wrongfully convicted of the second-degree murder of Anthony Melton and imprisoned for almost 25 years because the OPDA violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and suppressed material evidence favorable to him.[3]

According to the complaint, the OPDA prosecuted Dent for Melton's second-degree murder.[4] Dent was arrested in 1997 and convicted by a non-unanimous jury in 1999 after a less-than-two-hour trial.[5] Dent alleges that "[t]he State's only evidence at trial was the testimony of Jerry Hamilton, the decedent's 18-year-old cousin who

---

[2] *See Floyd v. Dillmann*, 659 F. Supp. 3d 724, 728–29 (E.D. La. 2023) (Milazzo, J.); *Williams v. Williams*, No. 23-CV-1922, 2023 WL 6160990, at *2–4 (E.D. La. Sept. 21, 2023) (Africk, J.); *Jones v. Williams*, No. 22-CV-5097,  2023 WL 3211865, at *3–4 (E.D. La. May 2, 2023) (Ashe, J.); *Reeder v. Williams*, No. 22-CV-4614, 2023 WL 2771481, at *2–3 (E.D. La. Apr. 4, 2023) (Zainey, J.); *Smith v. Williams*, No. 22-CV-1550, 2023 WL 2263841, at *6–10 (E.D. La. Feb. 28, 2023) (Brown, C.J.).

[3] *See generally* ECF No. 1.

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶¶ 2, 6.

2

viewed the perpetrator for a few moments in a dark lot."[6] Dent was sentenced to life imprisonment without the possibility of parole.[7]

Dent alleges that he was convicted of Melton's second-degree murder because the OPDA suppressed material evidence favorable to him.[8] According to Dent, the OPDA "suppressed exculpatory information documenting Mr. Hamilton's different accounts of what he saw the night of the crime and the significant inconsistencies in his narrative."[9] Dent alleges that the OPDA "also suppressed at least three other key documents—Detective Michael Buras's handwritten notes, his Major Offense Report Form, and an unredacted version of his incident report . . . ."[10] According to Dent, these documents "contained several pieces of exculpatory information, including how Mr. Dent became a subject of NOPD's investigation, a potential death threat in a message left on Mr. Melton's pager several hours before he was shot, a message from Mr. Hamilton left on the pager less than thirty minutes before the shooting, and the existence of a second witness named 'Rodney,' who provided a description of the perpetrator that did not match Mr. Dent's appearance at the time of arrest."[11]

After some of these "key documents" were disclosed to Dent in November 2021, the OPDA moved to vacate Dent's conviction.[12] The Orleans Parish Criminal District Court obliged: It vacated Dent's conviction in August 2022.[13]

---

[6] *Id.* at ¶ 7.
[7] *Id.* at ¶ 11.
[8] *Id.*
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶10.
[11] *Id.*
[12] *Id.* at ¶¶ 14, 15.
[13] *Id.* at ¶ 16.

This Section 1983 suit followed. In it, Dent alleges that his conviction was "a direct and proximate result" of the OPDA's "longstanding policy or custom of violating the constitutional rights of defendants it prosecuted by not disclosing information favorable to their defense."[14] Dent alleges that the OPDA had an unconstitutional written *Brady* policy[15] and an unconstitutional "unwritten policy or custom of not disclosing favorable information to defendants charged with crimes."[16]

Dent sues Williams in his official capacity as the OPDA's policymaker.[17] Pointing to the OPDA's allegedly unconstitutional *Brady* policies, Dent alleges that Williams is liable under Section 1983 in his official capacity as the Orleans Parish District Attorney because the OPDA violated Dent's rights under the Fifth and Fourteenth Amendments by withholding information about the Melton murder that was favorable to Dent and material to Dent's guilt or innocence.[18]

Now, Williams moves to dismiss Dent's complaint for failure to state a claim under Rule 12(b)(6).[19] He principally contends that the Fifth Circuit's 2022 en banc opinion in *Daves* requires the Court to hold that the OPDA attorneys who prosecuted Dent were acting for the State of Louisiana rather than the OPDA.[20] Dent opposes.[21]

---

[14] *Id.* at ¶17.
[15] *See, e.g.*, *id.* at ¶¶168–172.
[16] *Id.* at ¶ 173.
[17] *Id.* at ¶23.
[18] *Id.* at ¶ 202.
[19] ECF No. 11.
[20] *Id.* at 1–2.
[21] ECF No. 13.

## II.   LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint that does not meet Rule 8(a)(2)'s pleading standard should be dismissed for failing to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Ultimately, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although '[courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

5

## III.  ANALYSIS

Williams contends that Dent fails to state a Section 1983 claim against him because, under *Daves*, the acts of the OPDA attorneys who prosecuted Dent are attributable to the State of Louisiana—not the OPDA.[22] Williams reasons that *Daves* "established a new legal standard" for determining the level of government for which a putative policymaker acts for purposes of Section 1983 liability.[23] And Williams says that the Section 1983 level-of-government analysis that *Daves* requires is "different from, and irreconcilable with, *Burge*."[24] But Dent reads *Daves* and *Burge* differently. He rejoins that *Burge* forecloses Williams's attributable-to-the-state argument, that *Burge* survives *Daves*, and that *Burge* is correct in any event.[25] Dent adds that five sections of this Court have already rejected Williams's *Daves*-based argument and held that *Burge* controls the question presented here.[26]

Williams's motion to dismiss turns on the interplay between *Daves* and *Burge*. So, the Court first (A) provides background on *Burge*, *Daves*, and the Section 1983 and local-government-entity-liability principles driving those decisions. The Court then (B) considers whether *Burge* continues to bind the Court post-*Daves*. Because the Court concludes that it does, the Court denies Williams's Rule 12(b)(6) motion.

---

[22] ECF No. 11-1 at 2–3.
[23] *Id.* at 2.
[24] *Id.* at 32.
[25] ECF No. 13 at 1–24.
[26] *Id.* at 3 & n.1.

A.   **_Burge_, _Daves_, and Local-Government-Entity Liability**

Section 1983 permits Dent to sue "[e]very person" who violates his federal rights "under color of" state law. 42 U.S.C. § 1983. "States and their officials are not 'persons' under Section 1983." _Daves_, 22 F.4th at 532 (citing _Will v. Mich. Dep't of State Police_, 491 U.S. 58, 71 (1989)). But municipalities and "other local government units"—including district attorney's offices like the OPDA—are "persons" suable under Section 1983. _Monell v. Dep't of Soc. Servs._, 436 U.S. 658, 690 & n.54 (1978); _see Burge_, 187 F.3d at 470 (observing that "the district attorney's office resembles other local government entities"). Dent may sue under Section 1983 "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." _Jett v. Dall. Indep. Sch. Dist._, 491 U.S. 701, 737 (1989). The "local governmental actor" here is the OPDA, and the "action alleged to have caused the particular constitutional . . . violation" is the OPDA's alleged adoption of unconstitutional written and unwritten _Brady_ policies. _See id._

Dent's "official-capacity suit against a local officer, like [Williams], is a suit against the local government itself"—here, the OPDA. _Pipkins v. Stewart_, 105 F.4th 358, 360 (5th Cir. 2024) (per curiam) (citing _Monell_, 436 U.S. at 658). Holding a local government entity like the OPDA liable "require[s] three elements: '(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom.'" _Arnone v. Dall. Cnty._, 29 F.4th 262, 265–66 (5th Cir. 2022) (quoting _Alvarez v. City of Brownsville_, 904 F.3d 382, 389 (5th Cir.

2018) (en banc)). Here, that means the OPDA "is not liable for just any official policy that violated [Dent's] constitutional rights." *Id.* at 266. The OPDA instead "can be held liable only for those [official policies] decided or acquiesced to by [an] [OPDA] policymaker." *Id.* (citing *Jett*, 491 U.S. at 737). Williams contends that the OPDA is not liable for the allegedly unconstitutional written and unwritten *Brady* policies underlying Dent's Section 1983 claim because those alleged policies "were done and made on behalf of" the State of Louisiana—not the OPDA.[27] Put differently, Williams submits that those alleged policies were "decided or acquiesced to by" a policymaker for the State of Louisiana rather than a policymaker for the OPDA.[28] *Id.*

"A policymaker is an 'official[ ] whose decisions represent the official policy of the local governmental unit.'" *Id.* (quoting *Jett*, 491 U.S. at 737). But a "dual-hat problem" arises if the putative policymaker "sometimes acts for" one governmental entity, "and sometimes acts for another governmental entity, like the state." *Id.* When that "dual-hat problem" is presented, courts "have to weigh state law and the policymaker's complained-of actions" to "decide which entity is to blame." *Id.* Citing that "dual-hat problem," Williams submits that the State—not the OPDA—is the "entity . . . to blame" for the allegedly unconstitutional *Brady* policies here. *See id.*

"The controlling Supreme Court decision on [that] dual-hat problem is *McMillian v. Monroe County*[, 520 U.S. 781 (1997)]." *Id. McMillian* held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *McMillian*, 520 U.S. at 793. In so holding, the

---

[27] ECF No. 11-1 at 11 (boldface deleted).
[28] *Id.*

Supreme Court "explained that courts do not categorize officials 'in some categorical all or nothing manner.'" *Arnone*, 29 F.4th at 266 (quoting *McMillian*, 520 U.S. at 785). "Rather, courts must 'ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue.'" *Id.* (quoting *McMillian*, 520 U.S. at 785). And "[t]hat inquiry turns on the official's 'actual function' under 'relevant *state* law.'" *Id.* (quoting *McMillian*, 520 U.S. at 786).

Two years after *McMillian* issued, a Fifth Circuit panel in *Burge* applied *McMillian*'s dual-hat analysis to a suit just like this one—an official-capacity Section 1983 suit against a Louisiana district attorney for alleged *Brady* violations. *See* 187 F.3d at 468–70. *Burge* held that the Louisiana district attorney's office—not the State of Louisiana—is the "entity . . . liable under § 1983 in an 'official capacity' suit for a district attorney's policies that cause constitutional torts related to the failure to disclose material evidence favorable to criminal defendants." *Id.* at 469. In no uncertain terms, *Burge* "conclude[d] that, in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the the plaintiff imposes liability on the district attorney's office as an independent local entity." *Id.* at 470. *Burge*'s level-of-government analysis rested on *McMillian* and "Louisiana constitutional and statutory law . . . ." *Id.* at 468–70.

The en banc Fifth Circuit's 2022 *Daves* opinion "clarifies how to attribute a policymaker's actions under *McMillian*." *Arnone*, 29 F.4th at 267. The *Daves* plaintiffs sued Dallas County, some Dallas County district and county judges, and others under

9

Section 1983, aiming to enjoin enforcement of Dallas County's bail system on the ground that it "subjected . . . indigent arrestees . . . to an unconstitutional system of wealth-based detention." 22 F.4th at 527–29 (internal quotation marks omitted).

Surveying Texas law, the en banc Fifth Circuit held that the Dallas County district and county judges acted as Texas policymakers—not Dallas County policymakers—when setting the challenged bail schedules. *See id.* at 540–41. The en banc court explained that, under *McMillian*, courts "examine function, not funding, when deciding whether an official is acting for the state or local government in a case brought pursuant to Section 1983." *Id.* at 533. "The focus" of that examination, the court continued, is "the specific relevant function, *i.e.*, the act that is being challenged in the litigation." *Id.* The en banc court "also held that *McMillian*'s inquiry is distinct from what [the Fifth Circuit] use[s] to decide whether an official is a state actor for Eleventh Amendment purposes." *Arnone*, 29 F.4th at 267 (citing *Daves*, 22 F.4th at 534, 533–34). But the en banc court did not mention *Burge* or suggest that it or other Fifth Circuit policymaker precedents applying *McMillian* would need to be revisited.

## B.    *Burge*'s Bindingness Post-*Daves*

The parties dispute *Burge*'s impact on Williams's motion. Dent contends that *Burge* binds the Court and forecloses Williams's attributable-to-the state argument,[29] as five other sections of this Court have held.[30] But Williams submits that *Burge* "does

---

[29] *See, e.g.*, ECF No. 13 at 3.

[30] *See Floyd*, 659 F. Supp. 3d at 728 (rejecting Williams's argument because "the Fifth Circuit [in *Burge*] has already foreclosed a holding that a district attorney is acting for the State in creating *Brady* policies under Louisiana law"); *Williams*, 2023 WL 6160990, at *4 (rejecting Williams's argument because "the reasoning of *Burge* has not been undermined" and *Burge* "remains binding precedent"); *Jones*, 2023 WL 3211865, at *3 ("appl[ying] the Fifth Circuit's binding precedent in *Burge*

not squarely answer the question presented."[31] Williams contends that *Burge*'s "reasoning has been undermined by *Daves* and cannot stand,"[32] and that *Burge* "has been implicitly overruled in relevant part by *Daves*."[33] Williams counsels that the Court "should not . . . follow[ ]" the opinions of five other sections of this Court rejecting the same *Daves*-based arguments because he says those opinions "are unpersuasive."[34] But Williams does not dispute that the Court must deny his motion if *Burge* does two things: (1) answers the question presented and (2) continues to bind the Court post-*Daves*. *Burge* does both. So, the Court denies Williams's motion.

*Burge* answers the question presented. That question is whether a Louisiana district attorney's office is the entity liable in an official-capacity Section 1983 suit against a Louisiana district attorney for constitutional violations caused by the *Brady* policies of her office. *Burge* says "yes": "[I]n a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." 187 F.3d at 470; *accord, e.g.*, *Williams*, 2023 WL 6160990, at *2 (concluding that *Burge* "directly addressed whether Louisiana [d]istrict [a]ttorney's offices act as state or local entities"); *Jones*, 2023 WL 3211865, at *3

---

to conclude that Williams's motion to dismiss should be denied"); *Reeder*, 2023 WL 2771481, at *3 (rejecting Williams's argument because "*Burge* does control and *Burge* remains good and binding law following *Daves*"); *Smith*, 2023 WL 2263841, at *7 (rejecting Williams's argument because, among other reasons, *Burge* "clearly answers the issue presented in [Williams's] motion").

[31] ECF No. 11-1 at 18 (boldface deleted).
[32] *Id.* at 19.
[33] ECF No. 20 at 4 (boldface deleted).
[34] ECF No. 11-1 at 22 (boldface deleted).

(concluding that *Burge* answered "the precise question presented" in Williams's materially identical motion); *Smith*, 2023 WL 2263841, at *7 (concluding that *Burge* "clearly answers the issue presented" in another materially identical motion).

*Burge* binds the Court. "[A] legally indistinguishable decision of [the Fifth Circuit] must be followed by other panels of [the Fifth Circuit] and district courts unless overruled en banc or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992). Williams does not contend the Supreme Court overruled *Burge*; he says the en banc Fifth Circuit "implicitly overruled"[35] it in *Daves*. His argument fails for two independent reasons.

First, the Court may not declare *Burge* "implicitly overruled" by *Daves*. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th at 789. A district court may not avoid applying an otherwise binding Fifth Circuit precedent based on the district court's first-instance conclusion that an intervening change in Fifth Circuit law has occurred—even if one has in fact occurred. *See id.* (concluding a district court correctly considered itself bound by a Fifth Circuit precedent, despite an intervening change in law that implicitly overruled the precedent). Whether *Burge* survives *Daves* is for the Fifth Circuit to decide in the first instance. *See id.* Until then, the Court is "not free" to declare *Burge* "overturn[ed]." *Id.*; *accord Jones*, 2023 WL 3211865, at *3.[36]

---

[35] ECF No. 20 at 4 (boldface deleted).

[36] To be sure, Williams "disagrees that a district court lacks authority to follow the methodology required under more recent *en banc* appellate precedent and reach the result logically required by that methodology, even if that result cannot be reconciled with earlier circuit precedent." ECF No. 11-1 at 31. But Williams does not engage with *In re Bonvillian Marine Serv., Inc.*, or cite any authority empowering a district court to declare a Fifth Circuit precedent implicitly overruled based on an intervening change in Fifth Circuit law that the Fifth Circuit itself has not recognized. *See id.*

12

Second, even if the Court were free to decide if *Burge* survives *Daves*, the Court would hold that it does. "An '*en banc* decision cannot overturn a binding published panel decision unless it does so clearly.'" *United States v. Lamartiniere*, 100 F.4th 625, 640 (5th Cir. 2024) (quoting *United States v. Vega*, 960 F.3d 669, 675 (5th Cir. 2020)). *Daves* did not "clearly" overrule *Burge* for reasons already given by five other sections[37] of this Court.[38] Among other reasons, (1) *Daves* does not mention *Burge* or otherwise state that pre-*Daves* dual-hat cases, as a class, must be revisited to conform to the dual-hat analysis in *Daves*; (2) *Daves* analyzes the role of state-court judges under Texas law, whereas *Burge* analyzes the role of Louisiana district attorneys under Louisiana law;[39] (3) *Daves* and *Burge* rely on *McMillian* and conduct essentially the same inquiry under *McMillian*;[40] and (4) the Fifth Circuit has applied *Burge* post-*Daves* to a Section 1983 suit against a Louisiana district attorney.[41]

---

[37] Williams faults some of the opinions of other sections of this Court for failing to "defend the correctness of the *Burge* decision," ECF No. 11-1 at 22; for failing to "explain how the same result [reached in *Burge*] could be reached considering the factors relied on in *Daves*," *id.* at 22–23; and for "not discuss[ing]" or inadequately discussing "the factors that were actually considered and given weight in *McMillian*, *Daves*, or *Burge*," *id.* at 32. Because those opinions correctly concluded that *Burge* controls and remains binding, however, there was no reason to do what Williams suggests. *Burge* would be no less binding even if it were "flawed." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008); *see also, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 604 F. Supp. 3d 463, 493 (W.D. Tex. 2022) (three-judge district court) (principles underlying the rule of orderliness governing the treatment of published Fifth Circuit panel opinions by other Fifth Circuit panels apply by implication and forbid district courts from "overturn[ing] decisions of prior panels").

[38] *See Floyd*, 659 F. Supp. 3d at 728–29; *Williams*, 2023 WL 6160990, at *2–4; *Jones*, 2023 WL 3211865, at *3–4; *Reeder*, 2023 WL 2771481, at *2–3; *Smith*, 2023 WL 2263841, at *6–10.

[39] *See Jones*, 2023 WL 3211865, at *3; *Smith*, 2023 WL 2263841, at *7.

[40] *See Williams*, 2023 WL 6160990, at *3.

[41] *See Smith*, 2023 WL 2263841, at *3 & n.115 (citing *Kimble v. Jefferson Par. Sheriff's Off.*, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (per curiam)).

\*     \*     \*

The Court must apply *Burge* because it is a published Fifth Circuit precedent that answers the question raised in Williams's motion, and it continues to bind this Court post-*Daves*. The Court may not arrogate to itself the authority to decide in the first instance that *Daves* implicitly overrules *Burge*. It is for the Fifth Circuit to first decide if *Burge* survives *Daves*. But even if the Court could properly make that decision before the Fifth Circuit does so, the Court would hold that *Burge* survives *Daves* because *Daves* does not clearly overrule *Burge*. Finally, *Burge* compels the Court to conclude that the *Brady* policies underlying Dent's Section 1983 claim are attributable to the OPDA "as an independent local entity." 187 F.3d at 470. Because those policies are attributable to the OPDA, Dent's suit does *not* "seek to hold the [OPDA] liable for alleged actions of Orleans Parish prosecutors that are attributable to the State of Louisiana,"[42] and Williams's Rule 12(b)(6) motion must be denied.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Williams's Federal Rule of Civil Procedure 12(b)(6) motion[43] to dismiss Dent's complaint is **DENIED**.

New Orleans, Louisiana, this 13th day of September, 2024.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[42] ECF No. 11-1 at 3.
[43] ECF No. 11.