UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICK W. BROWN                                    CIVIL ACTION

VERSUS                                                    NO. 24-423

JASON R. WILLIAMS, ET AL.                    SECTION "R" (4)


## ORDER AND REASONS

Before the Court are the opposed[1] Rule 12(b)(6) motions to dismiss of defendants David Wolff[2] and Jason Williams,[3] in his official capacity as Orleans Parish District Attorney.  For the following reasons, the Court grants their motions.


### I.    BACKGROUND

This case arises out of the now vacated conviction of Patrick Brown by the Orleans Parish District Attorney ("OPDA") for the aggravated rape of a minor.  Brown alleges that assistant district attorney David Wolff sent a letter and a document purporting to be subpoena to the six-year-old victim during the investigation, instructing her to appear in his office for an interview.[4]

---

[1]    R. Docs. 29 & 33.
[2]    R. Doc. 31.
[3]    R. Doc. 24.
[4]    R. Doc. 20 ¶¶ 200-201.

Brown does not allege whether the victim or her family members complied with Wolff's letter, or to the content of any meeting between them.

At Brown's trial roughly nine months after Wolff sent the letter, prosecutors repeatedly tried to call the victim as a witness.[5] The victim was unable to respond to their substantive questioning and began crying and bleeding from her nose until she left the courtroom.[6] The jury convicted Brown of aggravated rape and sentenced him to life imprisonment,[7] which the Louisiana Court of Appeal for the Fourth Circuit later affirmed.[8] *See State v. Brown*, 746 So.2d 643 (La. App. 4 Cir. 1999). In 2022, Brown filed an application for post-conviction relief,[9] and, on May 8, 2023, the Orleans Parish Criminal District Court vacated his conviction with the support of the OPDA, finding that he had proven his factual innocence by clear and convincing evidence.[10]

Brown now sues Wolff and Williams, in his official capacity as OPDA, and contends that confecting and sending the fake subpoena constituted a "fraudulent and coercive process" that intimidated the victim and prevented

---

[5]    *Id.* ¶¶ 147-153.
[6]    *Id.*
[7]    *Id.* ¶ 164.
[8]    *Id.* ¶¶ 167, 230.
[9]    *Id.* ¶ 237.
[10]   *Id.* ¶ 242.

her from testifying truthfully on the stand that Brown was not her abuser.[11]

Brown alleges that at the time, the OPDA implemented or tolerated a pattern

and practice of sending fake subpoenas to pressure victims and witnesses

into cooperating with prosecutors.[12]  Brown asserts that in doing so, Wolff is

liable for violating his constitutional rights under 42 U.S.C. § 1983[13] and the

Louisiana Constitution,[14] as well as for the state law torts of negligence[15] and

abuse of process.[16]   Brown additionally asserts that the OPDA, through

Williams in his official capacity, is liable for constitutional violations caused

by its fake subpoena policies and practices, *see Monell v. Dep't of Soc. Servs.

of City of New York*, 436 U.S. 658 (1978),[17] and vicariously liable for Wolff's

negligence and abuse of process.[18]

On June 11, 2024, Williams moved to dismiss Brown's *Monell* and

vicarious liability claims related to Wolff's conduct.[19]  Williams argues that

Brown fails to state a claim for relief because the fake subpoena could not

---

[11]     *Id.* ¶ 279.
[12]     *Id.* ¶ 266.
[13]     *Id.* ¶ 268.
[14]     *Id.* ¶ 275.
[15]     *Id.* ¶ 278.
[16]     *Id.* ¶ 284.
[17]     *Id.* ¶¶ 266-267.
[18]     *Id.* ¶ 288.
[19]     R. Doc. 24.

have caused Brown's conviction.[20]  Wolff adopts Williams' motion to dismiss in its entirety and additionally asserts that he is entitled to absolute immunity for all of Brown's claims, and qualified immunity for Brown's constitutional claims.[21]  Brown opposes the motion to dismiss.[22]  The Court considers the parties' arguments below.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

---

[20]    *See id.*
[21]    R. Doc. 31-1 at 1.
[22]    R. Doc. 33.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678. It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *See id.* (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand*, 565 F.3d at 257 (citations omitted). The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "The district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v.*

5

*Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.    DISCUSSION

The Court first addresses whether Wolff is entitled to absolute immunity from all of Brown's claims and qualified immunity from Brown's claims under Section 1983 and the Louisiana Constitution.  The Court then evaluates Brown's remaining claims against Wolff and Williams.

### A.  Absolute Immunity

#### 1.  Section 1983

Wolff is not entitled to absolute immunity for Brown's Section 1983 claim.[23]  Prosecutors are absolutely immune in their individual capacities from Section 1983 liability for conduct "intimately associated with the judicial phase of the criminal process."  *Van der Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (internal quotation marks omitted)).  But absolute immunity does not protect prosecutors "engaged in . . . investigative or administrative tasks."  *Van der Kamp*, 555 U.S. at 342 (quoting *Imbler*, 424 U.S. at 431 n. 33).

---

[23]    R. Doc. 31-1 at 1-4.

To determine whether a prosecutor is entitled to absolute immunity, courts distinguish between (1) actions taken "in preparing for the initiation of judicial proceedings or for trial, and [that] occur in the course of [the prosecutor's role as an advocate for the State," and (2) "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Singleton v. Cannizzaro*, 956 F.3d 773, 779-80 (5th Cir. 2020) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  This functional test "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Buckley*, 509 U.S. at 271.

 In *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020), the Fifth Circuit affirmed the denial of absolute immunity for prosecutors' use of fraudulent subpoenas to pressure crime victims to meet them outside of court. *See also Lacey v. Maricopa Cnty*, 693 F.3d 896, 913-14 (9th Cir. 2012) (holding that a prosecutor who had improperly issued fake subpoenas was not entitled to absolute immunity for his conduct).  The Fifth Circuit found that prosecutors had used the fake subpoenas in an investigative capacity to privately "gather information from crime victims and witnesses outside of court," distinguishing their use from communications intended to influence

7

or elicit specific witness testimony at trial. *Id.* at 783; *see Imbler*, 424 U.S. at 430 (holding that prosecutor's effort to "control the presentation of his witness' testimony" during a courtroom recess was "fairly within his function as an advocate").

Brown alleges similarly investigative conduct here. Like the prosecutors in *Singleton*, Wolff allegedly sent a letter and document purporting to be a subpoena to the victim before trial instructing her to meet with him privately outside of court.[24] *See Singleton*, 956 F.3d at 782-83. The letter refers to the document as a "subpoena requesting [the victim] to appear in [Wolff's] office" and states that the failure appear on the scheduled date without contacting Wolff "will result in this case being dismissed" by the OPDA.[25] The attached document additionally states that the victim is "HEREBY NOTIFIED to appear before the District Attorney in the Criminal

---

[24] R. Doc. 20 ¶¶ 130, 200, 201 & 207.

[25] R. Doc. 29-1. Although "a district court must limit itself to the contents of the pleadings, including attachments thereto, . . . [d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499-500 (5th Cir. 2000) (citation omitted). The Court finds that Brown refers extensively to the letter and attached document in his amended complaint, and they are central to his claim.

District Court for the Parish of Orleans . . . to testify to the truth according to your knowledge in such matters as may be required of you."[26]

Wolff argues that this communication with the victim related to her testimony in court and therefore was a prosecutorial function.[27] But the Fifth Circuit squarely rejected this "broad interpretation of absolute immunity" in *Singleton*. 956 F.3d at 782 (rejecting defendants' argument that "creating and issuing the fake subpoenas" related to "preparing evidence and testimony for trial" and therefore was "prosecutorial"); *see also Buckley*, 509 U.S. at 206 (declining to extend immunity to conduct merely because it might later "be retrospectively described as 'preparation'" for a judicial proceeding). Moreover, the letter and document were allegedly sent nine months before trial, and neither discusses the victim's anticipated testimony. Indeed, the letter threatens to dismiss the case if the recipient fails to comply with its directive, indicating that it was issued during a preliminary stage of investigation. The Court therefore finds that Wolff is not entitled to absolute immunity for Brown's Section 1983 claim.

---

[26]    *Id.*
[27]    R. Doc. 31-1 at 2-3.

### 2. *State Law Claims*

For the same reasons, Wolff is not absolutely immune for Brown's state law claims. In *Knapper v. Connick,* 681 So. 2d 944 (La. 1996), the Louisiana Supreme Court held that absolute immunity protected prosecutors from Louisiana state law claims. *Id.* at 950; *see also Jameson v. Montgomery*, 366 So. 3d 1210 (La. 2023) (holding that absolute immunity barred various Louisiana tort and constitutional claims). Louisiana courts apply the same functional analysis employed by federal courts to determine whether a prosecutor is entitled to absolute immunity for their misconduct. *See Knapper*, 681 So. 2d at 950 (adopting the same "functional analysis of the role a prosecutor is fulfilling when the alleged misconduct occurs" articulated in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)). Because Wolff's alleged conduct was "investigatory" and did not have a "functional tie to the judicial process," *id.*, absolute immunity does not shield Wolff from Brown's state law claims.

### A. Qualified Immunity

### 1. *Section 1983*

Wolff is entitled to qualified immunity for Brown's claims under Section 1983. Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of law. 42 U.S.C. § 1983; *see also*

10

*Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under Section 1983, a plaintiff must (1) allege a violation of the Constitution or of federal law, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215 (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

A state official whose "conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under section 1983 by the doctrine of qualified immunity," unless "all reasonable officials" would have realized at the time that "it was proscribed by the federal law on which the suit is founded." *Dudley v. Angel*, 209 F.3d 460, 462 (2000) (citing *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)); *see also Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("The doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citation omitted)).

Brown devotes the bulk of his opposition to attacking the doctrine of qualified immunity, contending that it is unsupported by the statutory text

of Section 1983 and therefore should not be available as a defense here.[28]
This Court does not have the authority to overrule the qualified immunity
doctrine.  In *Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024), the Fifth
Circuit rejected a similar argument as "foreclosed because 'only the Supreme
Court can definitively grapple with § 1983's enacted text and decide whether
it means what it says—and what, if anything, that means for § 1983 immunity
jurisprudence." *Id.* at 845 (citation and alterations omitted).  The Court
similarly rejects Brown's argument that the doctrine is not authorized under
the text of Section 1983.

Qualified immunity "provides ample protection to all but the plainly
incompetent or those who knowingly violate the law." *Estate of Davis ex rel.
McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)
(internal citation omitted).  A plaintiff who seeks to overcome qualified
immunity must show "(1) that the official violated a [federal] statutory or
constitutional right, and (2) that the right was 'clearly established' at the time
of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638
(5th Cir. 2013) (internal citation omitted).  "To be 'clearly established' for the
purposes of qualified immunity, the contours of the right must be sufficiently
clear that a reasonable official would understand that what he is doing

---

[28]    R. Doc. 33 at 7-14.

violates that right." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citation omitted). There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

When a defendant invokes qualified immunity in the context of a motion to dismiss, the Court looks to defendant's conduct as alleged in the complaint. *Behrens v Pelletier*, 516 U.S. 299, 309 (1996). The plaintiff bears the burden of demonstrating the inapplicability of the defense. *Club Retro, L.L.C.*, 568 F.3d at 194. It is within the Court's discretion to decide which prong of the qualified immunity test to address first. *Id.* at 638 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Brown fails to meet his burden for either prong.

First, Brown fails to cite any precedent existing before 1994 demonstrating that sending a fake subpoena to a victim or witness violated a clearly established constitutional or federal statutory right of the accused. Nor has the Court found such precedent. *See Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 415-16 (E.D. La. 2019) (holding that no clearly established law proscribed prosecutors from sending fake subpoenas to victims witnesses between 2015 and 2018), *aff'd in part, appeal dismissed in part*, 956 F.3d 773 (5th Cir. 2020). Brown contends that Wolff violated

clearly established state procedures for obtaining a subpoena.[29]  *See* La. Code Crim. P. art. 66.  But Section 1983 does not provide relief for violations of state procedural rules.  *See Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a [state] statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.").

Second, Brown fails to allege that Wolff violated a federal statutory or constitutional right at all.  Indeed, Brown's complaint does not specify which constitutional right Wolff allegedly violated by sending the victim a fake subpoena.  Although "a complaint need not specify legal theories," a "defendant is also entitled to know the claims against him."  *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020).  Instead, Brown relies on formulaic and conclusory assertions about the "fraudulent and coercive"[30] and "conscience-shocking and due-process-violating"[31] nature of the use of the fake subpoena to vaguely suggest the basis for a Fourteenth Amendment substantive due process claim.  *See Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998) (requiring a plaintiff who asserts a Fourteenth Amendment

---

[29]    R. Doc. 33 at 6-7.
[30]    R. Doc. 20 ¶ 208.
[31]    R. Doc. 20 ¶ 268.

substantive-due-process claim to show that defendant's actions "amounted to an abuse of official power that shocks the conscience").

Nor can the Court make out a plausible constitutional claim from Brown's factual allegations. Brown fails to allege a factual basis demonstrating how the use of the fake subpoena contributed to his conviction or otherwise impacted his rights as a criminal defendant. The Fifth Circuit has held that coercive procedures can violate a criminal defendant's right to due process when they induce a witness or victim into making a false identification. *See, e.g.*, *Geter v. Fortenberry*, 882 F.2d 167, 170 (5th Cir. 1989) (recognizing a valid Section 1983 claim where police insisted witnesses "pick an individual from photo lineups, prodding the witnesses to select another picture when they had chose incorrectly, and becoming hostile . . . when a witness refused to cooperate."). But Brown alleges only that Wolff used a fake subpoena to try to meet with the victim,[32] not to induce her to falsely identify Brown at trial.

Even if the use of the fake subpoena were "fraudulent and coercive,"[33] Brown's assertion that the fake subpoena "helped prevent [the victim] from testifying truthfully that Brown did not rape her"[34] is wholly conclusory.

---

[32]    R. Doc. 20 ¶¶ 200-208.
[33]    R. Doc. 20 ¶ 208.
[34]    *Id.* ¶ 279.

First, the OPDA, not Brown, called the victim and attempted to elicit her testimony three times at his trial.[35]  The suggestion that Wolff and the OPDA sought to thwart her truthful testimony through sending her a fake subpoena therefore makes no sense.  Indeed, Wolff's letter states that the victim's failure to comply with its directive would result in the dismissal of the criminal case against Brown, not further prosecution.[36]  Moreover, and as Brown argues, the Court can reasonably infer that the six-year-old victim had been through "immense trauma" because of the abuse, investigation, and trial.[37]  But precisely because of these significant pressures, the Court cannot reasonably attribute the victim's inability to testify at Brown's trial to her receipt of a document purporting to be a subpoena nine months earlier.[38]  Brown alleges no facts that would connect the fake subpoena to the victim's behavior at trial, much less his ultimate conviction.  *Cf. Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (affirming dismissal of First Amendment retaliation claim where plaintiff "failed to allege a sufficient causal connection" between plaintiff sending a letter to his superiors advocating for a change in policy and his firing nineteen months later).

---

[35]     R. Doc. 20 ¶¶ 145-154.

[36]     R. Doc. 24-1 at 1.

[37]     R. Doc. 29 at 6.

[38]     *See* R. Doc. 24-1.

16

Brown tries to justify his claim by repeatedly citing to the district court's opinion in *Singleton v. Cannizzaro* finding that allegations that prosecutors manufactured subpoenas "sufficiently shock[ed] the conscience" to amount to a substantive due process violation.[39] 372 F.Supp.3d at 415. *Singleton* is readily distinguishable. In *Singleton*, the victims and witnesses brought Section 1983 claims, not a criminal defendant. *Id.* at 403. The OPDA used fake subpoenas to threaten, harass, arrest, and jail these victims and witnesses to ensure their cooperation with prosecutors. The document at issue in *Singleton* made these threats explicit, warning victims and witnesses that "A FINE AND IMPRISONMENT MAY BE IMPOSED FOR FAILURE TO OBEY THIS NOTICE."[40] Brown did not receive a fake subpoena, nor was he subject to a similar pressure campaign and therefore did not suffer a similar constitutional violation to the plaintiffs in *Singleton*. Indeed, Wolff's letter to the victim stated only that her failure to comply would result in the dismissal of Brown's criminal case.[41] Brown fails to allege any facts suggesting that the OPDA used the fake subpoena to pressure or coerce the victim into testifying against him. Instead, Brown alleges only that he was the criminal defendant in a case where a fake

---

[39]    *See* R. Doc. 20 ¶¶ 263, 264, 265, 282 & 283.

[40]    *See Singleton v. Cannizzaro*, E.D. La. No. 17-10721, R. Doc. 52 at 83.

[41]    R. Doc. 24-1 at 1.

subpoena had been sent to the victim.[42]    Therefore, Wolff is entitled to qualified immunity for Brown's Section 1983 claim.

### 2. *Louisiana Constitutional Claim*

Wolff is also entitled to qualified immunity for Brown's state constitutional claim.  Louisiana provides a "qualified good faith immunity for state officers" for "any action arising from the state constitution." *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).  Under Louisiana law, if a defendant "shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity." *Id.* at 1094.

Brown fails to specify which state constitutional right Wolff violated, much less one that has been clearly established.  Brown instead alleges merely that "the same conduct that violated Brown's federal constitutional rights also violated the rights that the Louisiana Constitution guarantees to Brown."[43]  "Federal qualified immunity principles may be applied to claims under the Louisiana Constitution 'inasmuch as they parallel entirely the § 1983 allegations.'"  *Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Roberts v. City of Shreveport*,

---

42    *See* R. Doc. 20 ¶ 200.
43    R. Doc. 20 ¶ 275.

397 F.3d 287, 296 (5th Cir. 2005) (alterations omitted)).   As Wolff is protected by qualified immunity for Brown's federal claim, qualified immunity likewise shields Wolff from Brown's identical state constitutional law claim. *See id.* ("[Because plaintiff's] state constitutional claim parallels—and indeed is indistinguishable from—her arguments under the Federal Constitution and § 1983 . . . [t]he foregoing federal qualified immunity analysis is therefore applicable to [plaintiff's] claim under the state constitution as well[.]").

### C.    Remaining Claims

The Court next considers Brown's claims against Williams under Section 1983 and the Louisiana Constitution before turning to Brown's state law claims against Williams and Wolff for negligence and abuse of process.

#### 1. *Section 1983*

Brown fails to state a claim for relief against Williams under 42 U.S.C. § 1983 for the OPDA's fake subpoena policies.  Municipalities may be liable under Section 1983 for constitutional violations caused by their official policies and customs. *Monell*, 436 U.S. at 694.  To successfully state a *Monell* claim for municipal liability under Section 1983, a plaintiff must show that he was deprived of a federally protected right pursuant to (1) an official policy, (2) promulgated by the municipal policymaker, (3) that was the

moving force behind the violation of a constitutional right. *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 307-08 (5th Cir. 2023) (citing *Peterson v City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). To establish the third element, the plaintiff must show either that "the policy itself was unconstitutional" or that it "was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow." *Id.* at 308 (citing *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022)).

Brown asserts that the OPDA promulgated a policy of issuing fake subpoenas and therefore is municipally liable under Section 1983 for Wolff's actions.[44]  But because Brown cannot show that Wolff deprived him of a federally protected right, Brown's *Monell* claim fails before the first step. Brown therefore fails to state a *Monell* claim against Williams under Section 1983 for the OPDA's alleged fake subpoena policies and practices.

## 2. *Louisiana Constitutional Claims*

Brown also fails to state a claim for a Louisiana constitutional violation against Williams for the OPDA's fake subpoena policies and practices. Brown's complaint contains the cursory assertion against "all defendants" that the "same conduct that violated Brown's federal constitutional rights

_____

[44]

also violated the rights the Louisiana Constitution guarantees to Brown."[45]
Such conclusory allegations do not state a plausible claim.

Brown does not identify which Louisiana constitutional rights the
OPDA's fake subpoena policies allegedly violated.  But since Brown asserts
that his federal and state constitutional rights are coextensive, the Court
finds that he fails to allege a state constitutional claim for the same reasons
the Court found there was no federal constitutional claim against Wolff and
Williams.   Brown fails to state a Louisiana constitutional claim against
Williams for the OPDA's fake subpoena policies.

### 3. Negligence

Brown's negligence claims also fail.  Brown alleges that Wolff failed to
take due care and instead was "negligent or grossly negligent" for the same
conduct that allegedly violated Brown's federal constitutional rights,[46] and
that the OPDA is vicariously liable for Wolff's alleged tortious actions as his
employer.[47]

"Under Louisiana jurisprudence, most negligence cases are resolved
by employing a duty/risk analysis, which entails five separate elements: (1)
whether the defendant had a duty to conform his conduct to a specific

---

[45]   *Id.* ¶ 275.
[46]   R. Doc. 20 ¶ 278.
[47]   *Id.* ¶¶ 286, 288.

21

standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was damaged (the damages element)." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006). Louisiana "uses the typical reasonable-person standard to assess an individual's liability for negligence." *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023); La. Civ. Code art. 2315.

Brown fails to satisfy nearly every element. First, Brown does not cite any Louisiana precedent identifying a tort-based duty owed to a criminal defendant in the context of a prosecutor's seeking to meet with victims and witnesses. Instead, he proposes an amorphous duty for prosecutors "not to abuse or exceed their authority to obtain a conviction" based on an amalgam of federal constitutional law, rules of professional conduct, and state criminal procedure.[48]

 Moreover, Brown fails to allege facts that plausibly indicate a breach of even his purported standard. Brown asserts that Wolff exceeded his

---

[48]    R. Doc. 29 at 8.

authority to obtain a conviction by sending the victim a document that referred to itself incorrectly as a subpoena.[49]  He alleges that the document resulted in the victim's failure to testify.[50]  But he offers no facts suggesting that Wolff sent the document to the victim to prevent her from testifying. Indeed, the government called the victim three times to testify three times in its case in chief at trial.[51]  And lastly, as previously discussed,[52] Brown's complaint provides no factual basis indicating that the fake subpoena impacted the victim's behavior at trial, much less caused his wrongful conviction, and thus fails to plausibly allege the conduct caused him injury or he suffered damages as a result of it.  Brown fails to state a claim for negligence against either Wolff or Williams.

### 4. Abuse of Process

Brown has not stated plausible claims for abuse of process.  Brown asserts that Wolff committed an "abuse of process" in sending the victim a fake subpoena and that Williams is vicariously liable for Wolff's alleged actions as his employer.  Both claims fail.

---

[49]    *Id.* at 9.
[50]    R. Doc. 20 ¶¶ 208.
[51]    *Id.* ¶¶ 145, 149 & 153.
[52]    *See, supra* at 14-17.

The "tort of abuse of process involves the misuse of a process whereby a party attempts to obtain some result not proper under law." *No Drama, LLC v. Caluda*, 177 So. 3d 747, 751 (La. App. 5 Cir. 2015) (citing *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291, 295 (La. App. 3 Cir. 1984)). More specifically, "an abuse of process occurs 'when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect.'" *Delcambre v. Mancuso*, 268 So. 3d 325, 331 (La. App. 3 Cir. 2019) (quoting *Hebert v. La. Licensed Prof'l Vocational Rehab. Counselors*, 4 So. 3d 1002, 1009 (La. App. 3 Cir. 2009)).

Louisiana courts recognize an abuse of process claim as a compensable tort under La. Civ. Code art. 2315. *See id.* Article 2315 of the Louisiana Civil Code imposes civil liability only for acts that "cause[] damage to another." In addition, to state a claim for an abuse of process, a plaintiff must allege (1) "the existence of an ulterior purpose," and (2) "a willful act in the use of the process not in the regular prosecution of the proceeding." *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990) (citing *Stark*, 457 So. 2d at 295).

First, because Brown fails to show that the fake subpoena caused him to suffer damages, his abuse of process claims fail.[53]  Moreover, Brown fails to allege that Wolff acted with an "ulterior purpose" or to "obtain some result not proper under the law."[54]    *Duboue*, 909 F.2d at 132.  Brown does not allege any facts indicating that Wolff sent the document to "pin" the crime on Brown, *see Stark*, 457 So. 2d at 295, damage his reputation, *see No Drama LLC*, 177 So. 3d at 752, obstruct a court-ordered ruling, *see Eicke v. Eicke*, 51 So. 2d 1067, 1072 (La. App. 3 Cir. 1987), or seek retribution, *see Delcambre*, 268 So. 3d at 332.  Brown's assertion that the "use of a fake subpoena" was "a coercive measure that helped prevent [the victim] from testifying truthfully" is speculative, conclusory, and implausible in the context here.  As noted, the victim received the document nine months earlier and no facts link the document to her inability to testify.  Brown's

---

53    *See, supra* at 14–17.

54    Notwithstanding the district court's holding in *Singleton* that allegations that prosecutors "flouted the investigative subpoena process" amounted to "an abuse of process," 372 F. Supp. 2d at 424, under Louisiana law, a legally authorized process is apparently necessary for an abuse of process claim, not a mere avoidance of legal process.  *See Delcambre*, 268 So. 2d at 331 ("[A]n abuse  of process occurs when the actor employs legal process in  a manner technically correct, but for a wrongful and malicious purpose[.]" (citation omitted)); *see also Duboue*, 909 F. 2d at 132 ("The tort of abuse of process involves the malicious use of legal process *after* the process has been instituted" (citing *Succession of Cutrer v. Curtis*, 341 So. 2d 1209, 1214 (La. App. 1 Cir. 1976), *writ denied*, 343 So. 2d 201 (1977)).

complaint contains no plausible allegations that Wolff acted with an ulterior purpose or sought to obtain an improper result.  Brown's abuse of process claims are fatally defective.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Wolff's motion to dismiss and Williams's motion to dismiss. The Court ORDERS Brown's claims against Wolff and Brown's claims against Williams, in his official capacity, regarding the use of fake subpoenas DISMISSED.

New Orleans, Louisiana, this   21st   day of November, 2024.

                  *Sarah Vance*
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE