UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICK W. BROWN                                  CIVIL ACTION

VERSUS                                               NO. 24-423

JASON R. WILLIAMS, ET AL.                     SECTION "R" (4)

## ORDER AND REASONS

Before the Court is defendant Cathey Carter's opposed[1] Rule 12(b)(6) motion to dismiss.[2]  For the following reasons, the Court grants the motion.

## I.    BACKGROUND

This case arises out of the now vacated conviction of Patrick Brown by the Orleans Parish District Attorney ("OPDA") in 1994 for the aggravated rape of a minor.   Brown brings claims against New Orleans Police Department ("NOPD") Detective Cathey Carter for her alleged conduct during the investigation of his case.

According to the opinion of the Louisiana Fourth Circuit, the evidence at Brown's trial was as follows.[3]  The victim's mother took her to Charity

---

[1]    R. Doc. 34.
[2]    R. Doc. 32.
[3]    The Court takes judicial notice that the jury received the cited evidence. *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In

Hospital after she complained of stomach pains, had cried all day, had a raw bottom, and had a yellowish-green vaginal discharge.[4]  *State v. Brown*, 746 So.2d 643, 644 (La. App. 4 Cir. 1999).    She was given an ointment at Charity and was told to return for a follow-up visit.[5]  *Id.*  Her maternal great-aunt took her back to Charity for a return visit two days later.[6]  *Id.* at 645.   She was then examined by a pediatric resident, who suspected a sexually transmitted disease based on an inspection of her discharge.[7]  *Id.* He summoned a board-certified pediatrician assigned to the hospital's sexual abuse clinic.[8]  *Id.*  The doctors asked the victim if "anyone touched her down there in a way that made her feel uncomfortable or that hurt her?" *Id.* The victim initially said no, but after assurances from the doctors, she began to cry and said, "My daddy Patrick stuck his penis in me down there," pointing to her genitals.[9]  *Id.*  The pediatric resident said he recorded her statement in his notes using quotation marks to indicate he had written "exactly what she said." *Id.*  The physical findings and results of the victim's

---

deciding a Rule 12(b)(6) motion, a court may permissibly refer to matters of public record."); *see also Brown v. Lippard*, 350 F. App'x 879, 882 (5th Cir. 2009) (taking judicial notice of court records).

[4]  *See also* R. Doc. 20 ¶¶ 79-82.
[5]  *See also id.* ¶ 82.
[6]  *See also id.* ¶ 83.
[7]  *See also id.* ¶¶ 83-84.
[8]  *See also id.*
[9]  *See also id.* ¶ 87-88.

pelvic exam were recorded in her medical records.[10]  *Id.*  After the medical examination, two detectives from NOPD spoke with the victim with no family members present and they then interviewed the victim's grandmother.[11]  *Id.* Although Brown denied any inappropriate behavior with the victim, he was arrested that day based on the medical evidence and the child's statements.[12] *Id.*

In his complaint, Brown alleges that Detective Carter testified at trial that she interviewed the victim at the hospital with an unidentified second detective, and that she never had any suspects in her investigation other than Brown.[13]  He does not allege that Carted testified that the victim identified Brown to police as her rapist.  He also alleges that although prosecutors repeatedly tried to call the six-year-old victim as a witness,[14] she was unable to respond to their substantive questioning and began crying and bleeding from her nose until she left the courtroom.[15]  The jury convicted Brown of aggravated rape and sentenced him to life imprisonment,[16] which the

---

[10]    *See also id.* ¶ 89.
[11]    *See also id.* ¶¶ 91-94.
[12]    *See also id.* ¶ 99.
[13]    *Id.* ¶ 132.
[14]    *Id.* ¶¶ 147-153.
[15]    *Id.*
[16]    *Id.* ¶ 164.

Louisiana Court of Appeal for the Fourth Circuit later affirmed.[17]  *See id.*  In 2022, Brown filed an application for post-conviction relief,[18] and, on May 8, 2023, the Orleans Parish Criminal District Court vacated his conviction with the support of the OPDA, finding that he had proven his factual innocence by clear and convincing evidence.[19]

Brown thereafter brought this action against Carter.[20]  Brown alleges that Carter is liable for his wrongful conviction and imprisonment under 42 U.S.C. § 1983 and the Louisiana Constitution for using improperly suggestive identification procedures, for fabricating evidence, and for failing to disclose evidence to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963).[21]  Brown also contends that Carter is liable for negligence under Louisiana tort law for the same conduct.[22]  Brown alleges that Carter or an unidentified NOPD police officer used an unconstitutionally suggestive "fill-in-the-blanks" letter to interview the victim because the letter required the interviewing police officer to write down answers for the child victim, and its pre-printed sections did not provide an option for the victim to indicate he

---

[17]    *Id.* ¶¶ 167, 230.
[18]    *Id.* ¶ 237.
[19]    *Id.* ¶ 242.
[20]    *See* R. Doc. 20.
[21]    *Id.* ¶¶ 272, 275, 280.
[22]    *Id.* ¶ 280

or she was not being abused by the addressee.[23]   Brown also asserts that

Carter fabricated the handwritten portions of the letter.  The handwritten

portions, purportedly addressed to Brown from the victim, describe how the

victim wanted to "cry" when "you [put] your petnuts in me" and stating that

Brown "raped me"[24]  Brown alleges that at the time of the investigation, the

victim did not know the word "raped," nor did she refer to male genitalia as

either "petnuts" or "penis," and she did not say Brown "raped me" or that

Brown put his "petnuts" in her.[25]  Brown does not allege how this fabricated

letter impacted either the investigation or Brown's subsequent prosecution.

Brown additionally alleges that Carter failed to disclose the existence of

exculpatory witnesses and alternative suspects to the defense.[26]

Carter now moves to dismiss Brown's claims against her.[27]   Carter

argues that she is entitled to qualified immunity.  Further, Carter asserts that

Brown's amended complaint fails to state a claim for liability because she is

not legally responsible for the alleged failure of the prosecution to disclose

favorable evidence, and the allegedly fabricated letter was not used at trial

---

[23]    *Id.* ¶¶ 190-191.
[24]    *Id.* ¶¶ 190-198, 208.
[25]    *Id.* ¶¶ 194-197.
[26]    R. Doc. 20 ¶¶ 185 & 188.
[27]    R. Doc. 32.

and therefore could not have caused his wrongful conviction.[28]   Brown opposes the motion to dismiss.[29]  The Court considers the parties' arguments below.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the party's claim is true. *See Iqbal*, 556 U.S. at 678.  It need not contain "detailed factual allegations," but it must go beyond "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"

---

28    R. Doc. 32-1 at 1.
29    R. Doc. 34.

*See id.* (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."  *Lormand*, 565 F.3d at 257 (citations omitted).  The claim must be dismissed if there are insufficient factual allegations "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "The district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

### A. Section 1983 Claims

Section 1983 provides a cause of action for plaintiffs whose federal rights are violated under the color of state law.  42 U.S.C. § 1983; *see also Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under Section 1983, a plaintiff must (1) allege a violation of the Constitution or of federal law and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Doe*, 153 F.3d at 215 (citing *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

Brown alleges that Carter, while a detective for the NOPD, forged handwritten sections of a letter purportedly from the victim to Brown stating that Brown put his "petnuts" in her and "raped [her]."[30]  By drafting the letter, Brown argues, Carter used improper and suggestive identification procedures and fabricated evidence, violating his constitutional rights.[31]  In addition, Brown argues that Carter failed to disclose exculpatory witnesses and favorable evidence, constituting a violation of his rights under *Brady v. Maryland*.[32]  Aside from the right to a fair trial under *Brady*, Brown's

---

[30]    R. Doc. 20 ¶ 198.

[31]    *Id.* ¶ 272.

[32]    R. Doc. 34 at 2-3.

amended complaint does not specify which constitutional rights Carter's conduct allegedly violated.[33]

Carter contends that she is entitled to qualified immunity for Brown's claims and that Brown otherwise fails to allege facts that support his theories of constitutional liability.  A state official whose "conduct deprives another of a right secured by federal constitutional or statutory law is nonetheless shielded from personal liability for damages under section 1983 by the doctrine of qualified immunity," unless "all reasonable officials" would have realized at the time that their conduct "was proscribed by the federal law on which the suit is founded." *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000) (citing *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)); *see also Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) ("The doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citation omitted)).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (internal citation omitted).

---

[33]    *See* R. Doc. 20.

9

When a defendant invokes qualified immunity in the context of a motion to dismiss, the Court looks to "defendant's conduct as alleged in the complaint," *Behrens v Pelletier*, 516 U.S. 299, 309 (1996), and the "burden shifts to the plaintiff to demonstrate the inapplicability of the defense," *Club Retro, L.L.C.*, 568 F.3d at 194. A plaintiff seeking to overcome qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal citation omitted). "To be 'clearly established' for purposes of qualified immunity, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Kinney v. Weaver*, 367 F.3d 337, 349-50 (5th Cir. 2004) (en banc)). It is within the Court's discretion to decide which prong to address first. *Whitley*, 726 F.3d at 638 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Brown devotes the bulk of his opposition to attacking the doctrine of qualified immunity, contending that it is unsupported by the statutory text of Section 1983 and therefore should not be available as a defense.[34] This

---

[34] R. Doc. 33 at 7-14.

Court does not have the authority to overrule the qualified immunity doctrine. In *Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024), the Fifth Circuit rejected a similar argument as "foreclosed because only the Supreme Court can definitively grapple with § 1983's enacted text and decide whether it means what it says—and what, if anything, that means for § 1983 immunity jurisprudence." *Id.* at 845 (citation and alterations omitted). For the same reasons, the Court rejects Brown's argument that the doctrine is not authorized under the text of Section 1983.

The Court addresses Carter's claim to qualified immunity regarding each of Brown's theories of constitutional liability below.

### a. "Fill-in-the-Blanks" Letter

Brown alleges that Carter is constitutionally liable for the creation and unspecified use of a "fill-in-the-blanks, 'Mad-Libs'-style" letter purportedly from a six-year-old victim stating that Brown "raped [her]."[35] Brown argues first that the preprinted sections of the letter and the procedure used to fill it out were "unconstitutionally suggestive,"[36] and second that the handwritten sections constituted were "fabricated" by Carter.[37] But Brown does not plead facts that would overcome Carter's qualified immunity on either ground.

---

[35]    R. Doc. 20 ¶ 198.

[36]    *Id.* ¶¶ 190-191.

[37]    *Id.* ¶¶ 192, 198.

While Carter and Brown conflate the two theories of constitutional liability in their briefs, the Court addresses each constitutional claim separately. *See, e.g.*, *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (distinguishing between a "deliberate fabrication-of-evidence claim" and "merely an improper-interview-techniques claim").

### i. Suggestive Identification Procedures

Brown argues that the letter was unconstitutionally suggestive because (1) it contained a pre-printed portion stating that the accused "told a lie," but did not provide an option for the witness to state that the accused was not lying, and (2) because a police officer filled in the blanks, not the child victim.[38]  But Brown's claim fails because he fails to allege that Carter's identification procedures caused the victim to falsely identify him, or that the letter was used at any stage of the criminal proceedings against him.

In *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) ("*Geter I*"), the Fifth Circuit held that eliciting false identification via unconstitutionally suggestive methods violates the equal protection clause and due process requirements of the United States Constitution. *Id.* at 1559.  An officer procures a false identification via unconstitutionally suggestive methods when the procedure unduly influences, manipulates, or coerces a witness

---

[38]     R. Doc. 20 ¶¶ 190-191.

into identifying a particular party as a culprit. *See, e.g.*, *Good v. Curtis*, 601 F.3d 393, 396 (5th Cir. 2010) (finding that defendant unduly obtained a false identification by "repeatedly alter[ing] the light settings on the camera with each picture in an effort to make Good's photograph better match the 'dark tan' skin tone of the suspect in the police sketch" for a photo lineup); *Geter v. Fortenberry*, 882 F.2d 167, 170 (5th Cir. 1989) ("*Geter II*") (finding that defendant employed "'suggestive' methods of obtaining identifications" by "insisting that [witnesses] pick an individual from photo lineups" and "prodding the witnesses to select another picture when they had chosen incorrectly"). Therefore, by 1994, the Fifth Circuit had clearly established that a "police officer's knowing efforts to secure a false identification by fabricating evidence or otherwise unlawfully influencing witnesses is not entitled to qualified immunity." *Good*, 601 F.3d at 398; *see also Geter I*, 849 F.2d at 1559 ("[A] police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means . . . for such activity violates clearly established constitutional principles.").

The Court finds that Brown's allegations regarding Carter's identification procedures do not amount to a claim that Carter's suggestive methods procured a false identification. *See Griggs*, 841 F.3d at 312. First, according to Brown's allegations, the procedures used did not unduly

influence, manipulate, or coerce the victim into identifying Brown as her abuser. *Cf. Good*, 601 F.3d at 396. Rather, Brown alleges that the victim <u>did not</u> identify him as her rapist, but that Carter fabricated this entry.[39] Further, unlike the defendant officer in *Good*, who manipulated a camera's light settings to make a suspect look like a police composite sketch, 601 F.3d at 396, or the defendant officer in *Geter II*, who insisted witnesses identify a particular photo out of a lineup, 882 F.2d at 170, Brown's allegation that Carter used "unconstitutionally suggestive" procedures by using a "fill-in-the-blanks" form and writing down answers for a six-year-old child is conclusory.[40] Brown does not allege that using a pre-printed form or writing down the child's answer induced the victim to falsely identify him as her rapist, nor does he cite any analogous cases indicating that these alleged procedures are unduly coercive. Moreover, given the sensitivity of the inquiry and the victim's age, there is some investigatory discretion regarding the appropriate procedures to interview child witnesses of sexual abuse. *See Devereaux*, 263 F.3d at 1075 ("[T]here is no constitutional due process right to have child witnesses in a child sex abuse investigation interviewed in a particular manner . . . [and] [i]nterviewers of child witness of suspected

---

[39]    R. Doc. 20 ¶ 192.
[40]    R. Doc. 20 ¶¶ 190-191.

sexual abuse must be given some latitude[.]"); *cf. Idaho v. Wright*, 497 U.S. 805, 819 (1990) (noting in a Confrontation Clause context that although "procedural guidelines . . . may well enhance the reliability of out-of-court statements of children regarding sexual abuse," the Court declined to identify a "preconceived and artificial litmus test for the procedural propriety of professional interviews in which children make hearsay statements against the defendant").

Further, Brown does not allege how the identification procedures at issue in the letter impaired his right to a fair trial here. *See Hernandez v. Terrones*, 397 F. App'x 954, 970 (5th Cir. 2010) ("[I]n order for there to be a due process violation in the context of an unduly suggestive identification procedure, the defendant's right to a fair trial must be impaired."). In the unpublished *Hernandez v. Terrones*, 397 F. App'x 954 (5th Cir. 2010), the Fifth Circuit held that "[i]n 1994, no violation of a clearly established right occurred where a defendant was afforded a fair trial not impaired by the admission of evidence derived from an unduly suggestive identification procedure." *Id.* at 974. Brown's amended complaint does not allege any facts indicating that the letter or the identification of Brown by the victim was used at trial or any other stage of his criminal proceedings. *Cf. id.* at 970. ("[I]t is clear from both *Geter II* and *Good* that the improperly procured

identifications at issue were introduced at the respective plaintiffs' criminal trials in both cases"); *Jones v. Hattiesburg*, No. 18-84, 2021 WL 2659178, at *25-26 (S.D. Miss. June 28, 2021) (recognizing an impairment to the right to fair trial when "evidence of the allegedly suggestive identification of the plaintiff" was presented to the "magistrate at the examining trial," at the "preliminary hearing," or in the "Arrest Warrant Affidavit"). Carter is therefore entitled to qualified immunity on Brown's claim for a constitutional violation from the use of improper and suggestive identification procedures.

### ii. Fabricated Evidence

Brown also alleges that Carter fabricated handwritten sections of the letter where the victim purportedly stated that Brown "raped [her]" and "put his 'petnuts' in her."[41] Although Brown's amended complaint contains factual allegations that would allow the Court to reasonably infer that Carter fabricated the letter, he fails to allege any facts indicating that Carter used the letter to frame him or bring false charges.

In *Morgan v. Chapman*, 969 F.3d 238 (5th Cir. 2020), the Fifth Circuit held that the fabrication of evidence to establish probable cause violates a party's clearly established Fourth Amendment right to be free from

---

[41]     R. Doc. 20 ¶ 198.

unreasonable seizure. *Id.* at 249 (involving the fabrication of a medical report). Likewise, in *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015) ("*Cole I*"), the Fifth Circuit held that the fabrication of evidence to "get someone falsely charged" violates a clearly established Fourteenth Amendment right to due process. *Id.* at 773 (involving fabrication of statements to justify officer's use of excessive force and bring new criminal charges where probable cause for arrest already existed), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), *and opinion reinstated in part*, 905 F.3d 334 (5th Cir. 2018). Brown does not state which right Carter impaired, nor does he allege facts regarding the use of the letter that would allow the Court to reasonably infer the alleged violation.

Although fabricated evidence need not be used at trial to constitute a constitutional violation, *see id.*; *Morgan*, 969 F.3d at 249, a plaintiff must allege that an officer used the fabricated evidence against him to state a valid fabrication of evidence claim, *see Rogers v. City of Tupelo*, No. 13-243, 2016 WL 3849563, at *2 (N.D. Miss. July 13, 2016) (discussing the "right 'not to have police deliberately fabricate evidence and *use it to frame and bring false charges against a person.*'" (citing *Cole I*, 802 F.3d at 771) (emphasis added)), *aff'd sub nom.*, *Rogers v. Lee Cnty.*, *Miss.*, 684 F. App'x 380 (5th Cir. 2017); *see also Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021)

(holding that a fabrication-of-evidence claim requires a showing that "the fabricated evidence was used against the plaintiff" and that "the use of the fabricated evidence deprived the plaintiff of liberty").  In *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023), the Fifth Circuit held that a plaintiff's "failure to allege how or where" a law enforcement officer introduced allegedly fabricated evidence "[was] fatal" to her claim.  *Id.* at 274 (affirming dismissal of Section 1983 claim alleging that officer fabricated evidence). And in the same case, the Fifth Circuit held defendant law enforcement officers were entitled to qualified immunity for allegedly fabricating statements because even "[i]f fabrication occurred," the plaintiff failed to "allege how it was material or harmful" to the criminal defendant's case.  *Id.* at 272.

Brown's allegations here are similarly threadbare.  He does not allege that the fabricated letter was used to provide probable cause for his arrest, *see, e.g.*, *Tyson*, 2020 WL 5876706, at *4, appeared in pretrial proceedings, *see, e.g.*, *McLean*, 2023 WL 1868192, at *2, or was introduced at trial, *see, e.g.*, *Boyd v. Driver*, 579 F.3d 513, 515 (5th Cir. 2009).  Indeed, Brown does not even assert that Carter testified at trial as to whom the victim identified as her abuser, much less to the contents of the allegedly fabricated letter.[42]

---

[42]    R. Doc. 20 ¶¶ 132-135.

Because Brown does not allege any facts showing how or where Carter used the purportedly fabricated letter against him, he therefore fails to allege that Carter violated his clearly established constitutional rights.

Brown argues that his amended complaint asserts "a causal connection between the fabrication of evidence and the deprivation of liberty," *Truman*, 1 F.4th at 1236, because it alleges that Carter fabricated the letter and that police arrested Brown that day for aggravated rape.[43]  But that is not what the complaint alleges.  Brown does not allege that Carter fabricated the letter on the day of his arrest, and he fails to allege any facts suggesting that Carter used the letter to justify his arrest.  Instead, Brown's complaint alleges facts that provide a probable cause basis for his arrest unrelated to the letter. Plaintiff's complaint alleges that the victim's medical records reflect that the doctors asked the victim if anyone touched her, she started crying, and the doctors wrote down that "daddy Patrick" assaulted the victim.[44]  The doctors called the police and told Detective Carter that the victim identified "daddy Patrick" as her abuser.[45]  Dr. Wilcox testified to the victim's identification of "daddy Patrick" at trial. *See Brown*, 746 So.2d at 645-46.[46]  Plaintiff, Patrick

---

[43]   R. Doc. 34 at 4 (citing R. Doc. 20 ¶¶ 198, 99).
[44]   R. Doc. 20 ¶ 88.
[45]   *Id.* ¶¶ 91-92.
[46]   *See supra* n.3.

Brown, was arrested that day for aggravated rape.[47]  There is a clear causal connection between the doctors' assertion to the police that the victim identified "daddy Patrick" as the person who assaulted her and Brown's arrest.  By contrast, the two allegations Brown cites as evidence of a causal connection do not allege what he asserts or suggest that the police arrested Brown on the same day as Carter fabricated the letter.[48]  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("A plaintiff must plead specific facts, not mere conclusory allegations [to] avoid dismissal for failure to state a claim.").  Carter is therefore entitled to qualified immunity regarding Brown's fabrication of evidence claim.

### b. *Brady* violations

Carter is also entitled to qualified immunity for Brown's *Brady* claims. Brown alleges that Carter failed to disclose (1) exculpatory witnesses,[49] and (2) that she had two other suspects.[50]  In his opposition memorandum, he asserts for the first time that Carter failed to disclose the fabricated letter.[51] But Brown fails to allege any facts suggesting that Carter deliberately

---

[47]  *Id.* ¶ 99.

[48]  *See* R. Doc. 20.

[49]  R. Doc. 20 ¶ 185.

[50]  *Id.* ¶ 188.

[51]  R. Doc. 34 at 3.

concealed evidence or individually possessed any material that was not also known to or possessed by the prosecution.

A *Brady* violation occurs when the prosecution fails to disclose evidence materially favorable to the accused.  373 U.S. at 87.  This duty "extends to impeachment evidence as well as exculpatory evidence." *Youngblood v. W. Virginia*, 514 U.S. 419, 438 (1995) (citing *United States v. Bagley*, 43 U.S. 667, 676 (1985)).  Evidence is material only if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," and a reasonable possibility is a probability sufficient to "undermine confidence" in the outcome.  *Kyles v. Whitley*, 514 U.S. 514 U.S. 419, 433-35 (1995).

Police officers violate a defendant's *Brady* rights only if they deliberately hide or conceal exculpatory evidence.  *Brown v. Miller*, 519 F.3d 231, 237-238 (5th Cir. 2008); *see also Williams v. Connick*, No. 12-1274, 2014 WL 172520, at *10 (E.D. La. Jan. 15, 2014) (finding that investigating officer was not entitled to summary judgment on qualified immunity regarding his failure to disclose a statement to the prosecution).  This was clearly established in the Fifth Circuit as early as 1967.  *Burge v. St. Tammany Parish*, 187 F.3d 452, 480 (5th Cir. 1999) (citing *Luna v. Beto*, 391 F.2d 329, 332 (5th Cir. 1967) as the origin of the principle).  Therefore, to

state a claim for Section 1983 relief, a plaintiff must allege facts indicating that a police officer deliberately suppressed or concealed exculpatory evidence.

In *Armstrong*, the Fifth Circuit affirmed the dismissal of *Brady* claims against police officers when the "only non-conclusory factual allegation of suppression" was that the criminal defendant and his counsel did not receive the exculpatory evidence during trial. 60 F.4th at 270. This fact was "fatal" to the plaintiff's claim, because "it [was] just as consistent with *Brady* violations solely accomplished by prosecutors as it [was] with police suppression." *Id.* at 271. "Without pleading details about how and by whom [the exculpatory evidence] was suppressed," plaintiff's allegations were deficient. *Id.*

Like the plaintiff in *Armstrong*, Brown relies exclusively on the allegation that he and his defense counsel were unaware of the exculpatory witnesses, the existence of other suspects, and the fabrication of evidence at the time of trial, and therefore his complaint suffers from the same deficiencies. 60 F.4th at 271. Brown does not allege that Carter deliberately concealed the witnesses, suspects, or fabrication. Indeed, Brown specifically asserts that the District Attorney's office knew about the exculpatory

witnesses and the existence of other suspects.[52]  Brown now argues that his

*Brady* claim against Carter should not be dismissed because there is no

indication in his complaint that Carter disclosed the fabrication of the letter

to prosecutors.  But this argument attempts to transform the absence of an

allegation into an affirmative assertion.  To state a claim, Brown must

affirmatively plead specific facts that Carter intentionally suppressed the

evidence.  *See Iqbal*, 556 U.S. at 678.  Brown does not satisfy this

requirement merely because his complaint does not contain specific

allegations otherwise.

Brown's allegations are just as consistent with *Brady* violations

accomplished by prosecutors as with police suppression.  *Armstrong*,

60 F.4th at 271; *see also Iqbal*, 556 U.S. at 676 (holding that plaintiff "must

plead that each Government-official defendant, [through] the official's own

individual actions, has violated the constitution").  Brown does not allege

how Carter deliberately suppressed the fabrication, and he gives no reason

or incentive for Carter to deceive OPDA prosecutors by not disclosing it.[53]

Carter and the prosecutors worked together as a team, and Brown's

complaint is replete with allegations that OPDA prosecutors did not care

---

[52]    R. Doc. ¶¶ 108, 121-125.
[53]    R. Doc. 20 ¶ 88.

about meeting their *Brady* obligations to disclose exculpatory evidence, failed to disclose such evidence in his case, and on occasion hid evidence of police misconduct.[54]  Based on the allegations in plaintiff's complaint, Carter had nothing to lose by letting prosecutors know of the fabrication, and given the allegedly corrupt state of the prosecutors' office, it is just as consistent that the prosecutors knew of, or participated in, the fabrication of the letter.

Further, Brown fails to allege facts suggesting that the fabrication was material.  In *Hernandez v. Terrones*, 397 F. App'x 954 (5th Cir. 2010), the Fifth Circuit found that information that a witness was "strong-armed into identifying plaintiff as his accomplice" could not have "impacted the result of the criminal proceeding," even if it had been suppressed, because the witness "did not testify at either plaintiff's examining trial or his trial," and his "identification of plaintiff was never introduced at either proceeding." *Id.* at 973.  Brown does not assert that the fabricated letter was used at any stage of the criminal proceedings against him or that Carter testified to the victim's identification of Brown.  Like the false identification in *Hernandez*, evidence of the letter's fabrication, even if suppressed, could not have impacted the result of the criminal proceeding because there is no allegation that the letter had ever been used in the proceedings.  Absent any affirmative allegation

---

54      *See id.* ¶¶ 24-51.

indicating that Carter deliberately concealed material evidence, Brown fails to show that Carter violated his rights under *Brady*.  Carter is therefore entitled to qualified immunity for Brown's *Brady* claims.

### B. State Law Claims

#### a. Louisiana Constitutional Claims

Brown fails to state a claim for his Louisiana state constitutional claims for the same reasons that Brown fails to state a claim against Carter under Section 1983.  Brown makes a cursory assertion that the "same conduct that violated Brown's federal constitutional rights also violated the rights the Louisiana Constitution guarantees to Brown."[55]    Louisiana provides a "qualified good faith immunity for state officers" for "any action arising from the state constitution."  *Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1093 (La. 1990).  Brown does not specify any differences between the state constitutional rights and the federal constitutional rights that Carter allegedly violated.

"Federal qualified immunity principles may be applied to claims under the Louisiana Constitution 'inasmuch as they parallel entirely the § 1983 allegations.'"  *Magnolia Island Plantation, LLC v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Roberts v. City of Shreveport*, 397 F.3d

---

[55]     R. Doc. 20 ¶ 275.

287, 296 (5th Cir. 2005) (alterations omitted)). Qualified immunity therefore shields Cater from Brown's state constitutional law claim. *See id.* ("[Because plaintiff's] state constitutional claim parallels—and indeed is indistinguishable from—her arguments under the Federal Constitution and § 1983 . . . [t]he foregoing federal qualified immunity analysis is therefore applicable to [plaintiff's] claim under the state constitution as well[.]").

### b. Negligence

Brown also fails to state a claim for negligence under Louisiana tort law.  Brown alleges that Carter failed to take due care and instead was negligent or grossly negligent for the same conduct he alleges violated his federal constitutional rights.

"Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was

26

damaged (the damages element)." *Hanks v. Entergy Corp.*, 944 So. 2d 564, 579 (La. 2006). Louisiana "uses the typical reasonable-person standard to assess an individual's liability for negligence." *Armstrong*, 60 F.4th at 280; La. Civ. Code art. 2315.

Brown fails to identify any separate Louisiana tort-based duty or standard that Carter violated. Nor does he allege how her conduct independently caused or contributed to his wrongful conviction. In *Armstrong*, the Fifth Circuit held that a plaintiff's failure to "adequately plead constitutional violations due to the defendant's suppression, fabrication, and destruction of evidence" also amounted to a failure to "plead sufficient factual matter to show that they violated the standard of care of a reasonable officer" for the purposes of a "traditional negligence claim." 60 F.4th at 281. For the same reasons that Brown failed to plead that Carter violated his constitutional rights by using an improperly suggestive identification process, fabricating evidence, and failing to disclose *Brady* material, he also fails to plead sufficient factual matter showing that Carter violated the standard of care of a reasonable officer. Therefore, Brown fails to state a claim against Carter for negligence.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Carter's motion to dismiss.  The Court DISMISSES Brown's Section 1983 claims against Carter on the grounds of Carter's qualified immunity, and Brown's state law claims for failure to state a claim.

New Orleans, Louisiana, this __31st__ day of March, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE